ORIGINAL

FILED
OCT 13 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CHARLES W. BASSING III,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | No. 06-712 T |

# COMPLAINT

1. Plaintiff Charles W. Bassing III currently resides at 11479 Seneca View Way, Great Falls, Virginia 22066. Plaintiff's social security number is 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.

2. Defendant is the United States of America.

3. This is an action for the recovery of federal income tax and interest founded upon the Internal Revenue Code of 1986, and this Court has jurisdiction by reason of 28 U.S.C. § 1491(a)(1).

4. Recovery is sought of federal income tax for the taxable year ended December 31, 1991. Plaintiff on or before April 15, 1992, timely filed a federal income tax return for the year 1991 with the Internal Revenue Service Center at Philadelphia, Pennsylvania. Plaintiff's 1991 return was filed under his name, Charles W. Bassing III, and his social security number, 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, and showed his address as 11479 Seneca View Way, Great Falls, Virginia 22066.

5. Plaintiff's 1991 return reported an income tax liability of $68,696. Plaintiff did not make any payment to satisfy such income tax liability, either in advance of the filing of his

return or at the time of filing, because the plaintiff lacked the financial resources to make any payment.

6. On May 25, 1992, the Internal Revenue Service assessed tax in the amount shown on plaintiff's 1991 return, together with a failure to pay penalty and interest. The Internal Revenue Service subsequently took actions to collect the tax, penalty and interest. Plaintiff in response filed an offer in compromise on the basis of doubt as to collectibility. After this first offer was rejected, plaintiff filed a second offer based on doubt as to liability. The Internal Revenue Service ultimately rejected the plaintiff's second offer on January 14, 2002.

7. On April 8, 2002, plaintiff paid to the Internal Revenue Service at its office at 11166 Main Street, Fairfax, Virginia 22030, the sum of $152,539.03, consisting of the unpaid balance of plaintiff's 1991 income tax liability, an addition to tax for failure to pay, and the interest which had accrued to the date of payment.

8. On or about July 3, 2002, plaintiff filed with the Internal Revenue Service Center at Philadelphia, Pennsylvania, a Form 1040X claim for refund of federal income tax, addition to tax and interest paid for 1991 in the amount of $152,539.03, together with interest as allowed by law. A copy of this claim is annexed hereto, marked Exhibit A, and made a part hereof.

9. The Internal Revenue Service, by letter dated October 14, 2004 issued by its Appeals Office at 5205 Leesburg Pike, One Skyline Place, Suite 803, Bailey's Crossroads, Virginia, disallowed plaintiff's claim for refund in its entirety. This complaint is being filed within two years from the October 14, 2004 mailing date of the Internal Revenue Service's notice of claim disallowance, and plaintiff has never filed any waiver of this notice. A copy of the notice of claim disallowance is annexed hereto and marked Exhibit B.

10. No final action on plaintiff's claim for refund set forth herein has been taken by Congress or by any agency of the United States (other than as described herein) or in any judicial proceeding, including any proceeding in the United States Tax Court.

11. Plaintiff is the sole owner of the claim for refund set forth herein and has made no assignment thereof.

**COUNT 1: Discharge of Plaintiff's Deficit Restoration Obligation**

12. This action arises out of plaintiff's participation as a general and limited partner in a now-defunct Maryland limited partnership, 1110 Bonifant Limited Partnership (the "Partnership"), during years 1985 to 1991.

13. Plaintiff and Richard S. Cohen ("Mr. Cohen") formed the Partnership on April 30, 1985, executing a limited partnership agreement dated that same day (the "Agreement"). Plaintiff and Mr. Cohen were both general and limited partners of the Partnership. Most of the remaining limited partnership interests were initially owned by family partnerships controlled by Mr. Cohen.

14. Following its formation, the Partnership acquired land in Silver Spring, Maryland, constructed an office building thereon, and operated the office building as a rental property. Construction of the building was financed by a $5,000,000 loan from First American Bank of Maryland (the "Bank") dated November 18, 1985. Plaintiff and Mr. Cohen guaranteed the loan.

15. By an "Amendment" to the Agreement dated April 1, 1988, the Agreement was amended to comply with the "economic effect" requirements contained in Treasury Regulation § 1.704-1(b)(2)(ii)(b)(3). Under the Amendment, any partner with a negative capital account balance following the distribution of liquidation proceeds was obligated to restore the entire negative balance within a regulatory-prescribed time period. The amount restored was then required to be paid to the Partnership's creditors or to those partners having positive capital account

balances. The Amendment further required that the partners' capital accounts be determined and maintained in accordance with Treasury Regulation § 1.704-1(b)(2)(iv). The Amendment superseded any provisions in the Agreement which may have been to the contrary.

16. The Partnership's cash flow was generally negative during its existence. Mr. Cohen funded the cash shortfalls by making unsecured loans to the Partnership. Mr. Cohen's cumulative loans to fund cash deficiencies equaled $2,748,229.

17. The Partnership realized substantial operating losses during its existence. The Partnership properly allocated a substantial portion of these losses to plaintiff - thereby causing his capital account to be negative - in light of his guaranty of the Bank loan, his state law liability as general partner, and his deficit capital restoration obligation under the Amendment.

18. By 1991 the Partnership was in dire financial straits. It had defaulted on its loan to the Bank. In addition, Mr. Cohen owned other realty projects that were experiencing financial problems and that had defaulted on other loans with the Bank.

19. In an omnibus Settlement Agreement dated as of February 1, 1991 (the "Settlement Agreement"), encompassing all of the Cohen realty projects financed by the Bank, including the Partnership's office building, the Bank released Mr. Cohen and plaintiff from their liability on the Partnership's Bank loan in return for certain payments from Mr. Cohen and the conveyance of the Partnership's office building to the Bank by deed in lieu of foreclosure effective February 1, 1991.

20. The Settlement Agreement did not require any payment from plaintiff despite his general partner status and his guaranty of the Bank loan. Plaintiff lacked the financial resources to make or finance any significant payment to the Bank.

21. Contemporaneous with the Settlement Agreement and the transfer of the office building to the Bank, plaintiff, Mr. Cohen, and the other original partners of the Partnership

executed a Release and Indemnification Agreement dated February 1, 1991 (the "Release"), providing for mutual releases and an indemnification by Mr. Cohen in favor of plaintiff. The Release fully discharged plaintiff from all Partnership debts and liabilities for which he was liable.

22. The Partnership did not conduct any business activity after the February 1, 1991 transfer of its office building to the Bank except to wind up its affairs. Under Treasury Regulation § 1.704-1(b)(2)(ii)(g), the Partnership was treated as having liquidated effective February 1, 1991 for purposes of activating a partner's obligation to restore a negative capital account balance.

23. The Release discharged plaintiff's obligation to restore his negative capital account, an obligation which became fixed and payable commencing with the February 1, 1991 liquidation of the Partnership. Plaintiff's final negative capital account liability amounted to $882,871. Thus, the Release discharged plaintiff from an unconditional and legally binding obligation to pay $882,871 to the Partnership by December 31, 1991. In accordance with the Amendment, the Partnership would have then paid the $882,871 to Mr. Cohen in partial satisfaction of the $2,748,229 that he had cumulatively loaned the Partnership to fund cash deficiencies.

24. Plaintiff's tax return preparer mistakenly reported the $882,871 of negative capital account forgiveness on Schedule D of plaintiff's 1991 income tax return as long-term capital gain from the deemed sale or exchange of plaintiff's general and limited partnership interests. The $882,871 should have been reported as income from the discharge of indebtedness owed by plaintiff to the Partnership as of the Partnership's February 1, 1991 liquidation. Treatment of the $882,871 as income from the discharge of debt would have increased plaintiff's basis in his general and limited partnership interests by $882,871, thereby eliminating any gain from a deemed sale or exchange under the partnership liability and distribution rules of 26 U.S.C. §§ 752(b) and 731(a).

25. As of January 31, 1991, the day prior to the date of the Release discharging plaintiff from his indebtedness to the Partnership, plaintiff was insolvent in the amount of $734,727. Accordingly, $734,727 of the $882,871 of plaintiff's income from discharge of indebtedness was excludable from his 1991 gross income pursuant to the "insolvency" exclusion set forth in 26 U.S.C. § 108(a)(1)(B) and (a)(3). As demonstrated in plaintiff's claim for refund, plaintiff would have owed no federal income tax for 1991 if the $734,727 of debt cancellation income had been excluded from his gross income.

26. In disallowing plaintiff's claim for refund, defendant has erroneously refused to recognize that plaintiff realized $882,871 of income from the discharge of indebtedness, of which $734,727 was excludable from his taxable income by reason of his insolvency. As a result, $68,696 of tax has been erroneously collected from plaintiff.

27. Plaintiff has overpaid federal income tax for 1991 in the amount of $68,696.

**COUNT 2: Addition to Tax For Failure to Pay**

28. Plaintiff restates and incorporates by reference paragraphs 1 through 27 above.

29. Because plaintiff is not liable for federal income tax for 1991, plaintiff is also not liable for the addition to income tax for failure to pay set forth in 26 U.S.C. § 6651(a)(2).

30. Alternatively, if plaintiff is liable for income tax for 1991, plaintiff has reasonable cause for his delay in payment sufficient to relieve him from any liability for the failure to pay penalty. Specifically, plaintiff, a real estate developer, experienced significant financial hardship as a result of the severe realty recession of the late 1980s and early 1990s. Plaintiff could not afford to pay the income tax shown on his 1991 return at the time it was due or for many years thereafter. In response to Internal Revenue Service collection actions, he reasonably and in good faith exercised his offer-in-compromise rights as described in paragraph 6 above.

His financial circumstances improved while the Internal Revenue Service considered his offers in compromise. He made full payment of all amounts assessed and outstanding for 1991 within three months after his second offer in compromise was rejected in January 2002.

31. Plaintiff has overpaid an addition to income tax for 1991 in the amount of at least $15,367 as disclosed in Internal Revenue Service records of plaintiff's account for the 1991 year.

## CONCLUSION

Wherefore, plaintiff demands judgment in the amount of $152,539.03, plus interest and costs allowed by law, and such other relief as the Court may deem just and proper, including the award of reasonable litigation costs incurred in this proceeding.

Respectfully submitted,

By: ______________________

Patrick G. Dooher
1700 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 452-7991
(202) 452-7989 (facsimile)
patrick.dooher@bipc.com
Attorney for Plaintiff

Dated: October 13, 2006