Exhibit A

Form **1040X** (Rev. November 2001)

Department of the Treasury — Internal Revenue Service

# Amended U.S. Individual Income Tax Return

▶ See separate instructions.

OMB No. 1545-0091

This return is for calendar year ▶ 1991 , or fiscal year ended ▶

Please print or type

| | | |
|---|---|---|
| Your first name and initial: Charles W. | Last name: Bassing III | Your social security number: 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 |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Home address (no. and street) or P.O. box if mail is not delivered to your home: 11479 Seneca View Way | Apt. no. | Phone number: 703-827-8220 |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 2 of the instructions: Great Falls, VA 22066 | | For Paperwork Reduction Act Notice, see page 6. |

A If the name or address shown above is different from that shown on the original return, check here ▶ ☐

B Has the original return been changed or audited by the IRS or have you been notified that it will be? ☐ Yes ☒ No

C Filing status. Be sure to complete this line. **Note.** You cannot change from joint to separate returns after the due date.

On original return ▶ ☒ Single ☐ Married filing joint return ☐ Married filing separate return ☐ Head of household ☐ Qualifying widow(er)

On this return ▶ ☒ Single ☐ Married filing joint return ☐ Married filing separate return ☐ Head of household* ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

Use Part II on the Back to Explain any Changes

| Income and Deductions (see pages 2 - 6) | Line | A. Original amount or as previously adjusted (see page 2) | B. Net change — amount of increase or (decrease) — explain in Part II | C. Correct amount |
|---|---|---|---|---|
| 1 Adjusted gross income (see page 3) | 1 | 274,370 | (734,727.00) | (460,357) |
| 2 Itemized deductions or standard deduction (see page 3) | 2 | 19,604 | 5,231.00 | 24,835 |
| 3 Subtract line 2 from line 1 | 3 | 254,766.00 | (739,958.00) | (485,192.00) |
| 4 Exemptions. If changing, fill in Parts I and II on the back | 4 | 0 | 2,150.00 | 2,150 |
| 5 Taxable income. Subtract line 4 from line 3 | 5 | 254,766.00 | (742,108.00) | (487,342.00) |
| **Tax Liability** | | | | |
| 6 Tax (see page 4). Method used in col. C Schedule D | 6 | 68,696 | (68,696.00) | 0 |
| 7 Credits (see page 4) | 7 | 0 | 0.00 | 0 |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero | 8 | 68,696.00 | (68,696.00) | 0.00 |
| 9 Other taxes (see page 4) | 9 | 0 | 0.00 | 0 |
| 10 Total tax. Add lines 8 and 9 | 10 | 68,696.00 | (68,696.00) | 0.00 |
| **Payments** | | | | |
| 11 Federal income tax withheld and excess social security and RRTA tax withheld. If changing, see page 4 | 11 | 0 | 0.00 | 0 |
| 12 Estimated tax payments, including amount applied from prior year's return | 12 | 0 | 0.00 | 0 |
| 13 Earned income credit (EIC) | 13 | | | |
| 14 Additional child tax credit from Form 8812 | 14 | | | |
| 15 Credits from Form 2439 or Form 4136 | 15 | 0 | 0.00 | 0 |
| 16 Amount paid with request for extension of time to file (see page 4) | 16 | | | 0 |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed | 17 | | | 74,132.04 |
| 18 Total payments. Add lines 11 through 17 in column C | 18 | | | 74,132.04 |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS | 19 | | | |
| 20 Subtract line 19 from line 18 (see page 5) | 20 | | | 74,132.04 |
| 21 **Amount you owe.** If line 10, column C, is more than line 20, enter the difference and see page 5 | 21 | | | 0.00 |
| 22 If line 10, column C, is less than line 20, enter the difference | 22 | | | 74,132.04 |
| 23 Amount of line 22 you want **refunded to you** | 23 | | | 74,132.04 |
| 24 Amount of line 22 you want **applied to your** estimated tax | 24 | | | |

**Sign Here**
Joint return? See page 2. Keep a copy for your records.

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge.

▶ Your signature Date ▶ Spouse's signature. If a joint return, both must sign. Date

**Paid Preparer's Use Only**

Preparer's signature ▶ Patrick G. Dooher (signature) Date 7/3/02 Check if self-employed ☒ Preparer's SSN or PTIN [redacted]

Firm's name (or yours if self-employed), address, and ZIP code ▶ Patrick G. Dooher, 1776 K St., NW, DC 20006 EIN Phone no. 202-452-7991

ISA STF FED3171F.1

**Part I** **Exemptions.** See Form 1040 or 1040A instructions.

If you are **not changing your exemptions,** do not complete this part.
If claiming **more exemptions,** complete lines 25 - 31.
If claiming **fewer exemptions,** complete lines 25 - 30.

| | | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|---|
| 25 | Yourself and spouse . . . **Caution.** If your parents (or someone else) can claim you as a dependent (even if they chose not to), you cannot claim an exemption for yourself. | 25 | | | |
| 26 | Your dependent children who lived with you . . . | 26 | | | |
| 27 | Your dependent children who did not live with you due to divorce or separation . . . | 27 | | | |
| 28 | Other dependents . . . | 28 | | | |
| 29 | Total number of exemptions. Add lines 25 through 28 . . . | 29 | | | |
| 30 | Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | 30 | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2001 | $2,900 | $99,725 |
| 2000 | 2,800 | 96,700 |
| 1999 | 2,750 | 94,975 |
| 1998 | 2,700 | 93,400 |

31 Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name | Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) ✓ if qualifying child for child tax credit (see page 5) |
|---|---|---|---|---|
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

No. of your children on line 31 who:
- lived with you . . . ▶ ☐
- did not live with you due to divorce or separation (see page 5) . . . ▶ ☐

Dependents on line 31 not entered above ▶ ☐

**Part II** **Explanation of Changes to Income, Deductions, and Credits**

**Enter the line number from the front of the form for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.**

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here . . . ▶ ☐

Line 1: See attached Memorandum for explanation

Line 2: Additional itemized deductions allowable as a result of reduction in AGI.

Line 3: Personal exemption fully allowable as a result of AGI reduction.

Line 17: Additional tax paid includes section 6651(a)(2) addition to tax for late payment; even if the line 1 adjustment reducing tax liability to zero is not accepted, reasonable cause - financial incapacity - existed for the late payment. Consequently, full refund of the late payment penalty is claimed on the alternative ground of reasonable cause.

**Part III** **Presidential Election Campaign Fund.** Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here . . . ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here . . . ▶ ☐

**Memorandum to Accompany Claim for Refund**

**by**

**CHARLES W. BASSING III**
**Tax year ended 12/31/91**

Note: In addition to the tax shown on the amended return accompanying this memo, this claim for refund also extends to the interest paid by Mr. Bassing on April 8, 2002 in the amount of $78,406.99, together with interest accruing on the refund from the April 8th date of payment.

## Explanation of Changes to Return

Schedule D of the 1991 return filed by Mr. Bassing reported $882,871 of extinguished liabilities from a partnership which terminated in 1991 as capital gain from a deemed sale or exchange of his interests in that partnership. Upon further review, it has been determined that the $882,871 of income should have been classified as cancellation of debt income, not capital gain. Since Mr. Bassing was insolvent at the time of the liquidation and debt forgiveness, the income was excludable under Section 108 of the Internal Revenue Code, as amended (the "Code") in the amount of $734,727 (the extent to which Mr. Bassing was insolvent immediately prior to the debt forgiveness). Accordingly, Mr. Bassing's adjusted gross income on line 1 of the amended return has been reduced by $734,727 of debt discharge income excludable as a result of his insolvency.

A copy of the original 1191 return filed by Mr. Bassing and a copy of a revised 1991 return showing the effects of the foregoing changes accompany this memorandum.

The facts, authority, and analysis which demonstrate that the foregoing changes are correct are set forth below.

## Statement of Pertinent Facts

On April 30, 1985, Mr. Bassing (the "Taxpayer") and Richard S. Cohen formed 1110 Bonifant Limited Partnership (the "Partnership"). Both the Taxpayer and Mr. Cohen were general partners with each holding a 5 percent general partnership interest. The Taxpayer and Mr. Cohen also held limited partnership interests in the Partnership -- the Taxpayer an initial 25 percent interest. Substantially all of the remaining limited partnership interests were owned by family partnerships controlled by Mr. Cohen.

Following its formation, the Partnership acquired land in Silver Spring, Maryland, constructed an office building, and operated the office building as a rental property. The construction of the office building was financed by a $5,000,000 loan from First American Bank of Maryland (the "Bank") dated November 18, 1985. The Taxpayer and Mr. Cohen guaranteed the loan.

By an "Amendment" to the Agreement dated April 1, 1988, and made effective December 31, 1987, the Agreement was amended to comply with the "economic effect" requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3). Section 8(c) of the Amendment stated that any partner with a negative capital account balance following the distribution of liquidation proceeds must restore the entire negative balance by no later than (i) the end of the taxable year of the liquidation of the Partnership (or of the partner's partnership interest) or (ii) 90 days after the date of the liquidation of the Partnership (or of the partner's partnership interest). The amount restored must then, pursuant to Section 8(c), be paid to the Partnership's creditors or to those partners having positive capital account balances. Section 9 of the Amendment further required that the partners' capital accounts be determined and maintained in accordance with Treas. Reg. Section 1.704-1(b)(2)(iv).

The only other amendment to the Agreement was an amendment captioned "First Amendment" to the Agreement, dated August 28, 1988, pursuant to which a new tenant of the Partnership's office building was admitted as a 12.5 percent limited partner, and the interests of the other limited partners were proportionately reduced. The Taxpayer's limited partnership interest was reduced by 3.75 percentage points to 21.25 percent to reflect the tenant's admission as a limited partner.

During the period that the Partnership was in existence, the office building's cash flow was generally negative. Mr. Cohen funded the cash shortfalls by making unsecured loans to the Partnership. The Partnership allocated substantial losses to the Taxpayer and Mr. Cohen during its existence.

By 1991 the Partnership, like many other realty ventures at the time, was in dire financial straits. It had defaulted on its loan to the Bank. In addition, Mr. Cohen owned other realty projects that were experiencing financial problems and that had defaulted on other loans with the Bank. In an omnibus Settlement Agreement dated as of February 1, 1991 (the "Settlement Agreement"), encompassing all of the Cohen realty projects financed by the Bank, including the Partnership's office building, the Bank released Mr. Cohen and the Taxpayer from their liability on the Partnership's Bank loan in return for (1) certain payments from Mr. Cohen and (2) the conveyance of the Partnership's office building to the Bank by deed in lieu of foreclosure. The Settlement Agreement did not require any payment from the Taxpayer notwithstanding his liability as a general partner of the Partnership and his guarantor status on the Bank loan. The Taxpayer had neither the cash nor other financial resources with which to make or finance any significant payment to the Bank.

The Partnership's conveyance of the office building to the Bank was effective February 1, 1991. The Partnership did not conduct any business activity thereafter except to wind up its affairs.

Contemporaneous with the Settlement Agreement and the transfer of the office building to the Bank, the Taxpayer, Mr. Cohen, and the other original partners of the Partnership executed a Release and Indemnification Agreement, dated February 1, 1991 (the "Release"), providing for mutual releases and an indemnification by Mr. Cohen in favor of the Taxpayer. Paragraph 1 of the Release stated as follows:

> "1. Release.
>
> "(a) Partners hereby **release and discharge** [the Taxpayer], his heirs and assigns, and [the Taxpayer's management company], its officers, directors, employees, successors and assigns, from any and all claims, **debts**, demands, accountings, causes of action or **liabilities**, of any nature whatever, matured or unmatured, contingent or absolute, known or unknown, whether within the contemplation of the parties or not, **arising out of the Partnership**, unless caused by or otherwise arising from the fraud or willful misconduct of the [Taxpayer] and/or [the Taxpayer's management company]." {**Emphasis added.**}

The foregoing release fully discharged the Taxpayer from all Partnership debts and liabilities for which he was liable. Thus, the release discharged his obligation under Section 8(c) of the Amendment to restore his negative capital account, an obligation which would otherwise have been triggered by the February 1991 liquidation of the Partnership. The Taxpayer's final negative capital account liability was substantial, even after the allocation of his $195,838 share ($37,302 general partner share + $158,536 limited partner share) of the $746,054 of total Section 1231 gain recognized by the Partnership upon its transfer of the office building to the Bank. The Taxpayer's final capital account balance with respect to his 5% general partnership interest was a negative $156,019, and his final capital account balance with respect to his 21.25% limited partnership interest was a negative $726,852. Absent the Release, the Taxpayer would have been required to pay $882,871 to the Partnership ($156,019 + $726,852) to satisfy his Section 8(c) restoration obligation. In accordance with Section 8(c), the Partnership would have then paid the $882,871 to Mr. Cohen in partial satisfaction of the $2,748,229 that he had loaned the Partnership over the years to fund Partnership cash deficiencies.

Following the transfer of the office building to the Bank, the Partnership wound up its affairs and engaged in no further business activity.

The Taxpayer's accountants reported the $882,871 of negative capital account forgiveness on the Taxpayer's 1991 personal return as long-term capital gain from the deemed sale or exchange of the Taxpayer's general and limited partnership interests. Although the same accountants had also prepared the Partnership's final Form 1065 for 1991 and thus knew about the Settlement Agreement and the Partnership's conveyance of the office building to the Bank, they were not aware of either the Release or the deficit restoration obligation in Section 8(c) of the Amendment.

As of January 31, 1991, the day prior to the date of the Release, the Taxpayer was insolvent in the amount of $734,727.

**Applicable Authorities**

Under Section 61(a)(12), gross income includes income from discharge of indebtedness. Section 108(a)(1)(B) and (a)(3) of the Code provides, however, that debt discharge income is excludable from an insolvent taxpayer's income up to the amount by which the taxpayer is insolvent. Section 108(d)(3) instructs that "insolvent" means the excess of liabilities over the fair market value of assets, and that the determination of a taxpayer's insolvency is to be made immediately before the discharge. Under Section 108(d)(6), the insolvency exclusion of Section 108(a)(1)(B) is determined at the partner level in the case of a partnership.

The term "indebtedness" has long been defined for federal income tax purposes as an existing, unconditional and legally enforceable obligation for the payment of money. First National Company v. Commissioner, 289 F.2d 861, 865 (6th Cir. 1961). As seen in Halle v. Commissioner, 83 F.3d 649 (4th Cir. 1996), a contractual obligation that creates a binding and legally enforceable obligation to pay money will be treated as "indebtedness". The Supreme Court has described the term "discharge of indebtedness" as "convey{ing} *forgiveness of*, or *release from*, an obligation to repay." {Emphasis in original.} U.S. v. Centennial Savings Bank FSB, 499 U.S. 573, 580 (1991).

Treas. Reg. Section 1.704-1(b)(2)(ii) sets forth safe harbor rules for ensuring that allocations of income and loss have economic effect. To comply with these rules, partners must agree to maintain capital accounts under the rules of Treas. Reg. Section 1.704-1(b)(2)(iv) and liquidate according to positive capital account balances. Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3) further requires that if a partner has a deficit balance in his capital account following the liquidation of his interest in the partnership, the partner must be unconditionally obligated to restore the amount of such deficit balance to the partnership by the end of such tax year (or, if later, within 90 days after the date of such liquidation). Any amount so contributed must be paid to creditors of the partnership or distributed to other partners in accordance with their positive capital account balances.

Treas. Reg. Section 1.704-1(b)(2)(ii)(c) clarifies that a partner in no event will be considered obligated to restore the deficit balance in his capital account to the extent such obligation is not legally enforceable.

Treas. Reg. Section 1.704-1(b)(2)(iv)(d)(2) states that a partner whose interest is liquidated will be treated as satisfying his deficit capital restoration obligation to the extent of (1) the fair market value, at the time of contribution, of any negotiable promissory note (of which such partner is the maker) that such partner contributes to the partnership on or after the date his interest is liquidated and within the time specified in

paragraph Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3), and (2) the fair market value, at the time of liquidation, of the unsatisfied portion of any negotiable promissory note (of which such partner is the maker) that such partner previously contributed to the partnership. The fair market value of a partner's note will be no less than the note's outstanding principal balance, provided that it bears interest at a rate at least equal to the applicable federal rate at the time of valuation.

Treas. Reg. Section 1.704-1(b)(2)(ii)(g) provides that the liquidation of a partner's interest in the partnership occurs upon the earlier of (1) the date upon which there is a liquidation of the partnership, or (2) the date upon which there is a liquidation of the partner's interest in the partnership. The liquidation of a partnership occurs upon the earlier of (1) the date upon which the partnership is terminated under Section 708(b)(1), or (2) the date upon which the partnership ceases to be a going concern (even though it may continue in existence for the purpose of winding up its affairs, paying its debts, and distributing any remaining balance to its partners).

Rev. Rul. 72-505, 1972-2 C.B. 102, holds that the amount paid upon liquidation of a partnership by the surviving general partner to partnership creditors on behalf of the insolvent estate of his deceased partner was deductible under Section 166 as a debt which became worthless in the year of the payment.

Under Section 722, a partner's basis in his partnership interest is increased by the amount of money and the adjusted basis of property contributed to the partnership. Section 731(a) requires a partner to recognize gain from the sale or exchange of a partnership interest to the extent that the partner receives a distribution of money from the partnership which exceeds the partner's basis in his interest immediately before the distribution. Under section 733, a partner's basis in his interest is decreased (but not below zero) by the amount of any distribution of money from the partnership.

Section 752(a) provides that an increase in a partner's share of partnership liabilities, or the partner's assumption of a partnership liability, is treated as a contribution of money by the partner to the partnership. Under Section 752(b), a decrease in a partner's share of partnership liabilities is treated as a distribution of money by the partnership to the partner.

Rev. Rul. 92-97, 1992-2 C.B. 124, deals with the interplay of the Section 704(b) substantial economic effect rules and the Sections 752 and 731 deemed distribution rules where a partnership liability is cancelled, resulting in partnership-level debt discharge income. The ruling holds that where there is compliance with the substantial economic effect rules, debt discharge income may be specially allocated among partners. The ruling illustrates that debt discharge income allocated to a partner will provide a basis increase under Section 705(a)(1)(A) offsetting cash deemed distributed under Section 752(b) from the reduction in the partner's share of partnership liabilities for purposes of Section 731(a)'s gain recognition rules.

**Analysis**

1. The Taxpayer's Negative Capital Account Restoration Obligation at the Time the Partnership Liquidated Constituted "Indebtedness" of the Taxpayer Which Was Discharged through the Release.

By executing the Amendment, the Partnership and its two general partners, the Taxpayer and Mr. Cohen, agreed to comply with the economic effect requirements of Treas. Reg. Section 1.704-1(b)(2)(ii). In particular, Section 8(c) of the Amendment set forth the deficit restoration rules of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3), requiring that any partner with a negative capital account balance following the distribution of liquidation proceeds restore the entire negative balance by no later than (1) the end of the taxable year of the liquidation of the Partnership (or of the partner's partnership interest) or (2) 90 days after the date of the liquidation of the Partnership (or of the partner's partnership interest). The amount restored was then required to be paid to the Partnership's creditors or to those partners having positive capital account balances. Section 9 of the Amendment further required that the partners' capital accounts be maintained in accordance with Treas. Reg. Section 1.704-1(b)(2)(iv).

Consequently, by signing the Amendment, the Taxpayer became unconditionally obligated to pay to the Partnership in the year of its liquidation the entire amount of any negative balance in his capital account existing at the time of liquidation. Since any amount paid into the Partnership by the Taxpayer to satisfy the negative capital restoration obligation was required to be paid out to creditors or other partners of the Partnership, this obligation was not an illusory obligation but one that was genuine and legally enforceable by persons who stood to benefit from its enforcement.[1]

The Taxpayer's unconditional obligation continued in existence until February 1, 1991 which, under Treas. Reg. Section 1.704-1(b)(2)(ii)(g), was the date of the Partnership's liquidation. It was on February 1, 1991 that the Settlement Agreement with the Bank and the Release were effective, and, most importantly, it was the date as of which the Partnership's only income-producing asset, its office building, was transferred to the Bank. The Partnership thereafter ceased to exist as a going concern and only engaged in wind-up activity, which, as Treas. Reg. Section 1.704-1(b)(2)(ii)(g) indicates, does not postpone the time of liquidation.

Accordingly, until the February 1, 1991 execution of the Release, the Taxpayer was contractually bound under the Amendment to pay his negative capital account balance upon the Partnership's liquidation, which occurred on February 1, 1991. But for

---

[1] The Maryland Annotated Code, § 9-611(5) and (6) (as in effect in 1991), provided that an assignee for the benefit of creditors or a partner had the right to enforce the contribution obligation of a partner upon dissolution of a partnership. The Maryland Code, § 9-611(1) and (2), also expressly recognized that a partnership debt owed to a partner was a partnership liability which other partners may be called upon to pay upon partnership dissolution absent an agreement to the contrary.

the Release, the Taxpayer's obligation to pay his $882,871 negative balance to the Partnership was both unconditional and enforceable as of the February 1, 1991 liquidation. This contractual obligation clearly constituted "indebtedness" for federal income tax purposes -- that is, an existing, unconditional and legally enforceable obligation for the payment of money. First National Company v. Commissioner, 289 F.2d 861, 865 (6th Cir. 1961); Halle v. Commissioner, 83 F.3d 649 (4th Cir. 1996).

The treatment of a partner's deficit restoration obligation upon a partnership's liquidation as "indebtedness" for federal tax purposes is confirmed in the applicable Treasury Regulations. Treas. Reg. Section 1.704-1(b)(2)(iv)(d)(2) provides that a partner whose interest is liquidated will be treated as satisfying his deficit capital restoration obligation to the extent of (1) the principal amount of a negotiable promissory note bearing adequate interest that he contributes to the partnership, or (2) the outstanding principal balance of a negotiable promissory note bearing adequate interest previously contributed by the partner which the partnership holds at the time of liquidation. Since the regulations permit satisfaction of a deficit restoration obligation existing at liquidation through a previously-contributed or newly-contributed note from the partner, signifying the partner's indebtedness to the Partnership, the deficit restoration obligation itself must constitute indebtedness at the time of liquidation for tax purposes; *i.e.*, an existing, unconditional, enforceable monetary obligation.

It is also clear that the Release executed by the Taxpayer, Mr. Cohen and the other partners of the Partnership fits squarely within the Supreme Court's explanation of the term "discharge of indebtedness" as "convey{ing} *forgiveness of*, or *release from*, an obligation to repay." {Emphasis in original.} U.S. v. Centennial Savings Bank FSB, 499 U.S. 573, 580 (1991). The Release provided to the Taxpayer a "discharge and release" from all debts and liabilities "arising out of the Partnership", thus encompassing his deficit restoration obligation and releasing him from that obligation. Significantly the Release was executed by Mr. Cohen. Mr. Cohen was the one partner who would have benefited from the enforcement of the Taxpayer's deficit restoration obligation, amounting to $882,871, since he was the sole remaining creditor of the Partnership following its 1991 liquidation and would have been entitled to receive the full $882,871 in accordance with Section 8(c) of the Amendment.

Rev. Rul. 72-505, 1972-2 C.B. 102, further confirms the treatment of the Taxpayer's $882,871 liability on liquidation as "indebtedness" the forgiveness of which constituted debt cancellation income. The 1972 ruling addressed the following situation:

(a) A two-person general partnership borrowed funds used in the partnership's business prior to the partnership's dissolution.

(b) One partner died, and the surviving partner paid the entire amount owed.

(c) The deceased partner's estate was insolvent and unable to pay to the surviving partner the deceased partner's 50% share of the debt to which his estate succeeded.

The 1972 ruling held that the amount paid by the surviving general partner to the partnership's creditor on behalf of his partner's estate was deductible under Section 166 as a debt which became worthless in the year of the payment. The ruling reasoned that partners are individually liable for partnership debts, but that because of the right of contribution among partners, the surviving general partner was entitled to contribution from the deceased partner's estate for a 50% share of the debt. To quote the ruling: "This **right of contribution from the partner's estate <u>created a bona fide debt</u>** which arose from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed sum of money." {Emphasis added.} The ruling concluded that the debt was worthless because of the estate's insolvency.

The economic similarities between the 1972 ruling and the situation here are striking. Mr. Cohen and the Taxpayer were the co-general partners of the Partnership. The Partnership borrowed funds to operate its business from Mr. Cohen. Thus, Mr. Cohen was acting in two capacities, first as a general partner of the Partnership and second as a lender to the Partnership. The conveyance of the Partnership's principal asset, the office building, to its secured lender, the Bank, meant that the Partnership had no remaining assets with which to repay its debt to its remaining creditor, Mr. Cohen. Because of his deficit restoration obligation, the Taxpayer was personally liable to pay a share of this Partnership debt, and Mr. Cohen had the right to contribution from the Taxpayer to the extent Mr. Cohen had funded the Taxpayer's share of the debt. **That right to contribution, as the 1972 ruling points out, created a "bona fide debt" between the Taxpayer, the debtor/partner, and Mr. Cohen, the creditor/partner who advanced 100% of the funds and thus paid the Taxpayer's share.**

The Taxpayer's situation represents the flip side of Rev. Rul. 72-505 -- namely, the tax treatment of the insolvent debtor/general partner. As a result of his insolvency, the Taxpayer could not pay his share -- the $882,871 final negative capital account balance -- of the Partnership's remaining debt. Recognizing the Taxpayer's insolvency (which was also recognized by the Bank as it did not require any payment from the Taxpayer), Mr. Cohen discharged the Taxpayer from this liability through the Release. Since the 1972 ruling holds that the creditor/partner can claim a bad debt deduction on payment of an insolvent partner's share of a partnership debt, the conclusion is inescapable that the insolvent debtor/partner, the Taxpayer, realized debt cancellation income when the creditor/partner, Mr. Cohen, discharged him on February 1, 1991 from his contribution obligation to pay his share of the Partnership's remaining debt.

Finally, ILM 200038044, a Legal Memorandum prepared by Associate Chief Counsel, Income Tax and Accounting, in the National Office in response to a request for Significant Service Center Advice, further buttresses the debt discharge position here. The Legal Memorandum was issued on August 14, 2000, and thus represents a

contemporary analysis of a debt discharge issue by Associate Chief Counsel. The issue addressed in the Legal Memorandum was whether the forgiveness of a substantial penalty incurred by a medical graduate for breaching the terms of his scholarship contract resulted in debt discharge income, despite the lack of any direct borrowing by the graduate. Associate Chief Counsel employed the following "implied borrowing" rationale to conclude that the penalty forgiveness created debt discharge income:

> "Similarly, applying the implied borrowing analysis to the facts of this case, cancellation of a penalty owed to the Department of Health and Human Services is equivalent to a transaction in which the taxpayer borrowed cash, and used the proceeds to pay the penalties. A forgiveness of the loan would give rise to income under section 61(a)(12). Since such a transaction would clearly give rise to COD income, the direct reduction of the penalty by the Department of Health and Human Services should also give rise to COD income."

Applying an identical analysis here, the release of the Taxpayer from his $882,871 deficit restoration obligation is the equivalent of the Taxpayer's having borrowed $882,871 from a third party lender and contributing that cash to the Partnership in payment of his deficit restoration obligation. Since a subsequent forgiveness of the third party loan "would clearly give rise" to $882,871 of debt discharge income, the direct release of the Taxpayer "should also give rise to COD income."

2. The Debt Discharge Income Realized by the Taxpayer Provided the Taxpayer with Additional Basis in his Partnership Interest Equal to the Amount of Such Income, Thereby Offsetting Cash Deemed Distributed under Section 752(b) as a Result of the Decrease in the Taxpayer's Share of Liabilities.

There is no direct authority addressing the basis consequences to a partner where the partner's deficit capital restoration obligation is cancelled at the time of the partnership's liquidation. Rev. Rul. 92-97, 1992-2 C.B. 124, demonstrates that debt discharge income allocated by a partnership to a partner will provide a basis increase under Section 705(a)(1)(A) offsetting cash deemed distributed under Section 752(b) from the reduction in the partner's share of partnership liabilities for purposes of Section 731(a)'s gain recognition rules. However, the 1992 ruling dealt with the cancellation of a liability owed by the partnership to a third-party creditor, rather than a deficit capital liability owed by a partner to the partnership. Thus, the ruling has no direct applicability here except to suggest generally that a partner's realization of debt discharge income resulting from his participation in a partnership should provide a basis increase.

However, the implied borrowing rational of ILM 200038044 sets forth a simple analytical approach to the basis issue. Under that rationale, as previously described, the release of the Taxpayer from his $882,871 deficit capital restoration obligation can be viewed as if the Taxpayer had borrowed $882,871 from a third party lender and

contributed that cash to the Partnership in payment of his restoration obligation. Viewed in this manner, the Taxpayer clearly obtains $882,871 of basis in his partnership interest under Section 722 from his deemed cash contribution which offsets the $882,871 of cash deemed distributed to the Taxpayer under Section 752(b) from the reduction in his share of Partnership liabilities.

The Section 704(b) regulations suggest a second analytical approach which would also provide the Taxpayer with an $882,871 basis increase. Under the regulations, the Taxpayer could have contributed an $882,871 promissory note to the Partnership on the Partnership's February 1, 1991 liquidation date to satisfy his deficit restoration obligation. Pursuant to both Section 8(c) of the Amendment and the regulations, this note would have then been distributed to its sole remaining creditor, Mr. Cohen, to whom the Partnership owed $2,748,229. The Taxpayer's $882,871 note would have thus replaced $882,871 of the debt owed by the Partnership to Mr. Cohen. By contributing the note, the Taxpayer would have assumed $882,871 of Partnership debt owed to Mr. Cohen. The forgiveness of this note pursuant to the Release signed by Mr. Cohen would have then caused Mr. Bassing to realize $882,871 of debt discharge income.

Under Section 752(a), a partner's assumption of a partnership liability is treated as a cash contribution by the partner to the partnership, which provides the partner with a corresponding basis increase in his partnership interest under Section 722. Since the Taxpayer's contribution of an $882,871 note on the Partnership's liquidation date to pay his negative capital amount would have provided the Taxpayer with an $882,871 basis increase under Sections 752(a) and 722, logic dictates that the same basis-increasing result should occur when the obligation which would effect the liability assumption is discharged on the Partnership's liquidation date.

Accordingly, under either the implied borrowing or the assumed partnership liability rationale, Mr. Bassing realized $882,871 of debt discharge income, which provided him with $882,871 of additional partnership interest basis to eliminate the capital gain otherwise triggered by Sections 752(b) and 731(a).

CCE Form 1040 Department of the Treasury—Internal Revenue Service

# U.S. Individual Income Tax Return 1991

Return as Filed

For the year January–December 31, 1991, or other tax year beginning , 1991, ending , 19 . OMB No. 1545-0074

Your first name and initial: CHARLES W — Last name: BASSING III — Your social security number: 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

If a joint return, spouse's first name and initial — Last name — Spouse's social security no.

Home address (number and street). (If you have a P.O. box, see page 11.) Apt. no.: 11479 SENECA VIEW WAY

City, town or post office, state, and ZIP code. (If you have a foreign address, see page 11.): GREAT FALLS VA 22066

For Privacy Act and Paperwork Reduction Act Notice, see instructions.

BASS

**Presidential Election Campaign** — Do you want $1 to go to this fund? Yes / X No. If joint return, does your spouse want $1 to go to this fund? Yes / No. *Note: Checking "Yes" will not change your tax or reduce your refund.*

## Filing Status

Check only one box.

1. X Single
2. Married filing joint return (even if only one had income)
3. Married filing separate return. Enter spouse's social security number above and full name here. ▶
4. Head of household (with qualifying person). (See page 12.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5. Qualifying widow(er) with dependent child (year spouse died ▶ 19 ). (See page 12.)

## Exemptions

(See page 12.)

6a X Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a. But be sure to check the box on line 33b on page 2.

b Spouse

No. of boxes checked on 6a and 6b: 1

c Dependents: (1) Name (first, initial, and last name) (2) Check if under age 1 (3) If age 1 or older, dependent's social security number (4) Dependent's relationship to you (5) No. of months lived in your home in 1991

If more than six dependents, see page 13.

No. of your children on 6c who: ● lived with you ● didn't live with you due to divorce or separation (see page 14)

No. of other dependents on 6c

d If your child didn't live with you but is claimed as your dependent under a pre-1985 agreement, check here ▶

e Total number of exemptions claimed — Add numbers entered on lines above ▶ 1

RETAIN THIS COPY FOR YOUR FILES

## Income

Attach Copy B of your Forms W-2, W-2G, and 1099-R here.

If you did not get a W-2, see page 10.

Attach check or money order on top of any Forms W-2, W-2G, or 1099-R.

| Line | Description | | Amount |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. (attach Form(s) W-2) SEE STMT 1 | 7 | 15,000. |
| 8a | Taxable interest income (also attach Schedule B if over $400) | 8a | 4,128. |
| b | Tax-exempt interest income (see pg. 16). DON'T include on line 8a | 8b | |
| 9 | Dividend income (also attach Schedule B if over $400) | 9 | |
| 10 | Taxable refunds of state and local income taxes, if any, from worksheet on page 16 | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss) (attach Schedule C) | 12 | |
| 13 | Capital gain or (loss) (attach Schedule D) | 13 | 1,078,709. |
| 14 | Capital gain distributions not reported on line 13 (see page 17) | 14 | |
| 15 | Other gains or (losses) (attach Form 4797) | 15 | |
| 16a | Total IRA distributions 16a — 16b Taxable amount | 16b | |
| 17a | Total pensions and annuities 17a — 17b Taxable amount | 17b | |
| 18 | Rents, royalties, partnerships, estates, trusts, etc. (attach Schedule E) | 18 | -603,244. |
| 19 | Farm income or (loss) (attach Schedule F) | 19 | |
| 20 | Unemployment compensation (insurance) (see page 18) | 20 | |
| 21a | Social security benefits 21a — 21b Taxable amount | 21b | |
| 22 | Other income (list type and amount) SEE STATEMENT 4 | 22 | -220,223. |
| 23 | Add the amounts shown in the far right column for lines 7 through 22. This is your total income ▶ | 23 | 274,370. |

## Adjustments to Income

(See page 19.)

| Line | Description | | Amount |
|---|---|---|---|
| 24a | Your IRA deduction, from applicable worksheet on page 20 or 21 | 24a | |
| b | Spouse's IRA deduction, from applicable worksheet on page 20 or 21 | 24b | |
| 25 | One-half of self-employment tax (see page 21) | 25 | |
| 26 | Self-employed health insurance deduction, from worksheet on pg. 22 | 26 | |
| 27 | Keogh retirement plan and self-employed SEP deduction | 27 | |
| 28 | Penalty on early withdrawal of savings | 28 | |
| 29 | Alimony paid. Recipient's SSN ▶ | 29 | |
| 30 | Add lines 24a through 29. ▶ | 30 | 0. |

## Adjusted Gross Income

| Line | Description | | Amount |
|---|---|---|---|
| 31 | Subtract line 30 from line 23. This is your adjusted gross income. *If this amount is less than $21,250 and a child lived with you, see page 45 to find out if you can claim the "Earned Income Credit" on line 56* ▶ | 31 | 274,370. |

H788

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

Form 1040 (1991)



**Tax Computation**

32 Amount from line 31 (adjusted gross income) . . . 32 274,370.

33a Check if: ___ You were 65 or older, ___ Blind; ___ Spouse was 65 or older, ___ Blind.
Add the number of boxes checked above and enter the total here . . . ▶ 33a

b If your parent (or someone else) can claim you as a dependent, check here . . . ▶ 33b

c If you are married filing a separate return and your spouse itemizes deductions, or you are a dual-status alien, see page 23 and check here . . . ▶ 33c

If you want the IRS to figure your tax, see page 24.

34 Enter the larger of your: **Itemized deductions** (from Schedule A, line 25), OR **Standard deduction** (shown below for your filing status). **Caution:** *If you checked any box on line 33a or b, go to page 23 to find your standard deduction. If you checked box 33c, your standard deduction is zero.*
● Single — $3,400 ● Head of household — $5,000 ● Married filing separately — $2,850
● Married filing jointly or Qualifying widow(er) — $5,700 . . . 34 19,604.

35 Subtract line 34 from line 32 . . . 35 254,766.

36 If line 32 is $75,000 or less, multiply $2,150 by the total number of exemptions claimed on line 6e. If line 32 is over $75,000, see page 24 for the amount to enter . . . 36 0.

37 **Taxable income.** Subtract line 36 from line 35. (If line 36 is more than line 35, enter -0-.) . . . 37 254,766.

38 Enter tax. Check if from a ___ Tax Table, b ___ Tax Rate Schedules, c [X] Schedule D, or d ___ Form 8615 (see page 24). (Amount, if any, from Form(s) 8814 ▶ e ______ ) . . . 38 68,696.

39 Additional taxes (see page 24). Check if from a ___ Form 4970 b ___ Form 4972 . . . 39

40 Add lines 38 and 39 . . . ▶ 40 68,696.

**Credits** (See page 25.)

41 Credit for child and dependent care expenses *(attach Form 2441)* . . . 41

42 Credit for the elderly or the disabled *(attach Schedule R)* . . . 42

43 Foreign tax credit *(attach Form 1116)* . . . 43

44 Other credits (see pg. 25). Check if from a ___ Form 3800 b ___ Form 8396 c ___ Form 8801 d ___ Form (specify) ______ . . . 44

45 Add lines 41 through 44 . . . 45

46 Subtract line 45 from line 40. (If line 45 is more than line 40, enter -0-.) . . . ▶ 46 68,696.

**Other Taxes**

47 Self-employment tax *(attach Schedule SE)* . . . 47

48 Alternative minimum tax *(attach Form 6251)* . . . 48 0.

49 Recapture taxes (see page 26). Check if from a ___ Form 4255 b ___ Form 8611 c ___ Form 8828 . . . 49

50 Social security and Medicare tax on tip income not reported to employer *(attach Form 4137)* . . . 50

51 Tax on an IRA or a qualified retirement plan *(attach Form 5329)* . . . 51

52 Advance earned income credit payments from Form W-2 . . . 52

53 Add lines 46 through 52. This is your **total tax** . . . ▶ 53 68,696.

**Payments**

Attach Forms W-2, W-2G, and 1099-R to front.

54 Federal income tax withheld (if any is from Form(s) 1099, check ▶ ___ ) . . . 54

55 1991 estimated tax payments and amount applied from 1990 return . . . 55

56 **Earned income credit** *(attach Schedule EIC)* . . . 56

57 Amount paid with Form 4868 (extension request) . . . 57

58 Excess social security, Medicare, and RRTA tax withheld (see page 27) . . . 58

59 Other payments (see page 27). Check if from a ___ Form 2439 b ___ Form 4136 . . . 59

60 Add lines 54 through 59. These are your **total payments** . . . ▶ 60 0.

**Refund or Amount You Owe**

61 If line 60 is more than line 53, subtract line 53 from line 60. This is the amount you **OVERPAID** . . . ▶ 61

62 Amount of line 61 to be **REFUNDED TO YOU** . . . ▶ 62

63 Amount of line 61 to be **APPLIED TO YOUR 1992 ESTIMATED TAX** ▶ 63

64 If line 53 is more than line 60, subtract line 60 from line 53. This is the **AMOUNT YOU OWE.** Attach check or money order for full amount payable to "Internal Revenue Service." Write your name, address, social security number, daytime phone number, and "1991 Form 1040" on it. . . . 64 68,696.

65 Estimated tax penalty (see page 28). Also include on line 64 . . . 65

**Sign Here**

Keep a copy of this return for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Your signature | Date | Your occupation DEVELOPER

▶ Spouse's signature (if joint return, BOTH must sign) | Date | Spouse's occupation

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ___ | Preparer's social security no.

Firm's name (or yours if self-employed) and address ▶ BERLIN, KARAM & RAMOS, P.A.
8484 GEORGIA AVENUE, THIRD FLOOR
SILVER SPRING MD

E.I. No. 52-1367749

ZIP code 20910

SCHEDULES A&B (Form 1040)
Department of the Treasury Internal Revenue Service

# Schedule A - Itemized Deductions

▶ Attach to Form 1040. ▶ See Instructions for Schedules A and B (Form 1040).

OMB No. 1545-0074
1991
Attachment Sequence No. 07

Name(s) shown on Form 1040: CHARLES W BASSING III
Your social security number: 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

| Section | Line | Description | Box | Amount | Box | Total |
|---|---|---|---|---|---|---|
| Medical and Dental Expenses | | Caution: *Do not include expenses reimbursed or paid by others.* | | | | |
| | 1 | Medical and dental expenses. (See page 38.) | 1 | | | |
| | 2 | Enter amount from Form 1040, line 32 [2] | | | | |
| | 3 | Multiply line 2 above by 7.5% (.075) | 3 | | | |
| | 4 | Subtract line 3 from line 1. Enter the result. If less than zero, enter -0- ▶ | | | 4 | |
| Taxes You Paid (See page 38.) | 5 | State and local income taxes | 5 | | | |
| | 6 | Real estate taxes | 6 | 3,646. | | |
| | 7 | Other taxes. (List - include personal property taxes.) ▶ | 7 | | | |
| | 8 | Add lines 5 through 7. Enter the total ▶ | | | 8 | 3,646. |
| Interest You Paid (See page 39.) | 9a | Home mortgage interest and points reported to you on Form 1098 | 9a | 19,004. | | |
| | b | Home mortgage interest not reported to you on Form 1098. (If paid to an individual, show that person's name and address.) ▶ | 9b | | | |
| Note: Personal interest is no longer deductible. | 10 | Points not reported to you on Form 1098. (See instructions for special rules.) | 10 | 125. | | |
| | 11 | Investment interest (attach Form 4952 if required). (See page 40.) | 11 | | | |
| | 12 | Add lines 9a through 11. Enter the total ▶ | | | 12 | 19,129. |
| Gifts to Charity (See page 40.) | | Caution: *If you made a charitable contribution and received a benefit in return, see page 40.* | | | | |
| | 13 | Contributions by cash or check | 13 | | | |
| | 14 | Other than cash or check. (You MUST attach Form 8283 if over $500.) | 14 | | | |
| | 15 | Carryover from prior year. SEE STMT 9 | 15 | 2,060. | | |
| | 16 | Add lines 13 through 15. Enter the total ▶ | | | 16 | 2,060. |
| Casualty and Theft Losses | 17 | Casualty or theft loss(es) (attach Form 4684). (See page 40.) ▶ | | | 17 | |
| Moving Expenses | 18 | Moving expenses (attach Form 3903 or 3903F). (See page 41.) ▶ | | | 18 | |
| Job Expenses and Most Other Miscellaneous Deductions | 19 | Unreimbursed employee expenses - job travel, union dues, job education, etc. (You MUST attach Form 2106 if required. See instructions.) ▶ | 19 | | | |
| | 20 | Other expenses (investment, tax preparation, safe deposit box, etc.). List type and amount ▶ | 20 | | | |
| (See page 41 for expenses to deduct here.) | 21 | Add lines 19 and 20 | 21 | | | |
| | 22 | Enter amount from Form 1040, line 32 [22] | | | | |
| | 23 | Multiply line 22 above by 2% (.02) | 23 | | | |
| | 24 | Subtract line 23 from line 21. Enter the result. If less than zero, enter -0- ▶ | | | 24 | |
| Other Miscellaneous Deductions | 25 | Other (from list on page 41 of instructions). List type and amount ▶ | | | 25 | |
| Total Itemized Deductions | 26 | • If the amount on Form 1040, line 32, is $100,000 or less ($50,000 or less if married filing separately), add lines 4, 8, 12, 16, 17, 18, 24, and 25. Enter the total here. • If the amount on Form 1040, line 32, is more than $100,000 (more than $50,000 if married filing separately), see page 42 for the amount to enter. ▶ | | | 26* | 19,604. |

Caution: *Be sure to enter on Form 1040, line 34, the* LARGER *of the amount on line 26 above or your standard deduction.*

*ITEMIZED DEDUCTIONS LIMITED BY AGI

For Paperwork Reduction Act Notice, see Form 1040 Instructions.
K788

Schedule A (Form 1040) 1991

Schedules A&B (Form 1040) 1991 OMB No. 1545-0074 Page 2

Name(s) shown on Form 1040. (Do not enter name and social security number if shown on Page 1.) CHARLES W BASSING III

Your social security number 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

# Schedule B-Interest and Dividend Income

Attachment Sequence No. 08

**Part I Interest Income**

If you received more than $400 in taxable interest income, or you are claiming the exclusion of interest from series EE U.S. savings bonds issued after 1989 (see page 43), you must complete Part I. List ALL interest received in Part I. If you received more than $400 in taxable interest income, you must also complete Part III. If you received, as a nominee, interest that actually belongs to another person, or you received or paid accrued interest on securities transferred between interest payment dates, see page 43.

(See pages 15 and 43.)

Note: If you received a Form 1099-INT, Form 1099-OID, or substitute statement, from a brokerage firm, list the firm's name as the payer and enter the total interest shown on that form.

| Interest Income | | Amount |
|---|---|---|
| 1 Interest income. (List name of payer - if any interest income is from seller-financed mortgages, see instructions and list this interest first.) ▶ | | |
| FIRST AMERICAN BANK OF VA | | 1,753. |
| CENTRAL FIDELITY BANK | | 996. |
| FIRST VIRGINIA BANK | | 927. |
| FROM PARTNERSHIPS | 1 | 452. |
| 2 Add the amounts on line 1. | 2 | 4,128. |
| 3 Enter the excludable savings bond interest, if any, from Form 8815, line 14. Attach Form 8815 to Form 1040 | 3 | |
| 4 Subtract line 3 from line 2. Enter the result here and on Form 1040, line 8a ▶ | 4 | 4,128. |

**Part II Dividend Income**

If you received more than $400 in gross dividends and/or other distributions on stock, you must complete Parts II and III. If you received, as a nominee, dividends that actually belong to another person, see page 43.

(See pages 16 and 43.)

Note: If you received a Form 1099-DIV, or substitute statement, from a brokerage firm, list the firm's name as the payer and enter the total dividends shown on that form.

| Dividend Income | | | Amount |
|---|---|---|---|
| 5 Dividend income. (List name of payer-include on this line capital gain distributions, nontaxable distributions, etc.) ▶ | | 5 | |
| 6 Add the amounts on line 5. Enter the total. | | 6 | |
| 7 Capital gain distributions. Enter here and on Schedule D* | 7 | | |
| 8 Nontaxable distributions. (See the instructions for Form 1040, line 9.) | 8 | | |
| 9 Add lines 7 and 8. | | 9 | |
| 10 Subtract line 9 from line 6. Enter the result here and on Form 1040, line 9 ▶ | | 10 | |

*If you received capital gain distributions but do not need Schedule D to report any other gains or losses, see the instructions for Form 1040, lines 13 and 14.*

**Part III Foreign Accounts and Foreign Trusts**

If you received more than $400 of interest or dividends, OR if you had a foreign account or were a grantor of, or a transferor to, a foreign trust, you must answer both questions in Part III.

(See page 43.)

| | Yes | No |
|---|---|---|
| 11a At any time during 1991, did you have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? (See page 43 for exceptions and filing requirements for Form TD F 90-22.1.) | | X |
| b If "Yes," enter the name of the foreign country ▶ | | |
| 12 Were you the grantor of, or transferor to, a foreign trust that existed during 1991, whether or not you have any beneficial interest in it? If "Yes," you may have to file Form 3520, 3520-A, or 926 | | X |

For Paperwork Reduction Act Notice, see Form 1040 instructions.
H782

SCHEDULE D (Form 1040)

Department of the Treasury Internal Revenue Service

# Capital Gains and Losses

(And Reconciliation of Forms 1099-B for Bartering Transactions)

▶ Attach to Form 1040. ▶ See Instructions for Schedule D (Form 1040).

▶ For more space to list transactions for lines 1a and 8a, get Schedule D-1 (Form 1040).

OMB No. 1545-0074

1991

Attachment Sequence No. 12A

Name(s) shown on Form 1040: CHARLES W BASSING III

Your social security number: 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

**Caution:** *Add the following amounts reported to you for 1991 on Forms 1099-B and 1099-S (or on substitute statements): (a) proceeds from transactions involving stocks, bonds, and other securities, and (b) gross proceeds from real estate transactions not reported on another form or schedule. If this total does not equal the total of lines 1c and 8c, column (d), attach a statement explaining the difference.*

## Part I Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example, 100 shares 7% preferred of "Z" Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) LOSS If (e) is more than (d) subtract (d) from (e) | (g) GAIN If (d) is more than (e), subtract (e) from (d) |
|---|---|---|---|---|---|---|
| 1a Stocks, Bonds, Other Securities, and Real Estate. Include Form 1099-B and 1099-S Transactions. | | | | | | |
| 1b Amounts from Schedule D-1, line 1b (attach Schedule D-1) | | | | | | |
| 1c Total of All Sales Price Amounts. Add column (d) of lines 1a and 1b ▶ 1c | | | | | | |
| 1d Other Transactions (Do NOT include real estate transactions from Forms 1099-S on this line. Report them on line 1a.) | | | | | | |

| | Line | (f) | (g) |
|---|---|---|---|
| 2 Short-term gain from sale or exchange of your home from Form 2119, line 10 or 14c | 2 | | |
| 3 Short-term gain from installment sales from Form 6252, line 22 or 30 | 3 | | |
| 4 Net short-term gain or (loss) from partnerships, S corporations, and fiduciaries | 4 | | |
| 5 Short-term capital loss carryover from 1990 Schedule D, line 29 | 5 | | |
| 6 Add lines 1a, 1b, 1d, and 2 through 5, in columns (f) and (g) | 6 | | |
| 7 Net short-term capital gain or (loss). Combine columns (f) and (g) of line 6 | 7 | | |

## Part II Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property | (b) Date acquired | (c) Date sold | (d) Sales price | (e) Cost or other basis | (f) LOSS | (g) GAIN |
|---|---|---|---|---|---|---|
| 8a Stocks, Bonds, Other Securities, and Real Estate. Include Form 1099-B and 1099-S Transactions. | | | | | | |
| SEE STATEMENT 6 | | | | | | 882,871. |
| 8b Amounts from Schedule D-1, line 8b (attach Schedule D-1) | | | | | | |
| 8c Total of All Sales Price Amounts. Add column (d) of lines 8a and 8b ▶ 8c | | | | | | |
| 8d Other Transactions (Do NOT include real estate transactions from Forms 1099-S on this line. Report them on line 8a.) | | | | | | |

| | Line | (f) | (g) |
|---|---|---|---|
| 9 Long-term gain from sale or exchange of your home from Form 2119, line 10 or 14c | 9 | | |
| 10 Long-term gain from installment sales from Form 6252, line 22 or 30 | 10 | | |
| 11 Net long-term gain or (loss) from partnerships, S corporations, and fiduciaries | 11 | | |
| 12 Capital gain distributions | 12 | | |
| 13 Gain from Form 4797, line 7 or 9 | 13 | | 195,838. |
| 14 Long-term capital loss carryover from 1990 Schedule D, line 36 | 14 | | |
| 15 Add lines 8a, 8b, 8d, and 9 through 14, in columns (f) and (g) | 15 | | 1,078,709. |
| 16 Net long-term capital gain or (loss). Combine columns (f) and (g) of line 15 | 16 | | 1,078,709. |

Schedule D (Form 1040) 1991 ...ment Sequence No. 12A Page 2

Name(s) shown on Form 1040. (Do not enter name and social security number if shown on page 1.) Your social security number

CHARLES W BASSING III 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

**Part III Summary of Parts I and II**

| | | |
|---|---|---|
| 17 Combine lines 7 and 16 and enter the net gain or (loss) here. If the result is a gain, also enter the gain on Form 1040, line 13 (Note: *If both lines 16 and 17 are gains, see Part IV below.*) | 17 | 1,078,709. |
| 18 If line 17 is a (loss), enter here and as a (loss) on Form 1040, line 13, the smaller of: a The (loss) on line 17; or b ($3,000) or, if married filing a separate return, ($1,500) | 18 | |

Note: *When figuring whether 18a or 18b is smaller, treat both numbers as positive.*
Complete Part V if the loss on line 17 is more than the loss on line 18, OR if Form 1040, line 37, is zero.

**Part IV Tax Computation Using Maximum Capital Gains Rate**

USE THIS PART TO FIGURE YOUR TAX ONLY IF BOTH LINES 16 AND 17 ARE GAINS, AND:

| You checked filing status box: | AND | Form 1040, line 37, is over: | You checked filing status box: | AND | Form 1040, line 37, is over: |
|---|---|---|---|---|---|
| 1 | | $49,300 | 3 | | $41,075 |
| 2 or 5 | | $82,150 | 4 | | $70,450 |

| | | |
|---|---|---|
| 19 Enter the amount from Form 1040, line 37 | 19 | 254,766. |
| 20 Enter the smaller of line 16 or line 17 | 20 | 1,078,709. |
| 21 Subtract line 20 from line 19 | 21 | -823,943. |
| 22 Enter: a $20,350 if you checked filing status box 1; b $34,000 if you checked filing status box 2 or 5; c $17,000 if you checked filing status box 3; or d $27,300 if you checked filing status box 4 | 22 | 20,350. |
| 23 Enter the greater of line 21 or line 22 | 23 | 20,350. |
| 24 Subtract line 23 from line 19 | 24 | 234,416. |
| 25 Figure the tax on the amount on line 23. Use the Tax Table or Tax Rate Schedules, whichever applies | 25 | 3,060. |
| 26 Multiply line 24 by 28% (.28) | 26 | 65,636. |
| 27 Add lines 25 and 26. Enter here and on Form 1040, line 38, and check the box for Schedule D | 27 | 68,696. |

**Part V Capital Loss Carryovers from 1991 to 1992**

**Section A. - Carryover Limit**

| | | |
|---|---|---|
| 28 Enter the amount from Form 1040, line 35. If a loss, enclose the amount in parentheses | 28 | |
| 29 Enter the loss from line 18 as a positive amount | 29 | |
| 30 Combine lines 28 and 29. If zero or less, enter -0- | 30 | |
| 31 Enter the smaller of line 29 or line 30 | 31 | |

**Section B. - Short-Term Capital Loss Carryover to 1992** (Complete this section only if there is a loss on both lines 7 and 18.)

| | | | | |
|---|---|---|---|---|
| 32 Enter the loss from line 7 as a positive amount | | | 32 | |
| 33 Enter the gain, if any, from line 16 | 33 | | | |
| 34 Enter the amount from line 31 | 34 | | | |
| 35 Add lines 33 and 34 | | | 35 | |
| 36 Short-term capital loss carryover to 1992. Subtract line 35 from line 32. If zero or less, enter -0- | | | 36 | |

**Section C. - Long-Term Capital Loss Carryover to 1992** (Complete this section only if there is a loss on both lines 16 and 18.)

| | | | | | | |
|---|---|---|---|---|---|---|
| 37 Enter the loss from line 16 as a positive amount | | | | | 37 | |
| 38 Enter the gain, if any, from line 7 | | | 38 | | | |
| 39 Enter the amount from line 31 | 39 | | | | | |
| 40 Enter the amount, if any, from line 32 | 40 | | | | | |
| 41 Subtract line 40 from line 39. If zero or less, enter -0- | | | 41 | | | |
| 42 Add lines 38 and 41 | | | | | 42 | |
| 43 Long-term capital loss carryover to 1992. Subtract line 42 from line 37. If zero or less, enter -0- | | | | | 43 | |

**Part VI Election Not to Use the Installment Method** (Complete this part only if you elect out of the installment method and report a note or other obligation at less than full face value.)

44 Check here if you elect out of the installment method. ▶ ☐

45 Enter the face amount of the note or other obligation. ▶

46 Enter the percentage of valuation of the note or other obligation. ▶ %

**Part VII Reconciliation of Forms 1099-B for Bartering Transactions** (Complete this part if you received one or more Forms 1099-B or substitute statements reporting bartering income.)

| | | Amount of bartering income from Form 1099-B or substitute statement reported on form or schedule |
|---|---|---|
| 47 Form 1040, line 22 | 47 | |
| 48 Schedule C, D, E, or F (Form 1040) (specify) ▶ | 48 | |
| 49 Other form or schedule (identify) (if nontaxable, indicate reason - attach additional sheets if necessary): | 49 | |
| 50 Total. Add lines 47 through 49. This amount should be the same as the total bartering income on all Forms 1099-B and substitute statements received for bartering transactions | 50 | |

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

Schedule E (Form 1040) 1991 Attachment Sequence No. 13 Page 2

Name(s) shown on return. (Do not enter name and social security number if shown on page 1.) CHARLES W BASSING III

Your social security number 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

*Note: If you report amounts from farming or fishing on Schedule E, you must enter your gross income from those activities on line 41 below.*

## Part II Income or Loss From Partnerships and S Corporations

If you report a loss from an at-risk activity, you MUST check either column (e) or (f) of line 27 to describe your investment in the activity. If you check column (f), you must attach Form 6198.

| 27 | (a) Name | (b) Enter P for partnership; S for S corp. | (c) Check if foreign partnership | (d) Employer identification number | Investment At Risk? (e) All is at risk | (f) Some is not at risk |
|---|---|---|---|---|---|---|
| A | SEE STATEMENT 5 | P | | | X | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (g) Passive loss allowed (attach Form 8582 if required) | (h) Passive income from Schedule K-1 | (i) Nonpassive loss from Schedule K-1 | (j) Section 179 expense deduction from Form 4562 | (k) Nonpassive income from Schedule K-1 |
| A | 603,244. | | | | |
| B | | | | | |
| C | | | | | |
| D | | | | | |
| E | | | | | |
| F | | | | | |
| G | | | | | |
| 28a Totals | | | | | |
| b Totals | 603,244. | | | | |

| | | |
|---|---|---|
| 29 | Add columns (h) and (k) of line 28a. Enter the total income here | 29 |
| 30 | Add columns (g), (i), and (j) of line 28b. Enter the total here | 30 -603,244. |
| 31 | Total partnership and S corporation income or (loss). Combine lines 29 and 30. Enter the result here and include in the total on line 40 below | 31 -603,244. |

## Part III Income or Loss From Estates and Trusts

| 32 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 33a Totals | | | | |
| b Totals | | | | |

| | | |
|---|---|---|
| 34 | Add columns (d) and (f) of line 33a. Enter the total income here | 34 |
| 35 | Add columns (c) and (e) of line 33b. Enter the total here | 35 |
| 36 | Total estate and trust income or (loss). Combine lines 34 and 35. Enter the result here and include in the total on line 40 below | 36 |

## Part IV Income or Loss From Real Estate Mortgage Investment Conduits (REMICs)–Residual Holder

| 37 (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|
| | | | | |

38 Combine columns (d) and (e) only. Enter the result here and include in the total on line 40 below . . . 38

## Part V Summary

| | | |
|---|---|---|
| 39 | Net farm rental income or (loss) from Form 4835. (Also complete line 41 below.) | 39 |
| 40 | TOTAL income or (loss). Combine lines 26, 31, 36, 38, and 39. Enter the result here and on Form 1040, line 18 | ▶ 40 -603,244. |
| 41 | Reconciliation of Farming and Fishing Income: Enter your gross farming and fishing income reported in Parts II and III and on line 39 | 41 |

For Paperwork Reduction Act Notice, see Form 1040 Instructions. 11785 Schedule E (Form 1040) 1991

Form **4797**

Department of the Treasury
Internal Revenue Service (X)

# Sales of Business Property

(Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F)

▶ Attach to your tax return. ▶ See separate instructions.

OMB No. 1545-0184

**1991**

Attachment Sequence No. 27

Name(s) shown on return: CHARLES W BASSING III

Identifying number: 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

**Part I** Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft – Property Held More Than 1 Year

1 Enter here the gross proceeds from the sale or exchange of real estate reported to you for 1991 on Form(s) 1099-S (or a substitute statement) that you will be including on lines 2, 10, or 20 . . . . . . 1

| (a) Description of property | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) LOSS ((f) minus the sum of (d) and (e)) | (h) GAIN ((d) plus (e) minus (f)) |
|---|---|---|---|---|---|---|---|
| 2 | | | | | | | |
| OTHER SECTION 1231 GAIN OR LOSS FROM PARTNERSHIPS | | | | | | | |
| SEE STATEMENT 5 | | | | | | | 195,838. |

| | | (g) | (h) |
|---|---|---|---|
| 3 | Gain, if any, from Form 4684, Section B, line 21 | | |
| 4 | Section 1231 gain from installment sales from Form 6252, line 22 or 30 | | |
| 5 | Gain, if any, from line 32, from other than casualty or theft | | |
| 6 | Add lines 2 through 5 in columns (g) and (h) | | 195,838. |
| 7 | Combine columns (g) and (h) of line 6. Enter gain or (loss) here, and on the appropriate line as follows: | | 195,838. |

**Partnerships.**– Enter the gain or (loss) on Form 1065, Schedule K, line 6. Skip lines 8, 9, 11, and 12 below.

**S corporations.**– Report the gain or (loss) following the instructions for Form 1120S, Schedule K, lines 5 and 6. Skip lines 8, 9, 11, and 12 below, unless line 7 is a gain and the S corporation is subject to the capital gains tax.

**All others.**– If line 7 is zero or a loss, enter the amount on line 11 below and skip lines 8 and 9. If line 7 is a gain and you did not have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain as a long-term capital gain on Schedule D and skip lines 8, 9, and 12 below.

8 Nonrecaptured net section 1231 losses from prior years

9 Subtract line 8 from line 7. If zero or less, enter -0-. Also enter on the appropriate line as follows:

**S corporations.**– Enter this amount (if more than zero) on Schedule D (Form 1120S), line 7, and skip lines 11 and 12 below.

**All others.**– If line 9 is zero, enter the amount from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below, and enter the amount from line 9 as a long-term capital gain on Schedule D.

**Part II** Ordinary Gains and Losses

10 Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

11 Loss, if any, from line 7

12 Gain, if any, from line 7, or amount from line 8 if applicable

13 Gain, if any, from line 31

14 Net gain or (loss) from Form 4684, Section B, lines 13 and 20a

15 Ordinary gain from installment sales from Form 6252, line 21 or 29

16 Recapture of section 179 deduction for partners and S corporation shareholders from property dispositions by partnerships and S corporations

17 Add lines 10 through 16 in columns (g) and (h).

18 Combine columns (g) and (h) of line 17. Enter gain or (loss) here, and on the appropriate line as follows:

a For all except individual returns: Enter the gain or (loss) from line 18 on the return being filed.

b For individual returns:

(1) If the loss on line 11 includes a loss from Form 4684, Section B, Part II, column (b)(ii), enter that part of the loss here and on line 20 of Schedule A (Form 1040). Identify as from "Form 4797, line 18b(1)"

(2) Redetermine the gain or (loss) on line 18, excluding the loss, if any, on line 18b(1). Enter here and on Form 1040, line 15

For Paperwork Reduction Act Notice, see separate instructions.

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

Form 4797 (1991) Page 2

**Part III** Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255

| 19 Description of sections 1245, 1250, 1252, 1254, and 1255 property: | Date acquired (mo., day, yr.) | Date sold (mo., day, yr.) |
|---|---|---|
| A | | |
| B | | |
| C | | |
| D | | |

| Relate lines 19A through 19D to these columns ▶ | Property A | Property B | Property C | Property D |
|---|---|---|---|---|
| 20 Gross sales price (Note: *See line 1 before completing.*) | | | | |
| 21 Cost or other basis plus expense of sale | | | | |
| 22 Depreciation (or depletion) allowed or allowable | | | | |
| 23 Adjusted basis. Subtract line 22 from line 21 | | | | |
| 24 Total gain. Subtract line 23 from line 20 | | | | |
| 25 If section 1245 property: | | | | |
| a Depreciation allowed or allowable from line 22 | | | | |
| b Enter the **smaller** of line 24 or 25a | | | | |
| 26 If section 1250 property: If straight line depreciation was used, enter -0- on line 26g unless you are a corporation subject to section 291. | | | | |
| a Additional depreciation after 1975 | | | | |
| b Applicable percentage multiplied by the **smaller** of line 24 or line 26a | | | | |
| c Subtract line 26a from line 24. If line 24 is not more than line 26a, skip lines 26d and 26e | | | | |
| d Additional depreciation after 1969 and before 1976 | | | | |
| e Applicable percentage multiplied by the **smaller** of line 26c or 26d | | | | |
| f Section 291 amount (corporations only) | | | | |
| g Add lines 26b, 26e, and 26f | | | | |
| 27 If section 1252 property: Skip this section if you did not dispose of farmland or if you are a partnership. | | | | |
| a Soil, water, and land clearing expenses | | | | |
| b Line 27a multiplied by applicable percentage | | | | |
| c Enter the **smaller** of line 24 or 27b | | | | |
| 28 If section 1254 property: | | | | |
| a Intangible drilling and development costs, expenditures for development of mines and other natural deposits, and mining exploration costs | | | | |
| b Enter the **smaller** of line 24 or 28a | | | | |
| 29 If section 1255 property: | | | | |
| a Applicable percentage of payments excluded from income under section 126 | | | | |
| b Enter the **smaller** of line 24 or 29a | | | | |

**Summary of Part III Gains** (Complete property columns A through D, through line 29b before going to line 30.)

| | |
|---|---|
| 30 Total gains for all properties. Add columns A through D, line 24 | |
| 31 Add columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13. (See the instructions for Part IV if this is an installment sale.) | |
| 32 Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, Section B, line 15. Enter the portion from other than casualty or theft on Form 4797, line 5 | |

**Part IV** Election Not to Use the Installment Method (Complete this part only if you elect out of the installment method and report a note or other obligation at less than full face value.)

33 Check here if you elect out of the installment method ▶ ☐

34 Enter the face amount of the note or other obligation ▶ $

35 Enter the percentage of valuation of the note or other obligation ▶ %

**Part V** Recapture Amounts Under Sections 179 and 280F When Business Use Drops to 50% or Less (See instructions for Part V.)

| | (a) Section 179 | (b) Section 280F |
|---|---|---|
| 36 Section 179 expense deduction or depreciation allowable in prior years | | |
| 37 Recomputed depreciation | | |
| 38 Recapture amount. Subtract line 37 from line 36. (See instructions for where to report.) | | |

%788

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS



STATEMENT 1 - WAGES, SALARIES, TIPS, ETC.

| EMPLOYERS NAME AND ADDRESS | INCOME TAX WITHHELD | WAGES SALARIES TIPS,ETC | SOC SEC TAX WITHHELD | SOC SEC WAGES FOR SCH SE | MEDICARE TAX WITHHELD | MEDICARE WAGES FOR SCH SE |
|---|---|---|---|---|---|---|
| BENCHMARK PROPERTIES, INC. | | 15,000 | 1,148 | 15,000 | | |
| TOTAL | | 15,000 | 1,148 | 15,000 | | |

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS



STATEMENT 2 - NET OPERATING LOSS CARRYBACK/CARRYOVER

| | FROM 1990 | FROM 1989 | FROM 1988 | FROM 1987 |
|---|---|---|---|---|
| TOTAL | 20,759 | 54,336 | 104,906 | 165,405 |
| USED IN 1984 | | | | 46,304 |
| USED IN 1985 | | | | 50,373 |
| USED IN 1986 | | | | 26,965 |
| AVAILABLE IN 1991 | 20,759 | 54,336 | 104,906 | 41,763 |

TOTAL CARRYBACK/CARRYOVER TO 1991 221,764

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS



STATEMENT 3 - ALTERNATIVE MINIMUM TAX NOL C/O

| | FROM 1990 | FROM 1989 | FROM 1988 |
|---|---|---|---|
| TOTAL | 16,479 | 18,616 | 23,009 |
| AVAILABLE IN 1991 | 16,479 | 18,616 | 23,009 |
| TOTAL CARRYBACK/CARRYOVER TO 1991 | | | 58,104 |

STATEMENT 4 - MISCELLANEOUS INCOME

| | SUBJECT TO SE TAX | OTHER TAXABLE INCOME | TOTAL TAXABLE INCOME |
|---|---|---|---|
| (H) PERSONAL USE OF CORPORATE AUTO | | 1,541 | 1,541 |
| NET OPERATING LOSS-SEE STMT 2 | | -221,764 | -221,764 |
| TOTAL MISCELLANEOUS INCOME | | -220,223 | -220,223 |

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS PAGE 4

STATEMENT 5 - INCOME FROM PARTNERSHIPS

NAME AND ADDRESS OF PARTNERSHIP
C W BASSING III, J M WALSH, J M NOLAN &
T R DAVIDSON PTR. BENCHMARK ASSOC
FED EMP I.D. NUMBER 62-1061927

| | YES | NO |
|---|---|---|
| GENERAL PARTNER | (X) | ( ) |
| TRADE OR BUSINESS - MATERIAL PARTICIPATION | ( ) | ( ) |
| RENTAL REAL ESTATE - ACTIVE PARTICIPATION | (X) | ( ) |

| | | | |
|---|---|---|---|
| INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY | | 6,346 | |
| TOTAL PARTNERSHIP INCOME (LOSS) | | | 6,346 |
| GAIN(LOSS) BEFORE LIMITATION | 6,346 | | |
| LESS SUSPENDED LOSS CARRYOVER | 13,138 | | |
| PASSIVE INCOME (LOSS) | | | -6,792 |
| OTHER K-1 INFORMATION | | | |
| PASSIVE LOSS CARRYOVER FOR ALT MIN | | 14,455 | |
| INTEREST | | 438 | |
| TAX PREFERENCE ITEMS | | | |
| DEPRECIATION ADJUSTMENT - POST 86 | | 350 | |
| INVESTMENT INTEREST EXPENSE | | | |
| INVESTMENT INCOME | | 438 | |

NAME AND ADDRESS OF PARTNERSHIP
C W BASSING III, J M WALSH, J M NOLAN &
T R DAVIDSON PTR BENCHMARK ASSOC
FED EMP I.D. NUMBER 62-1061927

| | YES | NO |
|---|---|---|
| GENERAL PARTNER | ( ) | (X) |
| TRADE OR BUSINESS - MATERIAL PARTICIPATION | ( ) | ( ) |
| RENTAL REAL ESTATE - ACTIVE PARTICIPATION | (X) | ( ) |

INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY 212

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS 

STATEMENT 5 - INCOME FROM PARTNERSHIPS (CONTINUED)

| | | |
|---|---|---|
| TOTAL PARTNERSHIP INCOME (LOSS) | | 212 |
| GAIN(LOSS) BEFORE LIMITATION | 212 | |
| LESS SUSPENDED LOSS CARRYOVER | 843 | |
| PASSIVE INCOME (LOSS) | | -631 |
| OTHER K-1 INFORMATION | | |
| PASSIVE LOSS CARRYOVER FOR ALT MIN | 2,990 | |
| INTEREST | 14 | |
| TAX PREFERENCE ITEMS | | |
| DEPRECIATION ADJUSTMENT - POST 86 | 11 | |
| INVESTMENT INTEREST EXPENSE | | |
| INVESTMENT INCOME | 14 | |

NAME AND ADDRESS OF PARTNERSHIP
1110 BONIFANT LIMITED PARTNERSHIP
R S COHEN, C W BASSING, GENERAL PARTNERS
7811 MONTROSE ROAD #500
POTOMAC MD 20854
FED EMP I.D. NUMBER 52-1397799

| | YES | NO |
|---|---|---|
| GENERAL PARTNER | (X) | ( ) |
| TRADE OR BUSINESS - MATERIAL PARTICIPATION | ( ) | ( ) |
| RENTAL REAL ESTATE - ACTIVE PARTICIPATION | (X) | ( ) |

| | | |
|---|---|---|
| INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY | -8,997 | |
| TOTAL PARTNERSHIP INCOME (LOSS) | | -8,997 |
| GAIN(LOSS) BEFORE LIMITATION | -8,997 | |
| LESS SUSPENDED LOSS CARRYOVER | 101,314 | |

INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991 -
NET GAIN IS PASSIVE AND IS INCLUDED IN PASSIVE LOSS LIMITATION

| | | |
|---|---|---|
| PASSIVE INCOME (LOSS) | | -110,311 |

INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991.

| | | |
|---|---|---|
| OTHER K-1 INFORMATION | | |
| PASSIVE LOSS CARRYOVER FOR ALT MIN | 155,354 | |
| OTHER SECTION 1231 GAIN OR LOSS | 37,302 | |

STATEMENT 5 (CONTINUED)

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS 

STATEMENT 5 - INCOME FROM PARTNERSHIPS (CONTINUED)

TAX PREFERENCE ITEMS
DEPRECIATION ADJUSTMENT - POST 86 -390

NAME AND ADDRESS OF PARTNERSHIP
1110 BONIFANT LIMITED PARTNERSHIP
R S COHEN, C W BASSING, GENERAL PARTNERS
7811 MONTROSE ROAD #500
POTOMAC MD 20854
FED EMP I.D. NUMBER 52-1397799

| | YES | NO |
|---|---|---|
| GENERAL PARTNER | ( ) | (X) |
| TRADE OR BUSINESS - MATERIAL PARTICIPATION | ( ) | ( ) |
| RENTAL REAL ESTATE - ACTIVE PARTICIPATION | (X) | ( ) |

| | | |
|---|---|---|
| INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY | -38,239 | |
| TOTAL PARTNERSHIP INCOME (LOSS) | | -38,239 |
| GAIN(LOSS) BEFORE LIMITATION | -38,239 | |
| LESS SUSPENDED LOSS CARRYOVER | 447,271 | |

INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991 -
NET GAIN IS PASSIVE AND IS INCLUDED IN PASSIVE LOSS LIMITATION
PASSIVE INCOME (LOSS) -485,510

INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991.

| | |
|---|---|
| OTHER K-1 INFORMATION | |
| PASSIVE LOSS CARRYOVER FOR ALT MIN | 707,008 |
| OTHER SECTION 1231 GAIN OR LOSS | 158,536 |
| TAX PREFERENCE ITEMS | |
| DEPRECIATION ADJUSTMENT - POST 86 | -1,654 |

SUMMARY OF INCOME AND K-1 INFORMATION FOR ALL PARTNERSHIPS

| | PASSIVE ACTIVITIES (LOSS) | PASSIVE ACTIVITIES INCOME | NONPASSIVE ACTIVITIES (LOSS) | NONPASSIVE ACTIVITIES INCOME |
|---|---|---|---|---|
| C W BASSING III, J M WALSH, J M NOLAN & RENTAL REAL ESTATE | 6,792 | | | |
| C W BASSING III, J M WALSH, J M NOLAN & RENTAL REAL ESTATE | 631 | | | |

1991 FEDERAL INCOME TAX STATEMENTS 

STATEMENT 5 - INCOME FROM PARTNERSHIPS (CONTINUED)

SUMMARY OF INCOME AND K-1 INFORMATION FOR ALL PARTNERSHIPS

| | PASSIVE ACTIVITIES (LOSS) | PASSIVE ACTIVITIES INCOME | NONPASSIVE ACTIVITIES (LOSS) | NONPASSIVE ACTIVITIES INCOME |
|---|---|---|---|---|
| 1110 BONIFANT LIMITED PARTNERSHIP RENTAL REAL ESTATE | 110,311 | | | |
| 1110 BONIFANT LIMITED PARTNERSHIP RENTAL REAL ESTATE | 485,510 | | | |
| TOTAL INCOME OR LOSS FROM ALL PARTNERSHIPS | 603,244 | | | |

OTHER K-1 INFORMATION

| | |
|---|---|
| PASSIVE LOSS CARRYOVER FOR ALT MIN | 879,807 |
| INTEREST | 452 |
| OTHER SECTION 1231 GAIN OR LOSS | 195,838 |
| TAX PREFERENCE ITEMS | |
| DEPRECIATION ADJUSTMENT - POST 86 | -1,683 |
| INVESTMENT INTEREST EXPENSE | |
| INVESTMENT INCOME | 452 |

---

STATEMENT 6 - GAINS AND LOSSES FROM SALE OF ASSETS

1110 BONIFANT LIMITED PARTNERSHIP

LONG-TERM CAPITAL GAINS AND LOSSES

PTSHP INT.-GEN. PTR

DATE ACQUIRED 05/06/85 DATE SOLD 12/31/91

| | |
|---|---|
| GROSS SALES PRICE | 156,019 |
| COST OR OTHER BASIS | 0 |
| TOTAL GAIN OR LOSS | 156,019 |

ACTIVITY SUMMARY

| | |
|---|---|
| TOTAL LONG-TERM GAINS | 156,019 |

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS



STATEMENT 6 - GAINS AND LOSSES FROM SALE OF ASSETS (CONTINUED)

1110 BONIFANT LIMITED PARTNERSHIP

LONG-TERM CAPITAL GAINS AND LOSSES

PTSHP INT.LTD PTR

DATE ACQUIRED 05/06/85 DATE SOLD 12/31/91

| | |
|---|---|
| GROSS SALES PRICE | 726,852 |
| COST OR OTHER BASIS | 0 |
| | ----------- |
| TOTAL GAIN OR LOSS | 726,852 |
| | =========== |

ACTIVITY SUMMARY

| | |
|---|---|
| TOTAL LONG-TERM GAINS | 726,852 |

SUMMARY OF TOTALS TO FORM 4797 OR SCHEDULE D

| | |
|---|---|
| LONG-TERM GAIN ON CAPITAL ASSETS TO SCH D PART II | 882,871 |

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS



STATEMENT 7 - PASSIVE ACTIVITY LOSS LIMITATIONS

RENTAL REAL ESTATE ACTIVITIES WITH ACTIVE PARTICIPATION

| | CURRENT YEAR A) INCOME | CURRENT YEAR B) (LOSS) | PRIOR YEAR C) UNALLOWED | OVERALL D) INCOME | OVERALL E) (LOSS) |
|---|---|---|---|---|---|
| C W BASSING III, J M WALSH, J M NOLAN & PARTNERSHIP | 6,346 | | -13,138 | | -6,792 |
| C W BASSING III, J M WALSH, J M NOLAN & PARTNERSHIP | 212 | | -843 | | -631 |
| 1110 BONIFANT LIMITED PARTNERSHIP (DISPOSITION) | 193,321 | -8,997 | -101,314 | 83,010 | |
| 1110 BONIFANT LIMITED PARTNERSHIP (DISPOSITION) | 885,388 | -38,239 | -447,271 | 399,878 | |
| TOTALS | 1,085,267 | -47,236 | -562,566 | 482,888 | -7,423 |

PASSIVE INCOME IS A NET GAIN, FORM 8582 IS NOT REQUIRED

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS



STATEMENT 8 - PASSIVE ACTIVITY LOSS LIMITATIONS
ALTERNATIVE MINIMUM TAX

RENTAL REAL ESTATE ACTIVITIES WITH ACTIVE PARTICIPATION

| | CURRENT YEAR A) INCOME | CURRENT YEAR B) (LOSS) | PRIOR YEAR C) UNALLOWED | OVERALL D) INCOME | OVERALL E) (LOSS) |
|---|---|---|---|---|---|
| C W BASSING III, J M WALSH, J M NOLAN & ALT MIN | 6,696 | | -14,455 | | -7,759 |
| C W BASSING III, J M WALSH, J M NOLAN & ALT MIN | 223 | | -2,990 | | -2,767 |
| 1110 BONIFANT LIMITED PARTNERSHIP (DISPOSITION) | 193,321 | -9,387 | -155,354 | 28,580 | |
| 1110 BONIFANT LIMITED PARTNERSHIP (DISPOSITION) | 885,388 | -39,893 | -707,008 | 138,487 | |
| TOTALS | 1,085,628 | -49,280 | -879,807 | 167,067 | -10,526 |

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS 

STATEMENT 9 - CONTRIBUTION CARRYOVERS

| DESCRIPTION | 50 PCT PROPERTY | 30 PCT NONAPPREC PROPERTY | 30 PCT APPREC PROPERTY | 20 PCT NONAPPREC PROPERTY | 20 PCT APPREC PROPERTY |
|---|---|---|---|---|---|
| CONTRIB FROM 88 | 2,060 | | | | |
| AMT USED IN 91 | 2,060 | | | | |
| CONTRIBUTION CARRIED OVER TO 1992 | | | | | |
| | ========== | ========== | ========== | ========== | ========== |

TOTAL 50% CONTRIBUTION CARRYOVERS 2,060

TOTAL CONTRIBUTION CARRYOVERS FROM PRIOR YEARS 2,060

==========

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 BASSING III 311 0611-55

1991 FEDERAL INCOME TAX STATEMENTS 

STATEMENT 10 - COMPUTATION OF AGI LIMIT ON ITEMIZED DEDUCTIONS

| | | | |
|---|---|---|---|
| 1. TOTAL AMOUNT OF ITEMIZED DEDUCTIONS BEFORE THE LIMITATION . . . . . . . . . . . . . . . . . . . . 1. | | | 24,835 |
| 2. ITEMIZED DEDUCTIONS EXCLUDED FROM REDUCTION. . . 2. | | | |
| 3. LINE 1 MINUS LINE 2. IF RESULT IS 0, STOP HERE ENTER AMOUNT FROM LINE 1 ON SCHEDULE A . . . . . 3. | | | 24,835 |
| 4. LINE 3 TIMES 80% (.80). . . . . . . . . | 4. | 19,868 | |
| 5. AMOUNT OF ADJUSTED GROSS INCOME . . . | 5. | 274,370 | |
| 6. THRESHOLD AMOUNT. . . . . . . . . . . . | 6. | 100,000 | |
| 7. LINE 5 MINUS LINE 6. IF RESULT IS ZERO STOP HERE, ENTER AMOUNT FROM LINE 1 ON SCHEDULE A. . . . . . . . . . . . . . . | 7. | 174,370 | |
| 8. LINE 7 TIMES (.03). . . . . . . . . . | 8. | 5,231 | |
| 9. COMPARE LINES 4 AND 8. ENTER THE SMALLER OF THE TWO AMOUNTS HERE . . . . . . . . . . . . . . . . 9. | | | 5,231 |
| 10. TOTAL ITEMIZED DEDUCTIONS. SUBTRACT LINE 9 FROM LINE 1. ENTER HERE AND ON SCHEDULE A . . . . . .10 | | | 19,604 |