# 1110 BONIFANT LIMITED PARTNERSHIP
## LIMITED PARTNERSHIP AGREEMENT AND CERTIFICATE

THIS AGREEMENT AND CERTIFICATE made this 30 day of April, 1985, by and between the undersigned parties,

WITNESSETH:

WHEREAS, the parties hereto desire to join together in a limited partnership for the purpose of acquiring, owning, developing and operating real property;

NOW, THEREFORE, in consideration of the mutual promises and undertakings of the parties hereto and of other good and valuable consideration, it is agreed and certified as follows:

1. Formation and Name of Limited Partnership. The undersigned parties do hereby form a limited partnership, under the name 1110 Bonifant Limited Partnership pursuant to the provisions of the laws of the State of Maryland.

2. Principal Office and Resident Agent. The principal office of the partnership shall be c/o Richard S. Cohen, Suite 700, 6000 Executive Boulevard, Rockville, Maryland 20852. The partnership may have such additional offices as the general partners shall deem advisable. The Resident Agent of the partnership is Richard S. Cohen, whose post office address is Suite 700, 6000 Executive Boulevard, Rockville, Maryland 20852. Said Resident Agent is a citizen of the State of Maryland and actually resides therein.

3. Business of Partnership. The business of the partnership shall consist of: (i) acquiring and owning certain property having a street address of 1110 Bonifant Street, Silver Spring, Montgomery County, Maryland, as more particularly described in Exhibit B attached hereto and made a part hereof (the "property"); (ii) developing the property through the construction of an office building thereon; (iii) holding the property for investment and for the production of income; and (iv) carrying on any and all activities related thereto (including, but not limited to, leasing and encumbering of the property).

4. Term of Partnership. The term of the partnership shall commence on the date of recording of the certificate of the partnership. It shall continue for fifty years from the commencement date and thereafter from year to year, unless sooner terminated in accordance with provisions hereinafter stated.

5. General Partners and Limited Partners. The general partners shall be Richard S. Cohen and Charles W. Bassing, III, both of whom may also be limited partners. All of the other parties, if any, shall be limited partners; provided, however, that if any of such other parties shall, as a matter of law, be held to be a general partner, his partnership interest shall be subject to all of the provisions of this agreement relative to a general partner. No general partnership interest shall be sold, assigned, or otherwise transferred except as otherwise provided herein.

GOVERNMENT EXHIBIT 1

6. Capital.

A. Each of the partners shall invest in the capital of the partnership the amount shown after his name in Exhibit A attached hereto, at the time or times and in the manner set forth in Article 7 hereof; and the percentage shown after the names of each partner shall represent his percentage interest in the partnership and its assets.

B. During the period from the date of this agreement until the date upon which the office building to be constructed by the partnership on the property first attains eighty-five percent (85%) occupancy, if any funds in excess of the aforesaid capital contributions of the partners and other available partnership funds (including, but not limited to loans to the partnership from third parties) are required by the partnership for any partnership purpose, including but not limited to payments required for operating expenses, lease payments, improvements, payment of indebtedness secured by the partnership property, or other partnership debts, general partner Richard S. Cohen shall have the obligation to lend such funds to the partnership at a rate not exceeding two percentage points greater than the prime rate of interest charged by Madison National Bank or any successor thereto as of the first day of each month such loan or loans are outstanding.

C. The provisions of Section 6B immediately preceding are not intended to be for the benefit of any creditor or other person to whom any debts, liabilities or obligations are owed by (or who otherwise has any claim against) the partnership or any of the partners; and no such creditor or other person shall obtain any right under any of such provisions or shall be reason of any of such provisions make any claim in respect of any debt, liability or obligation (or otherwise) against the partnership or any of the partners.

D. General partner, Charles W. Bassing, III, shall have no obligation to lend additional funds to the partnership nor shall any capital call be made against general partner Charles W. Bassing, III, or any limited partner.

E. The Contract of Sale for the property, dated May 4, 1984, between Benchmark Properties, Inc., as purchaser, and Floyd Eaton, as seller (the "Contract of Sale"), shall, contemporaneously with the execution of this Agreement be assigned to the partnership without cost to the partnership and any deposit made thereunder shall be refunded by the partnership to the party making the deposit.

F. In the event that the general partner Richard S. Cohen shall determine that in order to obtain financing for the construction, development and/or operation of the partnership property or in order to obtain a tenant, that an investor or a lender (including any bank, savings and loan association, credit union, pension fund, insurance company or other institutional type lender) or tenant is required to be admitted into the partnership as a general or limited partner, then such investor, lender or tenant shall be so admitted upon the terms and conditions as agreed by the partnership. In such event, the percentage interest in partnership of the then present partners shall be reduced pro rata.

G. For all purposes of this agreement, the "capital account" of a partner as of any date is hereby defined to mean the amount of cash (or the agreed fair market value of property, it being agreed that no value is assigned to the Contract of Sale for purposes hereof) contributed by such partner to the capital of the partnership, properly adjusted to reflect (i) such partner's distributive share of profits and losses (including, if such date is not the close of a partnership accounting year, his distributive share of profits and losses of the partnership for the period from the close of the last such partnership accounting year to such date), and (ii) distributions by the partnership to such partner (including, if such date is not the close of a partnership accounting year, distributions by the partnership to him during the period from the close of the last such partnership accounting year to such date). No interest shall be paid on the initial contributions to the capital of the partnership or on any subsequent contributions of capital unless otherwise agreed by all the partners.

7. Time and Manner of Payment of Capital Investment. Each partner shall, on or before the day of the commencement of the term of the partnership, invest in and contribute to the capital of the partnership in the amount of his agreed capital investment as set forth beside his name in Exhibit A attached hereof.

8. Profits and Losses. The profits of the partnership shall be shared among all the partners in proportion to their percentage interest in the partnership. Losses likewise shall be borne by the partners in those same proportion; provided, however, that no limited partner, as such, shall be liable for losses of the partnership in excess of the amount of this agreed investment in the partnership capital.

9. Filing of Certificate. The general partners shall promptly record this Limited Partnership Agreement and Certificate in accordance with the laws of the State of Maryland. The general partners shall do all other things requisite for the perfection of this partnership as a limited partnership pursuant to the laws of the State of Maryland.

10. Acquisition of Investment Real Properties. The general partners are authorized to acquire, on behalf of the partnership, the property pursuant to the Contract of Sale referenced hereinabove. The general partners are authorized to take and hold said property in the name of the partnership or in whatever manner they shall determine to be in the best interest of the partnership.

11. Duties and Compensation of General Partners.

A. The general partners shall provide for the operation of the partnership business and shall devote such of their time as they in their absolute discretion deem necessary to the affairs of the partnership business, and they shall receive no special compensation therefor except as otherwise provided herein. The said general partners may engage and retain one or more persons to supervise office routine and bookkeeping activities and to perform such other ministerial acts as may be required by the partnership, and may compensate

such person or persons at a rate of pay to be set by decision of the general partners. The person or persons so retained may, but need not, be a member or members of the partnership, general and/or limited. Any person, whether a general partner, limited partner, or otherwise, may be employed or engaged by the partnership to render special services, including but not limited to building, constructing, leasing and/or property management services, accounting services, or legal services; and if such person be a partner he shall be entitled to, and shall be paid, compensation for said services, anything in this agreement to the contrary notwithstanding. Any of the partners, general or limited, may engage in and/or possess an interest in other business ventures of any nature and description, independently or with others, including but not limited to the ownership, financing, leasing, operating, management, brokerage and development of real property; and neither the partnership nor the partners shall have any right by virtue of this agreement in and to said independent ventures or to the income or profits derived therefrom. The fact that a partner, general or limited, or a member of any partner's family, is employed by, or is directly interested in or connected with any person, firm or corporation employed by the partnership to render or perform any service, or from whom or which the partnership may buy merchandise or other property, shall not prohibit the general partners from employing such person, firm or corporation or from otherwise dealing with him or it, as provided above; provided, however, that the partnership may employ a general partner, a member of his family, or a firm or corporation in which a general partner or a member of his family has an interest, only at reasonable and competitive rates of compensation, commission or remuneration.

B. The project manager for the development of the property and construction of the building shall be Benchmark Properties, Inc., and affiliate of general partner, Charles W. Bassing, III. The said project manager shall have the duty and obligation to oversee all aspects of the development and construction of the project not associated with the general contractor's responsibility, and it shall receive a fee for such work in the amount of Seventy-five Thousand Dollars ($75,000.00) payable in fifteen equal monthly payments of Five Thousand Dollars ($5,000.00) commencing upon the execution of the Project Management Agreement; provided, however, that any unpaid balance of such fee shall be payable in full upon termination of the Project Management Agreement by either party for party for any reason. Contemporaneously with the execution of this Agreement, the partnership shall enter into a Project Management Agreement with Benchmark Properties, Inc.

C. The general partner, Richard S. Cohen, shall have the duty and obligation to arrange for all loans required by the partnership for the development of the property.

D. The general contractor for the construction of the building will be Willco Construction Company, Inc., an affiliate of Richard S. Cohen and said general contractor shall construct the improvements on a cost plus seven percent (7%) fee basis.

E. All plans, specifications, and subcontractor bids for construction shall be reviewed by both general partners.

F. During the rent up period, Benchmark Properties, Inc., an affiliate of general partner, Charles W. Bassing, III, shall have the duty and obligation to oversee leasing activities and all other activities associated with the operation of the property and shall manage the property at a commission of three percent (3%) of the gross rental income of the property. Contemporaneously with the execution of this Agreement, the partnership shall enter into an Office Building Management Agreement with Benchmark Properties, Inc.

G. Richard S. Cohen, is hereby designated as the Tax Matters Partner as such term is defined in I.R.C. Section 6231(a)(7), and shall supervise the preparation and filing of all tax information returns which the Partnership may be required to file. In addition, the Tax Matters Partners shall give prompt notice to each partner of any and all notices he receives from the United States Department of the Treasury, Internal Revenue Service concerning the Partnership including without limitation, any notice of audit, any notice of action with regard to a Revenue Service concerning the partnership's tax return, and will furnish each Partner with status reports regarding any negotiation between the Internal Revenue Service and the partnership. In the event that Richard S. Cohen becomes unable to unwilling to serve as Tax Matters Partner, the new or substitute general partner or partners, shall name a new Tax Matters Partner.

H. Each general partner shall disclose to the others any financial interest (whether debt, equity, profit-sharing, or other) which he may have in any person, partnership, corporation or association with which the partnership is doing business. Except as otherwise expressly provided herein no general partner shall, without full disclosure to and with the consent of all other general partners, enter into any contract or agreement, on behalf of the partnership, with (i) himself, (ii) any member of his immediate family, (iii) a trust for the benefit of himself or any member of his immediate family, (iv) a partnership of which any person in clauses (i) through (iii) is a partner, or (v) a corporation of which any person in clauses (i) through (iii) above is an officer, director or 2% shareholder; provided, however, that Richard S. Cohen may enter into an agreement with Madison National Bank on behalf of the partnership without the consent of the other general partners.

12. <u>Authority of General Partners</u>.

A. Except as provided in Section 12B below, the general partners are authorized to negotiate, enter into and execute leases, to incur obligations for and on behalf of the partnership; to mortgage the property and improvements therein; to refinance, recast or extend the mortgages affecting the partnership property, or to execute extensions, renewals, modifications thereof; to sell, trade or otherwise transfer all or a portion of the property of the partnership and to execute all deeds and documents incidental thereto; and generally to execute any and all instruments and to any and all acts incidental to or necessary to carry out the intentions and purposes for which the partnership has been formed. All decisions respecting any questions arising under this agreement or involving the conduct and operation of the partnership shall require the unanimous consent of all of the general partners.

B. All partnership decisions shall be made by the unanimous consent of the general partners; provided, however, if a unanimous decision cannot be reached then the following shall apply: (a) Richard S. Cohen shall have the right to make decisions regarding the initial construction loan and initial permanent loan if the general partners are not unanimous in their decision; and (b) at any time Richard S. Cohen is personally guaranteeing partnership loans and/or at any time, after completion of construction of the building, the cash flow from the property is insufficient to pay the entire expenses and debt service, Richard S. Cohen will have the sole right to make partnership decisions if the general partners are not unanimous in their decisions, provided that in the event Charles W. Bassing, III disagrees with any proposal decided upon by Richard S. Cohen, then Charles W. Bassing, III shall, upon request therefor at the time of such decision, be permitted a period of two (2) weeks (or such shorter period as Richard S. Cohen may reasonably require based upon time constraints placed upon the partnership by third parties) in which to come up with an alternate proposal, and provided, further, that Richard S. Cohen shall then have the sole right to decide between his original decision and Charles W. Bassing, III's proposal.

13. Banking. All funds of the partnership shall be deposited in its name in such bank account or accounts as shall be designated by the general partners. All withdrawals from such account or accounts shall be made upon check signed by each partner, partners or other person as, from time to time, may be mutually agreed upon by the general partners.

14. Keeping of Books and Certified Public Accountant.

A. The partnership books shall be maintained at the principal office of the partnership, or at such other place as the general partners may from time to time designate; and each partner shall have access to said books at all reasonable times. Richard S. Cohen or his agents shall prepare and distribute to the partners monthly financial statements of the partnership.

B. The certified public accountant of the partnership shall be Thomas E. Karam, C.P.A., Berlin, Karam & Ramos, 8484 Georgia Avenue, Silver Spring, Maryland 20910, or such successor certified public accountant as may be designated by Charles W. Bassing, III, and approved by Richard S. Cohen, which approval shall not be unreasonably withheld. Each of the partners shall receive, as soon as practicable after the expiration of the taxable year of the partnership, a statement of receipts and expenses as prepared by the certified public accountant of the partnership, together with a statement showing the profit or loss of the partnership for Federal Income Tax purposes, a financial statement and a balance sheet as of the end of such taxable year and a distribution analyzed by reference to taxable income and return of capital.

C. Richard S. Cohen shall have the right at all times, at the expense of the partnership, to have an audit of the partnership books performed by an independent certified public accountant of his selection.

15. Disbursements and Distributions. The general and limited partners hereby agree that partnership funds available for distribution shall be disbursed and/or distributed as follows:

A. On behalf of the partnership

(i) In payment of real estate taxes and similar assessments and ground rents, if any;

(ii) In payment of the principal of, and interest on, any indebtedness against the property of the partnership in accordance with the provisions thereof;

(iii) In payment of any other expenses incurred in operating and holding the property;

(iv) In payment of all or part of principal and accrued interest on loans to the partnership by general partners, or on other partnership loans;

(v) In retention as reserves, funds for replacement, maintenance or improvement as determined in the reasonable discretion of the general partners.

B. To the Partners. To the general and limited partners in proportion to their respective percentage interests in the partnership, when and as determined by the general partners.

16. Exculpation of General Partners. No general partner shall be liable in damages or otherwise to any of the partners, general or limited, for any acts performed by him in good faith within the scope of this agreement except for acts of gross negligence.

17. Dissolution of Partnership.

A. Events. The partnership shall be dissolved upon the occurrence of any of the following events:

(i) Expiration of the term of the partnership.

(ii) Retirement, death, incompetency or bankruptcy of a general partner.

B. Formation of New Partnership. In the event of dissolution, the remaining general partners may elect to form a new partnership (having the same terms as this partnership) to carry on the same business theretofore carried on by the partnership. Such election may be made only by the unanimous consent of the remaining general partners. In such event, the limited partners shall automatically become limited partners in the new partnership, and the remaining general partners shall be the general partners of the new partnership. In the event of the retirement or bankruptcy of a general partner, the general partnership interest of the retiring or bankrupt general partner shall automatically become a limited partnership interest.

C. Successor General Partner. In the event of the death or incompetency of a general partner and if the remaining general partners elect to form a partnership as aforesaid, the remaining general partners agree to select as a replacement general partner the following persons:

(i) in place of Richard S. Cohen, J. Bernard Nebel, if then living, or if not then living, William R. Friedman.

(ii) in place of Charles W. Bassing, III, Richard J. Byrd, if then living, or if not then living, Thomas E. Karam.

Upon the selection by the remaining general partners of the successor general partner, and the acceptance of such position by said successor partner, the general partners shall cause the partnership certificate to be amended to reflect the change in general partners; and in order to effectuate the authority hereby granted the general partners, the limited partners, on behalf of themselves and any successors in interest, do hereby empower the general partners, and each of them to execute, in the name of each limited partner and any successor thereof in interest, any and all amendments to the partnership certificate made at any time to reflect a change in general partners. The successor general partner shall, from and after his selection thereas, be clothed with all of the powers and duties theretofore vested in the general partner succeeded by him.

The foregoing named successor general partners of the respective general partners herein shall serve as successor general partners in a representative capacity only, all interest covered by this agreement accruing to the heirs and estate of the succeeded general partner.

In lieu of the selection of any such successor general partner, the estate or representative of the deceased or incompetent general partner may elect to have such general partnership interest converted to a limited partnership interest upon notice given to the remaining partners not later than sixty (60) days after such death or incompetency.

D. Distribution upon Dissolution. Upon the dissolution of the partnership, and, if applicable, failure to form a new partnership as provided above, the remaining general partners shall have, and are hereby granted, the right to sell all of the partnership property at a bona fide sale to outsiders at such price and upon such terms as the remaining general partners may deem most advisable. Such sale shall be deemed to be a proper act in the winding up of the affairs of the dissolved partnership, and the proceeds of such sale shall be applied first to the payment of all partnership debts, then the capital accounts of all partners shall be returned pro-rata, then in distribution to all of the partners in proportion to their respective percentage interest in the partnership. If the general partners do not sell said partnership property within a period of two (2) years after dissolution, then and in that event, the remaining general partners and each of the limited partners of the dissolved partnership shall automatically become the owner of his undivided interest in the property

formerly owned by the partnership as a tenant-in-common with the other remaining partners. During the period of time that the property of the partnership, after dissolution as aforesaid, is owned by the parties as tenants-in-common, the parties hereby agree that if a bona fide written offer is obtained from an outsider for the purchase of said property, which offer is acceptable to the owners of a majority in interest of all such tenants-in-common, all of the parties will join in the sale of the property to such outsider.

18. Treatment of Limited Partners.

A. Assignment of Limited Partner's Interest. The interest of each limited partner in the partnership shall be assignable subject, however, to the following terms and conditions:

(i) If a limited partner shall receive a bona fide written offer, as defined in subdivision (iv) of this Article 18(A), for the purchase of his interest, which offer he is willing to accept, he shall notify all of the general partners in writing of the receipt of said offer, enclosing a true copy of said offer. The partnership shall have the right to purchase said interest at the price and upon the terms and conditions contained in such bona fide offer. If the partnership does not desire to purchase the selling limited partner's interest, then the general partners shall have the right to purchase said interest, and if more than one general partner does so desire, then such interest shall be divided proportionately among such purchasing general partners in proportion to their respective percentages of general partnership interest in the partnership. Notice of such intention shall be given to the selling limited partner within thirty (30) days after receipt of notice from him of his desire to sell. If neither the partnership nor the general partners desire to purchase the selling limited partner's interest, then the selling limited partner shall be at liberty to assign his partnership interest to the person from whom he received the bona fide acceptable offer, at a price not below nor upon the terms more advantageous to the buyer than the price and terms contained in said bona fide acceptable offer; provided, however, that if such sale is not made and consummated within four (4) months after the date of such bona fide offer, the selling limited partner may not thereafter dispose of his said interest without again giving the partnership and the general partners the option to purchase his interest as aforesaid.

(ii) Substitution of Limited Partner. If all of the partners of the partnership (except the assignor) shall consent thereto, the assignee shall have the right to become a substituted limited partner upon the payment of a fee of One Hundred Dollars ($100.00) to the partnership to cover the costs and expenses of preparation, execution and recording of an amendment to the certificate of limited partnership. In that event, the general partners shall prepare an amendment to the certificate to be signed and sworn to by them, by each of the limited partners, by the assigning limited partner, and by the assignee. Each of the limited partners does hereby appoint the general partners, or any one of them, his true and lawful attorney or attorneys-in-fact, for him, in his name, and on his behalf to consent to any substitution of a limited partner,

as aforesaid, and to sign, certify under oath, and acknowledge any and every such amendment and to execute whatever further instruments may be requisite to effect the substitution of a limited partner. Each of the parties hereto does hereby further agree, whenever requested so to do, personally to sign and swear to any such amendment and to execute whatever further instruments may be requisite to effect the substitution of a limited partner. The general partners shall attend to the due execution and recording of the amendment. Unless named in this Agreement, or unless admitted to the partnership as above provided, or unless admitted to the partnership by the unanimous agreement of the partners, no person shall be considered a partner; and the partnership, each partner, and any other person having business with the partnership need deal only with partners so named and so admitted. They shall not be required to deal with any other person by reason of an assignment by a partner or by reason of the death of a partner, except as otherwise provided in this agreement. In the absence or substitution of a limited partner for an assigning or deceased limited partner, any payment to a partner, or to his executors of administrators shall acquit the partnership of all liability to any other person who may be interested in such payment by reason of any assignment by the partner or by reason of his death.

(iii) Death of a Limited Partner. The death of a limited partner shall not dissolve the partnership. In such event, the executors or administrators of the deceased limited partner shall, for the purposes of settling the estate, have the rights of a limited partner. In addition, they shall have the same right as the decedent would have under the provisions of subdivision A(i) and (ii) of this Article 18 to assign his interest and to provide in the instrument of assignment (provided all of the partners consent thereto) that the assignee may become a substituted limited partner upon the payment of a fee of One Hundred Dollars ($100.00) to the partnership, in accordance with the procedure specified in this Article 18.

(iv) Bona Fide Offer. An offer, in order to be a bona fide offer within the meaning of this Article 18, must be in writing; it must be made by a person or corporation having sufficient financial ability to consummate the purchase of the interest so offered to be purchased; said offer must be accompanied by a good-faith deposit, cash or certified check, of at least five percent (5%) of the amount of the offering price; and the home and business address of the offeror must be shown therein.

(v) The sale or other transfer by a limited partner, whether inter-vivos or by will, of his partnership interest to his or her spouse, parent, descendant or spouse of a descendant, or to a full-time employee who has been employed for more than one year by any business controlled by such partner, or to a trust of which any of the aforesaid persons are beneficiaries, or to a partnership in which only, but not necessarily all of, the aforesaid persons and any general or limited partners hereof are partners, shall not be subject to the restriction or limitations or subdivision (i) of Section A of this Article 18; provided, however, any transferee receiving an interest pursuant to the provisions of this subdivision (v) shall not be entitled to become a limited partner without the written consent of all of the general partners which shall not be unreasonably withheld.

B. Return of Contributions of Limited Partners. Fifty years from the commencement date of the partnership, each limited partner shall have the right, upon giving to the general partners at least six (6) months' written notice, to withdraw from the partnership and receive the return of his capital contribution properly adjusted for his share of all profits, losses and distributions to the date of withdrawal, provided the assets of the partnership are at that time adequate for payment of all of the partnership liabilities, and return to all of the partners of their capital investments, and further provided that the return of capital contributions to any and all partners shall be made in kind. Anything in this agreement to the contrary notwithstanding, the general partners shall not be personally liable for the return of the capital contributions of limited partners, or any portion thereof, it being expressly understood that any such return shall be made solely from partnership assets.

19. Sale of Property.

A. Notwithstanding Section 12B, but subject to Section 19C, the property may not be sold without the unanimous approval of the general partners prior to completion of the building shell. Thereafter, if (i) during the first seven (7) years following completion of the building shell, a bona fide offer is received, from a third party not having an ownership interest in the partnership, for the purchase of the property, which offer is acceptable to at least sixty percent (60%) of the interest in partnership (hereinafter jointly called "willing party"), or (ii) commencing upon the seventh (7th) anniversary date of completion of the building shell, if a bona fide offer is received from a third party not having an ownership interest in the partnership, for the purchase of the property, which offer is acceptable to at least thirty percent (30%) of the interest in partnership (also hereinafter jointly called "willing party"), then any partner who is not willing to accept said bona fide third party offer (hereinafter called the "unwilling party") shall have the right and option for a period of thirty (30) days from the date of its receipt of such offer to buy the property at the same price and on the same terms and conditions as contained in said third party bona fide offer, or, at the option of the unwilling party, to purchase all of the partnership interest of the willing party for a price and on terms that would net said willing party the same amount of money at the same time that would be realized by such willing party upon distribution of the proceeds of such third party sale, if such third party offer would be accepted and consummated. If the unwilling party fails to give the other party written notice within said thirty (30) days' period of time that it has elected to meet the third party offer and will purchase the property on the same terms and conditions contained in the bona fide offer (or to purchase the partnership interests of the willing party at a price and on terms and conditions that would net said willing party the same amount of funds and at the same time that would be realized by said willing party if the sale to the third party would have been accepted and consummated), such failure shall conclusively be deemed to mean that the unwilling party has elected not to exercise its right to meet said third party offer, and that it will join in the sale of the property to the third party in accordance with the terms of said bona fide offer.

B. In addition, at any time after completion of the building shell, Richard S. Cohen shall have the right to notify Charles W. Bassing, III of the price, terms and conditions upon which he would be willing to sell the property, in which event Charles W. Bassing, III shall have the right and option for a period of thirty (30) days from the date of his receipt of such notice to buy the property at the same price and on the same terms and conditions as contained in said notice, or, at the option of Charles W. Bassing, III, to purchase all of the partnership interests of Richard S. Cohen, RSC Family Limited Partnership and any other partners affiliated with Richard S. Cohen for a price and on terms that would net such partners the same amount of money at the same time that would be realized by them upon distribution of the proceeds of a third party sale on the price and terms set forth in such notice. If Charles W. Bassing, III fails to give Richard S. Cohen written notice within said thirty (30) days' period of time that he has elected to purchase the property on the same terms and conditions contained in such notice (or to purchase the partnership interests of Richard S. Cohen and his affiliated partners at a price and on terms and conditions that would net them the same amount of funds and at the same time that would be realized by them if a sale to a third party upon such price and terms would have been consummated), such failure shall conclusively be deemed to mean that Charles W. Bassing, III has elected not to exercise its right to meet the price and terms set forth in such notice, and Richard S. Cohen shall have the right, for a period of six (6) months thereafter, to sell the property to a third party for the price and upon the terms set forth in such notice, or for a price and terms which are more advantageous to the partnership, but not for a price or upon terms which are less advantageous to the partnership than those set forth in the aforesaid notice.

C. Notwithstanding Sections 19A and 19B, during the initial rent-up period the partnership may offer bona fide third party potential tenants of not less than twenty-five percent (25%) of the leasable square feet in the building an option to purchase the building as an inducement for leasing such space. Any such purchase option granted to a bona fide third party tenant shall take precedence over, and shall not be subject to, the provisions of Sections 19A and 19B.

D. In the event of a sale of the property pursuant to this Section 19, the proceeds of such sale shall be distributed in the manner set forth in Section 17D.

20. <u>Buy-Sell</u>.

A. If either of the general partners shall desire to terminate the partnership other than as provided in Article 17 of this Agreement, such party (hereinafter referred to as the "Terminating Party") may, pursuant to the conditions set forth in this paragraph, give to the other (hereinafter referred to as the "Non-Terminating Party") notice in writing (hereinafter referred to as the "Notice of Termination") and shall specify therein the price, terms and conditions under which the Terminating Party agrees to buy the entire partnership interest of the Non-Terminating Party. The price shall be payable solely in cash or by certified bank or cashier's check at the closing.

B. The Non-Terminating Party shall have one hundred twenty (120) days (hereinafter referred to as the "Notice Period") from the receipt of the Notice of Termination to give notice to the Terminating Party of its agreement to either (1) sell its entire partnership interest for the price and upon such terms and conditions as are set out in the Notice of Termination (hereinafter referred to as the "Notice of Sale"), or (2) purchase the entire partnership interest owned by the Terminating Party for the price equal to the product obtained by multiplying (a) the price attributable to one hundred percent (100%) of the partnership times (b) the Terminating Party's then partnership interest, upon the terms and conditions as are set out in the Notice of Termination (hereinafter referred to as the "Notice of Purchase"). If the Non-Terminating Party gives a Notice of Sale, the Terminating Party shall sell its partnership interest in accordance therewith. If the Non-Terminating Party does not give either a Notice of Sale or a Notice of Purchase within the Notice Period, then it shall be deemed to have consented to a sale of its partnership interest to the Terminating Party for the price and upon the terms and conditions specified in the Notice of Termination. A closing shall be held within one hundred twenty (120) days of the receipt of the Notice of Sale or Notice of Purchase as the case may be by the Terminating Party or, if the Non-Terminating Party fails to give a Notice of Sale or a Notice of Purchase, then within one hundred twenty (120) days after the expiration of the Notice Period.

C. The purchasing partner hereunder shall be deemed to assume all of the liabilities inuring to the partnership interest being acquired. At closing, the partners shall execute any and all documents necessary to effectuate such transfer including an assignment of all of the selling partners' partnership interest, all of its right, title and interest in the property, mutual releases which shall have the effect of releasing each partner from all claims or liabilities pertaining to the partnership (except for any liabilities resulting from gross negligence or intentional misconduct or specifically included in the terms of such sale), and an indemnification by the purchasing partners to the selling partners holding the selling partners harmless from all partners' liabilities except those, if any, incurred by the selling partners and not disclosed to the purchasing partners, or resulting from the selling partners' gross negligence or willful misconduct.

21. Gender, etc. Feminine or neuter pronouns shall be substituted for those of the masculine form and the plural shall be substituted for the singular, or vice-versa, in any place or places herein in which the context may require such substitution or substitutions.

22. Addresses. Unless otherwise specified in writing sent to the partnership, the addresses of each of the general partners and the limited partners for all purposes shall be as set forth in Exhibit A attached hereof.

23. Governing Law. It is the intent of the parties hereto that all questions with respect to the construction of this agreement and the rights and liabilities of the parties shall be determined in accordance with the provisions of the laws of the state in which the partnership is formed.

24. Burden and Benefit. This Agreement is binding upon, and inures to the benefit of, the parties hereto and their

respective spouses, heirs, executors, administrators, personal and legal representatives, successors and assigns. Any reference herein to an individual partner by name shall refer as well to any successors or assigns of such partner as determined in accordance with the provisions of this agreement.

IN WITNESS WHEREOF, the parties have duly executed this agreement as of the day and year first above written.

GENERAL PARTNERS:

Richard S. Cohen

Charles W. Bassing, III

LIMITED PARTNERS:

Richard S. Cohen

Charles W. Bassing, III

No. 1 RSC Family Limited Partnership

By: Richard S. Cohen, General Partner

No. 2 RSC Family Limited Partnership

By: Richard S. Cohen, General Partner

No. 3 RSC Family Limited Partnership

By: Richard S. Cohen, General Partner

Joel B. Heffler

Frances B. Heffler

113C-qq

STATE OF MARYLAND ) To Wit
COUNTY OF MONTGOMERY )

I, DEBBIE A. BRADDOCK, a Notary Public in and for the jurisdiction above stated, do hereby certify that Richard S. Cohen, personally well known to me as the party to the foregoing instrument, bearing date on the 30 day of April, 1985, and hereto annexed, personally appeared before me in said jurisdiction and acknowledged the same to be his act and deed.

Given under my hand and seal this 30 day of April, 1985.

Debbie A. Braddock
Notary Public

My commission expires: 7-1-86

) To Wit

I, Laurean J. Garrison, a Notary Public in and for the jurisdiction above stated, do hereby certify that Charles W. Bassing, III, personally well known to me as the party to the foregoing instrument, bearing date on the 30 day of April, 1985, and hereto annexed, personally appeared before me in said jurisdiction and acknowledged the same to be his act and deed.

Given under my hand and seal this 2nd day of May, 1985.

Laurean J. Garrison
Notary Public

My commission expires: July 13, 1985

STATE OF MARYLAND ) To Wit
COUNTY OF MONTGOMERY )

I, DEBBIE A. BRADDOCK, a Notary Public in and for the jurisdiction above stated hereby certify that on this 30 day of April, 1985, before me personally appeared in said jurisdiction Richard S. Cohen, personally well known to me (or satisfactorily proven) to be the person who executed the foregoing instrument bearing date on the 30 day of April, 1985, as General Partner of No. 1 RSC Family Limited Partnership, No. 2 RSC Family Limited Partnership and No. 3 RSC Family Limited Partnership, and did acknowledge the foregoing instrument to be act and deed and that the same was executed for the purposes therein contained, and that the same was delivered as such.

WITNESS my hand and Notarial Seal.

Debbie A. Braddock
Notary Public

My commission expires: 7-1-86

STATE OF MARYLAND ) To Wit
COUNTY OF ~~MONTGOMERY~~ [illegible] )

I, [illegible], a Notary Public in and for the jurisdiction above stated, do hereby certify that Joel B. Heffler personally well known to me as the party to the foregoing instrument, bearing date on the 15 day of March, 1985, and hereto annexed, personally appeared before me in said jurisdiction and acknowledged the same to be his act and deed.

Given under my hand and seal this 15 day of March, 1985.

[signature]
Notary Public

My commission expires: 7-1-86

STATE OF MARYLAND )
) To Wit
COUNTY OF MONTGOMERY )

I, DEBBIE A. BRADDOCK, a Notary Public in and for the jurisdiction above stated, do hereby certify that Frances B. Heffler personally well known to me as the party to the foregoing instrument, bearing date on the 30 day of April, 1985, and hereto annexed, personally appeared before me in said jurisdiction and acknowledged the same to be her act and deed.

Given under my hand and seal this 30 day of April, 1985.

Debbie A. Braddock
Notary Public

My commission expires: 7-1-86

EXHIBIT A

| NAME AND ADDRESS | CAPITAL INVESTMENT | PERCENTAGE INTEREST IN PARTNERSHIP |
|---|---|---|
| GENERAL PARTNER: | | |
| Richard S. Cohen<br>6000 Executive Boulevard<br>Rockville, Maryland 20852 | $ 50.00 | 5.0% |
| Charles W. Bassing, III<br>6707 Old Dominion Drive<br>Suite 220<br>McLean, Virginia | $ 50.00 | 5.0% |
| LIMITED PARTNERS: | | |
| Richard S. Cohen<br>6000 Executive Boulevard<br>Rockville, Maryland 20852 | $210.00 | 21.0% |
| Charles W. Bassing, III<br>6707 Old Dominion Drive<br>Suite 220<br>McLean, Virginia | $250.00 | 25.0% |
| No. 1 RSC Family<br>Limited Partnership<br>600 Executive Boulevard<br>Rockville, Maryland 20852 | $160.00 | 16.0% |
| No. 2 RSC Family<br>Limited Partnership<br>600 Executive Boulevard<br>Rockville, Maryland 20852 | $ 60.00 | 6.0% |
| No. 3 RSC Family<br>Limited Partnership<br>600 Executive Boulevard<br>Rockville, Maryland 20852 | $200.00 | 20.0% |
| Joel B. Heffler and<br>Frances B. Heffler,<br>Joint Tenants<br>8209 Coach Street<br>Potomac, Maryland 20854 | $ 20.00 | 2.0% |

## EXHIBIT B

## PROPERTY DESCRIPTION

Lot 25, Block 3, E. Brook Lee's Addition to Silver Spring according to a plat among the land records of Montgomery County, Maryland in Plat Book 3, at Plat 220. Saving and except however, the northerly 10 feet by the full width thereof containing approximately 500 square feet conveyed to Montgomery County, Maryland in Deed Book 2240, at Page 57. Lot 27, Block 3, E. Brook Lee's First Addition to Silver Spring according to a plat among the land records of Montgomery County, Maryland in Plat Book 3, at Plat 220. Saving and except however, the northerly 10 feet by the full width thereof containing approximately 500 square feet conveyed to Montgomery County, Maryland in Deed Book 2240, Page 53.

113C-qq