# SETTLEMENT AGREEMENT

THIS AGREEMENT is made as of this 1st day of ~~January~~ Febr, 1991, by and among RICHARD S. COHEN ("Cohen"); 1110 BONIFANT LIMITED PARTNERSHIP; a Maryland limited partnership ("Bonifant"); WOODMONT STATION LIMITED PARTNERSHIP, a Maryland limited partnership ("Woodmont"); NUWELD/FIRST WASHINGTON JOINT VENTURE, a Maryland general partnership ("Nuweld"); and JUDITH COHEN, CHARLES W. BASSING, III, ("Bassing"), JERROLD H. MALAMUT ("Malamut"), and LYNNE MALAMUT; and FIRST AMERICAN BANK OF MARYLAND (the "Bank"). Cohen, Judith Cohen, Bassing, Malamut, and Lynne Malamut are sometimes hereinafter collectively referred to as the "Guarantors".

## RECITALS:

A. Pursuant to a building loan agreement dated November 18, 1985 by and between Bonifant and the Bank (the "Bonifant Loan Agreement"), the Bank provided Bonifant with a loan (the "Bonifant Term Loan") in the principal amount of Five Million Dollars ($5,000,000) to be used to construct an office building. The Bonifant Term Loan is evidenced and secured by (1) a note dated November 18, 1985 made by Bonifant and payable to the Bank (the "Bonifant Term Note"), (2) a deed of trust dated November 18, 1985 from Bonifant to Richard J. Nee and Louis W. Lacy, as trustees, covering that property in Montgomery County, Maryland known as 1110 Bonifant Street, Silver Spring, Maryland (the "Bonifant Property"), and recorded among the Land Records of Montgomery County, Maryland in Liber 6929 at folio 831 et seq. (the "Bonifant Deed of Trust"), and (3) a guaranty dated November 18, 1985 from Cohen and Charles W. Bassing, III, to the Bank (the "Bonifant Guaranty"). The Bonifant Loan Agreement, the Bonifant Term Note, the Bonifant Deed of Trust, the Bonifant Guaranty and any other documents evidencing, securing or documenting the Bonifant Term Loan are hereinafter collectively called the "Bonifant Term Loan Documents".

The Bonifant Term Loan matured on November 17, 1990. The balance due and owing under the Bonifant Term Loan on the date of this Agreement is $5,133,513.00, consisting of the principal amount of $4,967,048.00 and accrued interest of $166,465.00, plus attorneys' fees and other costs which are payable under the Bonifant Term Loan Documents.

B. In 1984, the Bank provided Cohen with a line of credit in the principal amount of Five Million Dollars ($5,000,000) (the "Credit Line Loan"). The Credit Line Loan was renewed in November 1989 and is evidenced by a revolving/draw commercial promissory note dated November 15, 1989 made by Cohen and payable to the Bank (the "Credit Line Note"). The Credit Line Note and any other documents evidencing, securing or documenting the Credit Line Loan are hereinafter collectively called the "Credit Line Loan

K:\IEW\CLI\41177.AGT
February 4, 1991

GOVERNMENT EXHIBIT 6

Documents". The Credit Line Loan matured on August 31, 1990. On the date of this Agreement, the balance due and owing under the Credit Line Loan is $3,618,270.84, consisting of the principal amount of $3,500,000 and accrued interest of $118,270.84, plus attorneys' fees and other costs which are payable under the Credit Line Loan Documents.

C. Pursuant to a construction loan agreement dated May 18, 1988 by and between Woodmont and the Bank (the "Woodmont Loan Agreement"), the Bank provided Woodmont with a loan (the "Woodmont Term Loan") in the principal amount of Five Million Four Hundred Thousand Dollars ($5,400,000) to be used to renovate and convert an existing building to a retail center. The Woodmont Term Loan is evidenced and secured by (1) a note dated May 18, 1988 made by Woodmont and payable to the Bank (the "Woodmont Term Note"), (2) a deed of trust dated May 18, 1988, from Woodmont to Kelly C. Irwin and Philip A. Heldrich, as trustees, covering that property in Montgomery County, Maryland known as 1321 Rockville Pike, Rockville, Maryland (the "Woodmont Property"), and recorded among the Land Records of Montgomery County, Maryland (the "Woodmont Deed of Trust") , and (3) a guaranty dated May 18, 1988 from Cohen, Judith Cohen, Jerrold Malamut and Lynne Malamut (the "Woodmont Guaranty"). The Woodmont Loan Agreement, the Woodmont Term Note, the Woodmont Deed of Trust, the Woodmont Guaranty and any other documents evidencing, securing or documenting the Woodmont Term Loan are hereinafter collectively called the "Woodmont Term Loan Documents".

The Woodmont Term Loan matured on May 18, 1991. The balance due and owing under the Woodmont Term Loan on the date of this Agreement is $5,080,173.13, consisting of the principal amount of $4,907,393.00 and accrued interest of $172,780.13, plus attorneys' fees and other costs which are payable under the Woodmont Term Loan Documents.

D. On September 10, 1987, the Bank provided Nuweld with a loan (the "Nuweld Term Loan") in the principal amount of One Million One Hundred Thousand Dollars ($1,100,000) to be used to purchase an office building. The Nuweld Term Loan is evidenced and secured by (1) a note dated September 10, 1987 made by Nuweld and payable to the Bank (the "Nuweld Term Note") and (2) a guaranty dated September 10, 1987 from Cohen to the Bank (the "Nuweld Guaranty"). The Nuweld Term Note, the Nuweld Guaranty and any other documents evidencing, securing or documenting the Nuweld Term Loan are hereinafter collectively called the "Nuweld Term Loan Documents".

The Nuweld Term Loan matured on January 1, 1991. The balance due and owing under the Nuweld Term Loan on the date of this Agreement is $931,687.50, consisting of the principal amount of $900,000.00 and accrued interest of $31,687.50, plus attorneys'

fees and other costs which are payable under the Nuweld Term Loan Documents.

E. Cohen has on deposit with the Bank a certificate of deposit (the "CD") in the amount of approximately $2,080,519.00. The Borrowers and Guarantors acknowledge that the Bank is entitled to exercise its rights of set off against the CD.

F. The Bonifant Term Loan, the Credit Line Loan, the Woodmont Term Loan and the Nuweld Term Loan are hereinafter referred to collectively as the "Loans". The Bonifant Term Note, the Credit Line Note, the Woodmont Term Note and the Nuweld Term Note are hereinafter collectively referred to as the "Notes". The Bonifant Term Loan Documents, the Credit Line Loan Documents, the Woodmont Term Loan Documents and the Nuweld Term Loan Documents are hereinafter collectively referred to as the "Loan Documents." Bonifant, Woodmont, Nuweld and Cohen are hereinafter collectively referred to as the "Borrowers".

The Borrowers desire to satisfy their obligations to the Bank under the Notes, and the Bank has agreed to consider the Notes paid and satisfied, in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the agreements set forth below, the parties agree as follows:

1. Recitals. The Recitals are a material part of this Agreement, and the Bank, the Borrowers and the Guarantors acknowledge and affirm the accuracy thereof.

2. Payment. Contemporaneously with the execution of this Agreement, Cohen and the other Borrowers shall pay to the Bank a total of Four Million Five Hundred Nine Thousand Two Hundred Five Dollars ($4,509,205.00), as follows:

(a) a total of Two Million Four Hundred Twenty-Eight Thousand Six Hundred Eighty-Six Dollars ($,428,686.00) by wire transfer or cashier's check;

(b) a total of Two Million Eighty Thousand Five Hundred Nineteen Dollars ($2,080,519.00), constituting the entire balance of the CD, shall be paid to the Bank from the CD, by way of set off which the Bank shall exercise, in its discretion, prior to or contemporaneously with the execution of this Agreement.

3. Deeds in Lieu of Foreclosure. Contemporaneously with the execution of this Agreement, Bonifant, Woodmont, and the Guarantors (as appropriate) shall enter into, with the Bank, the "Bonifant Settlement Agreement" and the "Woodmont Settlement Agreement" upon the terms and in the form of the agreements attached hereto as Exhibits A and B, respectively, which agreements provide for conveying to the Bank or its designee title in fee simple to the Bonifant Property and the Woodmont Property. The Bonifant and Woodmont Agreements are incorporated herein by reference to the same extent as if set forth at length herein.

4. Releases.

(a) Release of the Bank. Each of the Borrowers and the guarantors hereby release and forever discharge the Bank and its officers, directors, employees, attorneys and other agents, subsidiaries, affiliates, successors and assigns from all sums of money, accounts, actions, suits, proceedings, claims, liabilities, causes of action, and demands of every kind whatsoever, known or unknown, past or present, which they or anyone of them had, now has, or may have against the Bank with respect to the Loans.

(b) Release of Certain Borrowers. In consideration for the payments and conveyances of the Bonifant Property and the representations and warranties in paragraph 5 below, Cohen, Nuweld, Judith Cohen, Bassing, Malamut, and Lynne Malamut are hereby released and discharged of all debts of any kind under or with respect to the Loans and from the performance and observance of all of their respective obligations under the Loan Documents. This release and discharge (i) shall not affect the obligations of any of the Borrowers or Guarantors for obligations to the Bank other than the Loans; and (ii) shall not affect the continuing validity and enforceability of the Bonifant Deed of Trust and the Woodmont Deed of Trust. However, in the event of foreclosure under either the Bonifant or Woodmont Deeds of Trust, the Bank will not seek a deficiency judgment against Bonifant or Woodmont, as the case may be, or any general or limited partner of either any guarantor of either the Bonifant or Woodmont Term Loans.

5. Representations and Warranties. Each of the respective Borrowers and Guarantors (other than Cohen) hereby respectively represents and warrants as to his, her or its particular financial condition that the information heretofore provided to the Bank is true and accurate in all material respects as of the date thereof. Cohen hereby represents and warrants that the schedules of Cohen's assets and liabilities, prepared by Kenneth Leventhal & Co. and dated as of June 30, 1990, are true and accurate in all material respects as of the date thereof, with respect to all personal and real properties primarily held for investment purposes (the "Investment Properties"), and that there have been no material adverse changes in such assets and liabilities, except as to matters previously disclosed to the Bank in writing by Cohen. Cohen hereby acknowledges that the financial information previously provided to the Bank reflects a value of approximately $16,980,000 as to Cohen's personal assets (certain of which may be jointly held with Judith Cohen). In the event the value of any asset or liability comprising the Investment Properties proves to be inaccurate in any material respect, then, if the value of such asset or amount of any liability was determined in good faith by an independent appraiser (e.g. Kenneth Leventhal & Co.) or other similarly qualified person, then such inaccuracy shall not be deemed to be a breach of Cohen's representation and warranty set forth above.

6. Further Assurances. Each of the parties to this Agreement agree to execute and deliver to each other such other and further documents that are reasonably required.

7. Counterparts. This Agreement may be executed in counterparts to effectuate the terms of this Agreement.

IN WITNESS WHEREOF, each of the parties have executed this Agreement, under seal, as of the day and year first above written.

WITNESS/ATTEST:

_________________________ (SEAL)
RICHARD S. COHEN

1110 BONIFANT LIMITED PARTNERSHIP

By: _________________________ (SEAL)
Richard S. Cohen,
General Partner

By: _________________________ (SEAL)
Charles W. Bassing, III,
General Partner

WOODMONT STATION LIMITED PARTNERSHIP

By: _________________________ (SEAL)
Richard S. Cohen,
General Partner

By: _________________________ (SEAL)
Jerrold H. Malamut,
General Partner

as to all

NUWELD/FIRST WASHINGTON JOINT VENTURE

By: _________________________ (SEAL)
Richard S. Cohen,
General Partner

_________________________ (SEAL)
CHARLES W. BASSING, III

K:\IEW\CLI\41177.AGT
February 4, 1991

WITNESS/ATTEST:

as to all

Judith Cohen (SEAL)
JUDITH COHEN

(SEAL)
JERROLD MALAMUT

Lynne Malamut (SEAL)
LYNNE MALAMUT

FIRST AMERICAN BANK OF MARYLAND

By: Robert Martins (SEAL)
Robert Martins,
Vice President