BASSING III                          311          0611-55

1991 FEDERAL INCOME TAX STATEMENTS

PAGE    1

STATEMENT  1 - WAGES, SALARIES, TIPS, ETC.

| EMPLOYERS NAME AND ADDRESS | INCOME TAX WITHHELD | WAGES SALARIES TIPS,ETC | SOC SEC TAX WITHHELD | SOC SEC WAGES FOR SCH SE | MEDICARE TAX WITHHELD | MEDICARE WAGES FOR SCH SE |
|---|---|---|---|---|---|---|
| BENCHMARK PROPERTIES, INC. | | 15,000 | 1,148 | 15,000 | | |
| TOTAL | | 15,000 | 1,148 | 15,000 | | |

GOVERNMENT
EXHIBIT

10:3

BASSING III                    311           0611-55

1991 FEDERAL INCOME TAX STATEMENTS                    PAGE   2

STATEMENT  2 - NET OPERATING LOSS CARRYBACK/CARRYOVER

|                            | FROM 1990 | FROM 1989 | FROM 1988 | FROM 1987 |
|----------------------------|-----------|-----------|-----------|-----------|
| TOTAL                      | 20,759    | 54,336    | 104,906   | 165,4     |
| USED IN 1984               |           |           |           |           |
|                            |           |           |           | 46,3      |
| USED IN 1985               |           |           |           |           |
|                            |           |           |           | 50,3      |
| USED IN 1986               |           |           |           |           |
|                            |           |           |           | 26,96     |
| AVAILABLE IN 1991          | 20,759    | 54,336    | 104,906   | 41,76     |

TOTAL CARRYBACK/CARRYOVER TO 1991                            221,75

▉ BASSING III                          311            0611-55

1991 FEDERAL INCOME TAX STATEMENTS

PAGE  3

STATEMENT  3 - ALTERNATIVE MINIMUM TAX NOL C/O

|  | FROM 1990 | FROM 1989 | FROM 1988 |
|---|---|---|---|
| TOTAL | 16,479 | 18,616 | 23,00▉ |
| AVAILABLE IN 1991 | 16,479 | 18,616 | 23,00▉ |

TOTAL CARRYBACK/CARRYOVER TO 1991                            58,10▉

-----------------------------------------------------------------------

STATEMENT  4 - MISCELLANEOUS INCOME

|  | SUBJECT TO SE TAX | OTHER TAXABLE INCOME | TOTAL TAXABLE INCOME |
|---|---|---|---|
| *Cancellation of Debt Income (1110 Bonifant)* |  | 148,144 | 148,144 |
| (H) PERSONAL USE OF CORPORATE AUTO |  | 1,541 | 1,541 |
| NET OPERATING LOSS-SEE STMT  2 |  | -221,764 | -221,764 |
| TOTAL MISCELLANEOUS INCOME |  | < 72,079 > | < 72,079 > |

BASSING III                          311          0611-55

1991 FEDERAL INCOME TAX STATEMENTS

PAGE   4

STATEMENT  5 - INCOME FROM PARTNERSHIPS

NAME AND ADDRESS OF PARTNERSHIP
      C W BASSING III, J M WALSH, J M NOLAN &
      T R DAVIDSON PTR BENCHMARK ASSOC
      FED EMP I.D. NUMBER  62-1061927

```
                                          YES     NO
GENERAL PARTNER                           (X)    ( )
TRADE OR BUSINESS - MATERIAL PARTICIPATION ( )   ( )
RENTAL REAL ESTATE - ACTIVE PARTICIPATION (X)    ( )

INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY            6,346
                                                      -----------
   TOTAL PARTNERSHIP INCOME (LOSS)
                                                                  6,346

   GAIN(LOSS) BEFORE LIMITATION                        6,346
      LESS SUSPENDED LOSS CARRYOVER                    13,138
                                                      --------------
   PASSIVE INCOME (LOSS)
OTHER K-1 INFORMATION                                             -6,792
   PASSIVE LOSS CARRYOVER FOR ALT MIN
   INTEREST                                           14,455
TAX PREFERENCE ITEMS                                    438
   DEPRECIATION ADJUSTMENT - POST 86
INVESTMENT INTEREST EXPENSE                             350
   INVESTMENT INCOME
                                                        438
```

NAME AND ADDRESS OF PARTNERSHIP
      C W BASSING III, J M WALSH, J M NOLAN &
      T R DAVIDSON PTR BENCHMARK ASSOC
      FED EMP I.D. NUMBER  62-1061927

```
                                          YES     NO
GENERAL PARTNER                           ( )    (X)
TRADE OR BUSINESS - MATERIAL PARTICIPATION ( )   ( )
RENTAL REAL ESTATE - ACTIVE PARTICIPATION (X)    ( )

INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY             212
                                                      -----------
```

Gov. 125

BASSING III                          311          0611-55

1991 FEDERAL INCOME TAX STATEMENTS

STATEMENT  5 - INCOME FROM PARTNERSHIPS (CONTINUED)

   TOTAL PARTNERSHIP INCOME (LOSS)

                                     212

    GAIN(LOSS) BEFORE LIMITATION            212
      LESS SUSPENDED LOSS CARRYOVER         843
                      -------------
   PASSIVE INCOME (LOSS)
  OTHER K-1 INFORMATION                                     -631
    PASSIVE LOSS CARRYOVER FOR ALT MIN
    INTEREST                              2,990
  TAX PREFERENCE ITEMS                    14
    DEPRECIATION ADJUSTMENT - POST 86
  INVESTMENT INTEREST EXPENSE             11
    INVESTMENT INCOME
                           14


NAME AND ADDRESS OF PARTNERSHIP
     1110 BONIFANT LIMITED PARTNERSHIP
     R S COHEN, C W BASSING, GENERAL PARTNERS
     7811 MONTROSE ROAD #500
     POTOMAC MD 20854
     FED EMP I.D. NUMBER  52-1397799


|                                                    | YES  | NO   |
|----------------------------------------------------|------|------|
| GENERAL PARTNER                                    |      |      |
| TRADE OR BUSINESS - MATERIAL PARTICIPATION         | (X)  | ( )  |
| RENTAL REAL ESTATE - ACTIVE PARTICIPATION          | ( )  | ( )  |
|                                                    | (X)  | ( )  |

INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY        -8,997
                                -----------

   TOTAL PARTNERSHIP INCOME (LOSS)
                                   -8,997

    GAIN(LOSS) BEFORE LIMITATION            -8,997
      LESS SUSPENDED LOSS CARRYOVER         101,314
                      -------------

INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991 -
  NET GAIN IS PASSIVE AND IS INCLUDED IN PASSIVE LOSS LIMITATION
    PASSIVE INCOME (LOSS)                                  -110,311

    INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991.
  OTHER K-1 INFORMATION
    PASSIVE LOSS CARRYOVER FOR ALT MIN
    OTHER SECTION 1231 GAIN OR LOSS       155,354
                           37,302

BASSING III                    311              0611-55

1991 FEDERAL INCOME TAX STATEMENTS
                                                        PAGE   6
STATEMENT 5 - INCOME FROM PARTNERSHIPS (CONTINUED)

TAX PREFERENCE ITEMS
   DEPRECIATION ADJUSTMENT - POST 86                    -390


NAME AND ADDRESS OF PARTNERSHIP
      1110 BONIFANT LIMITED PARTNERSHIP
      R S COHEN, C W BASSING, GENERAL PARTNERS
      7811 MONTROSE ROAD #500
      POTOMAC MD 20854
      FED EMP I.D. NUMBER  52-1397799


                                          YES    NO
GENERAL PARTNER                           ( )    (X)
TRADE OR BUSINESS - MATERIAL PARTICIPATION ( )   ( )
RENTAL REAL ESTATE - ACTIVE PARTICIPATION (X)    ( )

INCOME (LOSS) - RENTAL REAL ESTATE ACTIVITY      -38,239
                                              -----------
   TOTAL PARTNERSHIP INCOME (LOSS)
                                                        -38,239

   GAIN(LOSS) BEFORE LIMITATION              -38,239
      LESS SUSPENDED LOSS CARRYOVER          447,271
                                          -------------
INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991 -
   NET GAIN IS PASSIVE AND IS INCLUDED IN PASSIVE LOSS LIMITATION
      PASSIVE INCOME (LOSS)
                                                        -485,510

   INTEREST IN THIS ACTIVITY FULLY DISPOSED OF IN 1991.
   OTHER K-1 INFORMATION
      PASSIVE LOSS CARRYOVER FOR ALT MIN          707,008
      OTHER SECTION 1231 GAIN OR LOSS             158,536
   TAX PREFERENCE ITEMS
      DEPRECIATION ADJUSTMENT - POST 86           -1,654


SUMMARY OF INCOME AND K-1 INFORMATION FOR ALL PARTNERSHIPS

                          PASSIVE ACTIVITIES        NONPASSIVE ACTIVITIES
                          (LOSS)    INCOME          (LOSS)    INCOME
C W BASSING III, J M WALSH, J M NOLAN &
   RENTAL REAL ESTATE                6,792
C W BASSING III, J M WALSH, J M NOLAN &
   RENTAL REAL ESTATE                631

BASSING III                          311          0611-55

1991 FEDERAL INCOME TAX STATEMENTS

STATEMENT  5 - INCOME FROM PARTNERSHIPS (CONTINUED)

SUMMARY OF INCOME AND K-1 INFORMATION FOR ALL PARTNERSHIPS

|  | PASSIVE ACTIVITIES | | NONPASSIVE ACTIVITIES | |
| --- | --- | --- | --- | --- |
|  | (LOSS) | INCOME | (LOSS) | INCOME |
| 1110 BONIFANT LIMITED PARTNERSHIP | | | | |
| RENTAL REAL ESTATE | 110,311 | | | |
| 1110 BONIFANT LIMITED PARTNERSHIP | | | | |
| RENTAL REAL ESTATE | 485,510 | | | |
| TOTAL INCOME OR LOSS FROM | ---------- | ---------- | ---------- | ---------- |
| ALL PARTNERSHIPS | 603,244 | | | |
|  | ========= | | | |

OTHER K-1 INFORMATION
    PASSIVE LOSS CARRYOVER FOR ALT MIN
    INTEREST                                            879,807
        OTHER SECTION 1231 GAIN OR LOSS                     452
TAX PREFERENCE ITEMS                                    195,838
    DEPRECIATION ADJUSTMENT - POST 86
INVESTMENT INTEREST EXPENSE                              -1,683
        INVESTMENT INCOME
                                                            452

BASSING III                         311        0611-55

1991 FEDERAL INCOME TAX STATEMENTS

STATEMENT  7 - PASSIVE ACTIVITY LOSS LIMITATIONS

RENTAL REAL ESTATE ACTIVITIES WITH ACTIVE PARTICIPATION

|  | CURRENT YEAR | | PRIOR YEAR | OVERALL | |
|---|---|---|---|---|---|
|  | A) INCOME | B) (LOSS) | C) UNALLOWED | D) INCOME | E) (LOSS) |
| C W BASSING III, J M WALSH, J M NOLAN & | | | | PARTNERSHIP | |
|  | 6,346 | | -13,138 | | -6,792 |
| C W BASSING III, J M WALSH, J M NOLAN & | | | | PARTNERSHIP | |
|  | 212 | | -843 | | -631 |
| 1110 BONIFANT LIMITED PARTNERSHIP | | | | (DISPOSITION) | |
|  | 37,302 | -8,997 | -101,314 | | -73,009 |
| 1110 BONIFANT LIMITED PARTNERSHIP | | | | (DISPOSITION) | |
|  | 158,536 | -38,239 | -447,271 | | -326,974 |
| TOTALS | 202,396 | -47,236 | -562,566 | | -457,406 |

Gov. 129

STATEMENT  6

BASSING III                          311            0611-55

1991 FEDERAL INCOME TAX STATEMENTS

STATEMENT   8 - PASSIVE ACTIVITY LOSS LIMITATIONS
                ALTERNATIVE MINIMUM TAX

RENTAL REAL ESTATE ACTIVITIES WITH ACTIVE PARTICIPATION

| | CURRENT YEAR | | PRIOR YEAR | OVERALL | |
| | A) INCOME | B) (LOSS) | C) UNALLOWED | D) INCOME | E) (LOSS) |
|---|---|---|---|---|---|
| C W BASSING III, J M WALSH, J M NOLAN & | 6,696 | | -14,455 | ALT MIN | -7,759 |
| C W BASSING III, J M WALSH, J M NOLAN & | 223 | | -2,990 | ALT MIN | -2,767 |
| 1110 BONIFANT LIMITED PARTNERSHIP | 37,302 | -9,387 | -155,354 | (DISPOSITION) | — 127,439 |
| 1110 BONIFANT LIMITED PARTNERSHIP | 158,536 | -39,893 | -707,008 | (DISPOSITION) | — 588,365 |
| | | | | | |
| TOTALS | 202,757 | -49,280 | -879,807 | | — 726,330 |

STATEMENT  7

BASSING III                          311              0611-55

1991 FEDERAL INCOME TAX STATEMENTS

PAGE  10

STATEMENT  9 - CONTRIBUTION CARRYOVERS

| DESCRIPTION | 50 PCT PROPERTY | 30 PCT NONAPPREC PROPERTY | 30 PCT APPREC PROPERTY | 20 PCT NONAPPREC PROPERTY | 20 PCT APPREC PROPERTY |
|---|---|---|---|---|---|
| CONTRIB FROM 88 | 2,060 | | | | |
| AMT USED IN 91 | 2,060 | | | | |
| CONTRIBUTION CARRIED OVER TO 1992 | | | | | |

========== ========== ========== ========== ==========

TOTAL 50% CONTRIBUTION CARRYOVERS                 2,060

TOTAL CONTRIBUTION CARRYOVERS FROM PRIOR YEARS

2,060
==========

BASSING III                    311            0611-55

1991 FEDERAL INCOME TAX STATEMENTS

PAGE  11

STATEMENT 10 - COMPUTATION OF AGI LIMIT ON ITEMIZED DEDUCTIONS

1. TOTAL AMOUNT OF ITEMIZED DEDUCTIONS BEFORE THE
   LIMITATION . . . . . . . . . . . . . . . . . . . .1.
2. ITEMIZED DEDUCTIONS EXCLUDED FROM REDUCTION. . . .2.        24,835
3. LINE 1 MINUS LINE 2. IF RESULT IS 0, STOP HERE
   ENTER AMOUNT FROM LINE 1 ON SCHEDULE A . . . . .3.        24,835
4. LINE 3 TIMES 80% (.80). . . . . . . . .4.          19,868
5. AMOUNT OF ADJUSTED GROSS INCOME . . .5.        <469,357>
6. THRESHOLD AMOUNT. . . . . . . . . . . .6.         100,000
7. LINE 5 MINUS LINE 6. IF RESULT IS ZERO
   STOP HERE, ENTER AMOUNT FROM LINE 1 ON
   SCHEDULE A. . . . . . . . . . . . . . .7.              0
8. LINE 7 TIMES (.03). . . . . . . . . . .8.              0
9. COMPARE LINES 4 AND 8. ENTER THE SMALLER OF THE
   TWO AMOUNTS HERE . . . . . . . . . . . . . . . .9.             0
10. TOTAL ITEMIZED DEDUCTIONS. SUBTRACT LINE 9 FROM
    LINE 1. ENTER HERE AND ON SCHEDULE A . . . . .10         24,835

**Memorandum to Accompany Claim for Refund**

**by**

**CHARLES W. BASSING III**
**Tax year ended 12/31/91**

Note:  In addition to the tax shown on the amended return accompanying this memo, this claim for refund also extends to the interest paid by Mr. Bassing on April 8, 2002 in the amount of $78,406.99, together with interest accruing on the refund from the April 8th date of payment.

### Explanation of Changes to Return

Schedule D of the 1991 return filed by Mr. Bassing reported $882,871 of extinguished liabilities from a partnership which terminated in 1991 as capital gain from a deemed sale or exchange of his interests in that partnership.  Upon further review, it has been determined that the $882,871 of income should have been classified as cancellation of debt income, not capital gain.  Since Mr. Bassing was insolvent at the time of the liquidation and debt forgiveness, the income was excludable under Section 108 of the Internal Revenue Code, as amended (the "Code") in the amount of $734,727 (the extent to which Mr. Bassing was insolvent immediately prior to the debt forgiveness).  Accordingly, Mr. Bassing's adjusted gross income on line 1 of the amended return has been reduced by $734,727 of debt discharge income excludable as a result of his insolvency.

A copy of the original 1191 return filed by Mr. Bassing and a copy of a revised 1991 return showing the effects of the foregoing changes accompany this memorandum.

The facts, authority, and analysis which demonstrate that the foregoing changes are correct are set forth below.

### Statement of Pertinent Facts

On April 30, 1985, Mr. Bassing (the "Taxpayer") and Richard S. Cohen formed 1110 Bonifant Limited Partnership (the "Partnership").   Both the Taxpayer and Mr. Cohen were general partners with each holding a 5 percent general partnership interest.  The Taxpayer and Mr. Cohen also held limited partnership interests in the Partnership -- the Taxpayer an initial 25 percent interest.  Substantially all of the remaining limited partnership interests were owned by family partnerships controlled by Mr. Cohen.

Following its formation, the Partnership acquired land in Silver Spring, Maryland, constructed an office building, and operated the office building as a rental property.  The construction of the office building was financed by a $5,000,000 loan from First American Bank of Maryland (the "Bank") dated November 18, 1985.  The Taxpayer and Mr. Cohen guaranteed the loan.

Memorandum to Accompany Refund Claim
Of Charles W. Bassing 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
Page 2

By an "Amendment" to the Agreement dated April 1, 1988, and made effective December 31, 1987, the Agreement was amended to comply with the "economic effect" requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3). Section 8(c) of the Amendment stated that any partner with a negative capital account balance following the distribution of liquidation proceeds must restore the entire negative balance by no later than (i) the end of the taxable year of the liquidation of the Partnership (or of the partner's partnership interest) or (ii) 90 days after the date of the liquidation of the Partnership (or of the partner's partnership interest). The amount restored must then, pursuant to Section 8(c), be paid to the Partnership's creditors or to those partners having positive capital account balances. Section 9 of the Amendment further required that the partners' capital accounts be determined and maintained in accordance with Treas. Reg. Section 1.704-1(b)(2)(iv).

The only other amendment to the Agreement was an amendment captioned "First Amendment" to the Agreement, dated August 28, 1988, pursuant to which a new tenant of the Partnership's office building was admitted as a 12.5 percent limited partner, and the interests of the other limited partners were proportionately reduced. The Taxpayer's limited partnership interest was reduced by 3.75 percentage points to 21.25 percent to reflect the tenant's admission as a limited partner.

During the period that the Partnership was in existence, the office building's cash flow was generally negative. Mr. Cohen funded the cash shortfalls by making unsecured loans to the Partnership. The Partnership allocated substantial losses to the Taxpayer and Mr. Cohen during its existence.

By 1991 the Partnership, like many other realty ventures at the time, was in dire financial straits. It had defaulted on its loan to the Bank. In addition, Mr. Cohen owned other realty projects that were experiencing financial problems and that had defaulted on other loans with the Bank. In an omnibus Settlement Agreement dated as of February 1, 1991 (the "Settlement Agreement"), encompassing all of the Cohen realty projects financed by the Bank, including the Partnership's office building, the Bank released Mr. Cohen and the Taxpayer from their liability on the Partnership's Bank loan in return for (1) certain payments from Mr. Cohen and (2) the conveyance of the Partnership's office building to the Bank by deed in lieu of foreclosure. The Settlement Agreement did not require any payment from the Taxpayer notwithstanding his liability as a general partner of the Partnership and his guarantor status on the Bank loan. The Taxpayer had neither the cash nor other financial resources with which to make or finance any significant payment to the Bank.

The Partnership's conveyance of the office building to the Bank was effective February 1, 1991. The Partnership did not conduct any business activity thereafter except to wind up its affairs.

Memorandum to Accompany Refund Claim
Of Charles W. Bassing ███████████
Page 3

Contemporaneous with the Settlement Agreement and the transfer of the office building to the Bank, the Taxpayer, Mr. Cohen, and the other original partners of the Partnership executed a Release and Indemnification Agreement, dated February 1, 1991 (the "Release"), providing for mutual releases and an indemnification by Mr. Cohen in favor of the Taxpayer. Paragraph 1 of the Release stated as follows:

"1.    Release.

"(a)    Partners hereby **release and discharge** [the Taxpayer], his heirs and assigns, and [the Taxpayer's management company], its officers, directors, employees, successors and assigns, from any and all claims, **debts**, demands, accountings, causes of action or **liabilities**, of any nature whatever, matured or unmatured, contingent or absolute, known or unknown, whether within the contemplation of the parties or not, **arising out of the Partnership**, unless caused by or otherwise arising from the fraud or willful misconduct of the [Taxpayer] and/or [the Taxpayer's management company]." {**Emphasis added.**}

The foregoing release fully discharged the Taxpayer from all Partnership debts and liabilities for which he was liable. Thus, the release discharged his obligation under Section 8(c) of the Amendment to restore his negative capital account, an obligation which would otherwise have been triggered by the February 1991 liquidation of the Partnership. The Taxpayer's final negative capital account liability was substantial, even after the allocation of his $195,838 share ($37,302 general partner share + $158,536 limited partner share) of the $746,054 of total Section 1231 gain recognized by the Partnership upon its transfer of the office building to the Bank. The Taxpayer's final capital account balance with respect to his 5% general partnership interest was a negative $156,019, and his final capital account balance with respect to his 21.25% limited partnership interest was a negative $726,852. Absent the Release, the Taxpayer would have been required to pay $882,871 to the Partnership ($156,019 + $726,852) to satisfy his Section 8(c) restoration obligation. In accordance with Section 8(c), the Partnership would have then paid the $882,871 to Mr. Cohen in partial satisfaction of the $2,748,229 that he had loaned the Partnership over the years to fund Partnership cash deficiencies.

Following the transfer of the office building to the Bank, the Partnership wound up its affairs and engaged in no further business activity.

The Taxpayer's accountants reported the $882,871 of negative capital account forgiveness on the Taxpayer's 1991 personal return as long-term capital gain from the deemed sale or exchange of the Taxpayer's general and limited partnership interests. Although the same accountants had also prepared the Partnership's final Form 1065 for 1991 and thus knew about the Settlement Agreement and the Partnership's conveyance of the office building to the Bank, they were not aware of either the Release or the deficit restoration obligation in Section 8(c) of the Amendment.

Memorandum to Accompany Refund Claim
Of Charles W. Bassing ████████
Page 4

As of January 31, 1991, the day prior to the date of the Release, the Taxpayer was insolvent in the amount of $734,727.

### Applicable Authorities

Under Section 61(a)(12), gross income includes income from discharge of indebtedness. Section 108(a)(1)(B) and (a)(3) of the Code provides, however, that debt discharge income is excludable from an insolvent taxpayer's income up to the amount by which the taxpayer is insolvent. Section 108(d)(3) instructs that "insolvent" means the excess of liabilities over the fair market value of assets, and that the determination of a taxpayer's insolvency is to be made immediately before the discharge. Under Section 108(d)(6), the insolvency exclusion of Section 108(a)(1)(B) is determined at the partner level in the case of a partnership.

The term "indebtedness" has long been defined for federal income tax purposes as an existing, unconditional and legally enforceable obligation for the payment of money. First National Company v. Commissioner, 289 F.2d 861, 865 (6th Cir. 1961). As seen in Halle v. Commissioner, 83 F.3d 649 (4th Cir. 1996), a contractual obligation that creates a binding and legally enforceable obligation to pay money will be treated as "indebtedness". The Supreme Court has described the term "discharge of indebtedness" as "convey{ing} *forgiveness of*, or *release from*, an obligation to repay." {Emphasis in original.} U.S. v. Centennial Savings Bank FSB, 499 U.S. 573, 580 (1991).

Treas. Reg. Section 1.704-1(b)(2)(ii) sets forth safe harbor rules for ensuring that allocations of income and loss have economic effect. To comply with these rules, partners must agree to maintain capital accounts under the rules of Treas. Reg. Section 1.704-1(b)(2)(iv) and liquidate according to positive capital account balances. Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3) further requires that if a partner has a deficit balance in his capital account following the liquidation of his interest in the partnership, the partner must be unconditionally obligated to restore the amount of such deficit balance to the partnership by the end of such tax year (or, if later, within 90 days after the date of such liquidation). Any amount so contributed must be paid to creditors of the partnership or distributed to other partners in accordance with their positive capital account balances.

Treas. Reg. Section 1.704-1(b)(2)(ii)(c) clarifies that a partner in no event will be considered obligated to restore the deficit balance in his capital account to the extent such obligation is not legally enforceable.

Treas. Reg. Section 1.704-1(b)(2)(iv)(d)(2) states that a partner whose interest is liquidated will be treated as satisfying his deficit capital restoration obligation to the extent of (1) the fair market value, at the time of contribution, of any negotiable promissory note (of which such partner is the maker) that such partner contributes to the partnership on or after the date his interest is liquidated and within the time specified in

Memorandum to Accompany Refund Claim
Of Charles W. Bassing ████████████
Page 5

paragraph Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3), and (2) the fair market value, at the time of liquidation, of the unsatisfied portion of any negotiable promissory note (of which such partner is the maker) that such partner previously contributed to the partnership. The fair market value of a partner's note will be no less than the note's outstanding principal balance, provided that it bears interest at a rate at least equal to the applicable federal rate at the time of valuation.

Treas. Reg. Section 1.704-1(b)(2)(ii)(g) provides that the liquidation of a partner's interest in the partnership occurs upon the earlier of (1) the date upon which there is a liquidation of the partnership, or (2) the date upon which there is a liquidation of the partner's interest in the partnership. The liquidation of a partnership occurs upon the earlier of (1) the date upon which the partnership is terminated under Section 708(b)(1), or (2) the date upon which the partnership ceases to be a going concern (even though it may continue in existence for the purpose of winding up its affairs, paying its debts, and distributing any remaining balance to its partners).

Rev. Rul. 72-505, 1972-2 C.B. 102, holds that the amount paid upon liquidation of a partnership by the surviving general partner to partnership creditors on behalf of the insolvent estate of his deceased partner was deductible under Section 166 as a debt which became worthless in the year of the payment.

Under Section 722, a partner's basis in his partnership interest is increased by the amount of money and the adjusted basis of property contributed to the partnership. Section 731(a) requires a partner to recognize gain from the sale or exchange of a partnership interest to the extent that the partner receives a distribution of money from the partnership which exceeds the partner's basis in his interest immediately before the distribution. Under section 733, a partner's basis in his interest is decreased (but not below zero) by the amount of any distribution of money from the partnership.

Section 752(a) provides that an increase in a partner's share of partnership liabilities, or the partner's assumption of a partnership liability, is treated as a contribution of money by the partner to the partnership. Under Section 752(b), a decrease in a partner's share of partnership liabilities is treated as a distribution of money by the partnership to the partner.

Rev. Rul. 92-97, 1992-2 C.B. 124, deals with the interplay of the Section 704(b) substantial economic effect rules and the Sections 752 and 731 deemed distribution rules where a partnership liability is cancelled, resulting in partnership-level debt discharge income. The ruling holds that where there is compliance with the substantial economic effect rules, debt discharge income may be specially allocated among partners. The ruling illustrates that debt discharge income allocated to a partner will provide a basis increase under Section 705(a)(1)(A) offsetting cash deemed distributed under Section 752(b) from the reduction in the partner's share of partnership liabilities for purposes of Section 731(a)'s gain recognition rules.

Memorandum to Accompany Refund Claim
Of Charles W. Bassing ███████████
Page 6

## Analysis

1.     The Taxpayer's Negative Capital Account Restoration Obligation at the Time the Partnership Liquidated Constituted "Indebtedness" of the Taxpayer Which Was Discharged through the Release.

By executing the Amendment, the Partnership and its two general partners, the Taxpayer and Mr. Cohen, agreed to comply with the economic effect requirements of Treas. Reg. Section 1.704-1(b)(2)(ii). In particular, Section 8(c) of the Amendment set forth the deficit restoration rules of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(3), requiring that any partner with a negative capital account balance following the distribution of liquidation proceeds restore the entire negative balance by no later than (1) the end of the taxable year of the liquidation of the Partnership (or of the partner's partnership interest) or (2) 90 days after the date of the liquidation of the Partnership (or of the partner's partnership interest). The amount restored was then required to be paid to the Partnership's creditors or to those partners having positive capital account balances. Section 9 of the Amendment further required that the partners' capital accounts be maintained in accordance with Treas. Reg. Section 1.704-1(b)(2)(iv).

Consequently, by signing the Amendment, the Taxpayer became unconditionally obligated to pay to the Partnership in the year of its liquidation the entire amount of any negative balance in his capital account existing at the time of liquidation. Since any amount paid into the Partnership by the Taxpayer to satisfy the negative capital restoration obligation was required to be paid out to creditors or other partners of the Partnership, this obligation was not an illusory obligation but one that was genuine and legally enforceable by persons who stood to benefit from its enforcement.[1]

The Taxpayer's unconditional obligation continued in existence until February 1, 1991 which, under Treas. Reg. Section 1.704-1(b)(2)(ii)(g), was the date of the Partnership's liquidation. It was on February 1, 1991 that the Settlement Agreement with the Bank and the Release were effective, and, most importantly, it was the date as of which the Partnership's only income-producing asset, its office building, was transferred to the Bank. The Partnership thereafter ceased to exist as a going concern and only engaged in wind-up activity, which, as Treas. Reg. Section 1.704-1(b)(2)(ii)(g) indicates, does not postpone the time of liquidation.

Accordingly, until the February 1, 1991 execution of the Release, the Taxpayer was contractually bound under the Amendment to pay his negative capital account balance upon the Partnership's liquidation, which occurred on February 1, 1991. But for

---

[1]     The Maryland Annotated Code, § 9-611(5) and (6) (as in effect in 1991), provided that an assignee for the benefit of creditors or a partner had the right to enforce the contribution obligation of a partner upon dissolution of a partnership. The Maryland Code, § 9-611(1) and (2), also expressly recognized that a partnership debt owed to a partner was a partnership liability which other partners may be called upon to pay upon partnership dissolution absent an agreement to the contrary.

Memorandum to Accompany Refund Claim
Of Charles W. Bassing
Page 7

the Release, the Taxpayer's obligation to pay his $882,871 negative balance to the Partnership was both unconditional and enforceable as of the February 1, 1991 liquidation. This contractual obligation clearly constituted "indebtedness" for federal income tax purposes -- that is, an existing, unconditional and legally enforceable obligation for the payment of money. First National Company v. Commissioner, 289 F.2d 861, 865 (6th Cir. 1961); Halle v. Commissioner, 83 F.3d 649 (4th Cir. 1996).

The treatment of a partner's deficit restoration obligation upon a partnership's liquidation as "indebtedness" for federal tax purposes is confirmed in the applicable Treasury Regulations. Treas. Reg. Section 1.704-1(b)(2)(iv)(d)(2) provides that a partner whose interest is liquidated will be treated as satisfying his deficit capital restoration obligation to the extent of (1) the principal amount of a negotiable promissory note bearing adequate interest that he contributes to the partnership, or (2) the outstanding principal balance of a negotiable promissory note bearing adequate interest previously contributed by the partner which the partnership holds at the time of liquidation. Since the regulations permit satisfaction of a deficit restoration obligation existing at liquidation through a previously-contributed or newly-contributed note from the partner, signifying the partner's indebtedness to the Partnership, the deficit restoration obligation itself must constitute indebtedness at the time of liquidation for tax purposes; i.e., an existing, unconditional, enforceable monetary obligation.

It is also clear that the Release executed by the Taxpayer, Mr. Cohen and the other partners of the Partnership fits squarely within the Supreme Court's explanation of the term "discharge of indebtedness" as "convey{ing} forgiveness of, or release from, an obligation to repay." {Emphasis in original.} U.S. v. Centennial Savings Bank FSB, 499 U.S. 573, 580 (1991). The Release provided to the Taxpayer a "discharge and release" from all debts and liabilities "arising out of the Partnership", thus encompassing his deficit restoration obligation and releasing him from that obligation. Significantly the Release was executed by Mr. Cohen. Mr. Cohen was the one partner who would have benefited from the enforcement of the Taxpayer's deficit restoration obligation, amounting to $882,871, since he was the sole remaining creditor of the Partnership following its 1991 liquidation and would have been entitled to receive the full $882,871 in accordance with Section 8(c) of the Amendment.

Rev. Rul. 72-505, 1972-2 C.B. 102, further confirms the treatment of the Taxpayer's $882,871 liability on liquidation as "indebtedness" the forgiveness of which constituted debt cancellation income. The 1972 ruling addressed the following situation:

        (a)     A two-person general partnership borrowed funds used in the partnership's business prior to the partnership's dissolution.

        (b)     One partner died, and the surviving partner paid the entire amount owed.

Memorandum to Accompany Refund Claim
Of Charles W. Bassing ████████
Page 8

     (c)    The deceased partner's estate was insolvent and unable to pay to the surviving partner the deceased partner's 50% share of the debt to which his estate succeeded.

The 1972 ruling held that the amount paid by the surviving general partner to the partnership's creditor on behalf of his partner's estate was deductible under Section 166 as a debt which became worthless in the year of the payment. The ruling reasoned that partners are individually liable for partnership debts, but that because of the right of contribution among partners, the surviving general partner was entitled to contribution from the deceased partner's estate for a 50% share of the debt. To quote the ruling: "This **right of contribution from the partner's estate created a bona fide debt** which arose from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed sum of money." {Emphasis added.} The ruling concluded that the debt was worthless because of the estate's insolvency.

The economic similarities between the 1972 ruling and the situation here are striking. Mr. Cohen and the Taxpayer were the co-general partners of the Partnership. The Partnership borrowed funds to operate its business from Mr. Cohen. Thus, Mr. Cohen was acting in two capacities, first as a general partner of the Partnership and second as a lender to the Partnership. The conveyance of the Partnership's principal asset, the office building, to its secured lender, the Bank, meant that the Partnership had no remaining assets with which to repay its debt to its remaining creditor, Mr. Cohen. Because of his deficit restoration obligation, the Taxpayer was personally liable to pay a share of this Partnership debt, and Mr. Cohen had the right to contribution from the Taxpayer to the extent Mr. Cohen had funded the Taxpayer's share of the debt. **That right to contribution, as the 1972 ruling points out, created a "bona fide debt" between the Taxpayer, the debtor/partner, and Mr. Cohen, the creditor/partner who advanced 100% of the funds and thus paid the Taxpayer's share.**

The Taxpayer's situation represents the flip side of Rev. Rul. 72-505 -- namely, the tax treatment of the insolvent debtor/general partner. As a result of his insolvency, the Taxpayer could not pay his share -- the $882,871 final negative capital account balance -- of the Partnership's remaining debt. Recognizing the Taxpayer's insolvency (which was also recognized by the Bank as it did not require any payment from the Taxpayer), Mr. Cohen discharged the Taxpayer from this liability through the Release. Since the 1972 ruling holds that the creditor/partner can claim a bad debt deduction on payment of an insolvent partner's share of a partnership debt, the conclusion is inescapable that the insolvent debtor/partner, the Taxpayer, realized debt cancellation income when the creditor/partner, Mr. Cohen, discharged him on February 1, 1991 from his contribution obligation to pay his share of the Partnership's remaining debt.

Finally, ILM 200038044, a Legal Memorandum prepared by Associate Chief Counsel, Income Tax and Accounting, in the National Office in response to a request for Significant Service Center Advice, further buttresses the debt discharge position here. The Legal Memorandum was issued on August 14, 2000, and thus represents a

Memorandum to Accompany Refund Claim
Of Charles W. Bassing
Page 9

contemporary analysis of a debt discharge issue by Associate Chief Counsel. The issue addressed in the Legal Memorandum was whether the forgiveness of a substantial penalty incurred by a medical graduate for breaching the terms of his scholarship contract resulted in debt discharge income, despite the lack of any direct borrowing by the graduate. Associate Chief Counsel employed the following "implied borrowing" rationale to conclude that the penalty forgiveness created debt discharge income:

> "Similarly, applying the implied borrowing analysis to the facts of this case, cancellation of a penalty owed to the Department of Health and Human Services is equivalent to a transaction in which the taxpayer borrowed cash, and used the proceeds to pay the penalties. A forgiveness of the loan would give rise to income under section 61(a)(12). Since such a transaction would clearly give rise to COD income, the direct reduction of the penalty by the Department of Health and Human Services should also give rise to COD income."

Applying an identical analysis here, the release of the Taxpayer from his $882,871 deficit restoration obligation is the equivalent of the Taxpayer's having borrowed $882,871 from a third party lender and contributing that cash to the Partnership in payment of his deficit restoration obligation. Since a subsequent forgiveness of the third party loan "would clearly give rise" to $882,871 of debt discharge income, the direct release of the Taxpayer "should also give rise to COD income."

    2.    The Debt Discharge Income Realized by the Taxpayer Provided the Taxpayer with Additional Basis in his Partnership Interest Equal to the Amount of Such Income, Thereby Offsetting Cash Deemed Distributed under Section 752(b) as a Result of the Decrease in the Taxpayer's Share of Liabilities.

There is no direct authority addressing the basis consequences to a partner where the partner's deficit capital restoration obligation is cancelled at the time of the partnership's liquidation. Rev. Rul. 92-97, 1992-2 C.B. 124, demonstrates that debt discharge income allocated by a partnership to a partner will provide a basis increase under Section 705(a)(1)(A) offsetting cash deemed distributed under Section 752(b) from the reduction in the partner's share of partnership liabilities for purposes of Section 731(a)'s gain recognition rules. However, the 1992 ruling dealt with the cancellation of a liability owed by the partnership to a third-party creditor, rather than a deficit capital liability owed by a partner to the partnership. Thus, the ruling has no direct applicability here except to suggest generally that a partner's realization of debt discharge income resulting from his participation in a partnership should provide a basis increase.

However, the implied borrowing rational of ILM 200038044 sets forth a simple analytical approach to the basis issue. Under that rationale, as previously described, the release of the Taxpayer from his $882,871 deficit capital restoration obligation can be viewed as if the Taxpayer had borrowed $882,871 from a third party lender and

Memorandum to Accompany Refund Claim
Of Charles W. Bassing ███████████
Page 10

contributed that cash to the Partnership in payment of his restoration obligation. Viewed in this manner, the Taxpayer clearly obtains $882,871 of basis in his partnership interest under Section 722 from his deemed cash contribution which offsets the $882,871 of cash deemed distributed to the Taxpayer under Section 752(b) from the reduction in his share of Partnership liabilities.

The Section 704(b) regulations suggest a second analytical approach which would also provide the Taxpayer with an $882,871 basis increase. Under the regulations, the Taxpayer could have contributed an $882,871 promissory note to the Partnership on the Partnership's February 1, 1991 liquidation date to satisfy his deficit restoration obligation. Pursuant to both Section 8(c) of the Amendment and the regulations, this note would have then been distributed to its sole remaining creditor, Mr. Cohen, to whom the Partnership owed $2,748,229. The Taxpayer's $882,871 note would have thus replaced $882,871 of the debt owed by the Partnership to Mr. Cohen. By contributing the note, the Taxpayer would have assumed $882,871 of Partnership debt owed to Mr. Cohen. The forgiveness of this note pursuant to the Release signed by Mr. Cohen would have then caused Mr. Bassing to realize $882,871 of debt discharge income.

Under Section 752(a), a partner's assumption of a partnership liability is treated as a cash contribution by the partner to the partnership, which provides the partner with a corresponding basis increase in his partnership interest under Section 722. Since the Taxpayer's contribution of an $882,871 note on the Partnership's liquidation date to pay his negative capital amount would have provided the Taxpayer with an $882,871 basis increase under Sections 752(a) and 722, logic dictates that the same basis-increasing result should occur when the obligation which would effect the liability assumption is discharged on the Partnership's liquidation date.

Accordingly, under either the implied borrowing or the assumed partnership liability rationale, Mr. Bassing realized $882,871 of debt discharge income, which provided him with $882,871 of additional partnership interest basis to eliminate the capital gain otherwise triggered by Sections 752(b) and 731(a).