**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-712 T**
**(Judge Thomas C. Wheeler)**

---

**CHARLES W. BASSING, III**

**Plaintiff,**

**v.**

**THE UNITED STATES**

**Defendant.**

---

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF COMPLAINT

---

Plaintiff, Charles W. Bassing III (also referred to herein as "Mr. Bassing"), hereby opposes Defendant's motion to dismiss count one of the Complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted because of the § 7422[1] bar on refund suits attributable to partnership items. Defendant maintains that Plaintiff is "attempting to re-characterize partnership items" reported to him by 1110 Bonifant Limited Partnership for its 1991 tax year in a personal claim for refund and that § 7422 bars Plaintiff from bringing a refund suit for this purpose.

In opposition, Plaintiff submits that the items at issue in this refund suit -- the treatment of the discharge of his deficit restoration obligation as cancellation of debt income and the

---

[1] Unless otherwise indicated, all references to "§" and "section" are to the Internal Revenue Code of 1986, as amended (26 U.S.C.).

consequent increase in the basis of his partnership interest -- are "affected items", the tax treatment of which are properly determined at the partner level and, consequently, are subject to review by this Court in a refund suit. The facts and analysis supporting Plaintiff's position are as follows:

## STATEMENT OF FACTS

Plaintiff finds that Defendant's Statement of Facts in its motion to dismiss will suffice for purposes of demonstrating the correctness of Plaintiff's position. Accordingly, Plaintiff restates and adopts those facts as follows: [2]

Mr. Bassing was a founding partner in the 1110 Bonifant Limited Partnership ("the Bonifant Partnership"), which was organized under Maryland law on April 30, 1985. The partnership was established for the purpose of acquiring and owning real property located at 1110 Bonifant Street, Silver Spring, Maryland, and for the development and construction of an office building to be held as investment property for the production of income. The partnership agreement designated Mr. Bassing and Richard S. Cohen ("Mr. Cohen") as the general partners in the partnership. Mr. Bassing and Mr. Cohen were also identified as limited partners in the partnership, along with several other individuals and entities, including three family limited partnerships ("FLP's").[3] The presence of the FLP's as partners in the partnership meant that the

---

[2] One minor change and one clarifying change to Defendant's recitation of the facts are bracketed below [ ]. To improve readability, Defendant's citations to its sources for the facts presented have been omitted herein.

[3] Originally, Mr. Bassing and Mr. Cohen each held a 5% general partnership interest. Mr. Bassing also owned a 25% limited partnership interest, and Mr. Cohen held a 21% limited partnership interest. The admission of subsequent partners later diluted Mr. Bassing's limited partnership interest to 21.25%.

Bonifant Partnership was a "TEFRA" partnership, which was subject to the provisions of Internal Revenue Code §§ 6221 – 6234.[4]

The original partnership agreement was amended on April 1, 1988, with retroactive effect to December 31, 1987, to comply with the then recently finalized Treasury Regulation § 1.704-1(b). The amendment required that, in the event of the Bonifant Partnership's liquidation, any partner with a negative capital account was obligated to restore the deficiency to the partnership (*hereinafter* "the [deficit] restoration obligation").

Construction of the 1110 Bonifant Street office building was funded by a $5 million building loan provided to the Bonifant Partnership by the First American Bank of Maryland ("the Bank") on November 18, 1985. The terms of the loan required full repayment of principal and interest on the loan's maturity date, which was November 17, 1990. The loan agreement also required that Mr. Bassing and Mr. Cohen guaranty the loan.

The commercial real estate market collapsed in the late 1980's and the Bonifant Partnership struggled to secure tenants for its building. When the building loan matured, the Bonifant Partnership was unable to satisfy its obligations. Mr. Cohen and Mr. Bassing were also incapable of paying the partnership's loan. During the same period, Mr. Cohen, and several partners other than Mr. Bassing, were involved in separate partnerships that also developed and managed real property. Many of these partnerships were also financed by the First American Bank of Maryland, and were in default on their loan obligations.

---

[4] "TEFRA" refers to the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324 (1982). The applicable sections were codified in Internal Revenue Code §§ 6221 – 6234. Under the act, a partnership is defined as any partnership required to file a partnership tax return under § 6031(a) of the Internal Revenue Code, except for those that are comprised of 10 or less partners, each of whom are either individuals, C corporations, or an estate of a deceased partner. § 6231(a)(1). In the present case, the presence of several Family Limited Partnerships ("FLP's") as limited partners in the 1110 Bonifant Limited Partnership, qualify the entity as a "TEFRA" partnership that is subject to the provisions of Internal Revenue Code §§ 6221 – 6234

In lieu of foreclosure on these loans, the Bank entered into a settlement agreement with the partnerships and the various guarantors of the partnerships' loans, including Mr. Cohen and Mr. Bassing. Under the terms of the settlement agreement, the Bank accepted title to the property owned by the Bonifant Partnership and a lump sum payment from Mr. Cohen in satisfaction of the Bonifant Partnership's loan obligations. The settlement agreement was executed on February 1, 1991. The Bonifant Partnership was effectively liquidated on the same date.

The liquidation left Mr. Bassing with a negative capital account balance of $882,871. (the sum of Mr. Bassing's general and limited partner year end capital accounts in boxes J(e) [on the 1991 Schedule K-1s issued to him by the partnership] is $882,871). Mr. Bassing was obligated to restore his negative account balance under the terms of the April 1, 1988 amendment to the partnership agreement. Mr. Bassing alleges that he was personally insolvent at the time this obligation came due. As a consequence, Mr. Cohen and the remaining partners of the Bonifant Partnership released Mr. Bassing from his deficit restoration obligation in an agreement that was executed simultaneously with the Bank settlement on February 1, 1991.

Mr. Bassing filed his 1991 income tax return on April 15, 1992. He treated the release from his deficit restoration obligation as a deemed sale of his interests in the Bonifant Partnership. He reported capital gain from the deemed sale, but he did not pay the corresponding tax of $68,696. As a result, he was assessed tax, interest, and failure to pay penalties under § 6651(a)(2). On April 8, 2002, he paid $152,539.03 in full satisfaction of the liability, interest, and penalties. On July 3, 2002, less than two years after paying his 1991 taxes, Mr. Bassing filed an amended return claiming that the underlying obligation was not income from the deemed sale of a partnership interest, but rather, income from the cancellation of debt that should have been

excluded from his 1991 income. The Service denied his claim on October 14, 2004, and Mr. Bassing filed suit in this Court on October 13, 2006.

## DISCUSSION

### 1. Applicable Jurisdictional Rules

A suit for the refund of taxes, penalties and interest may be maintained in this Court so long as the taxpayer filed a claim for refund with the IRS in accordance with applicable law and Treasury Regulations. § 7422(a)(2). Under § 6511(a), a taxpayer generally must file a claim for refund with the IRS within three years from the date the return was filed or, if later, two year from the date the tax, penalties and interest were paid. Under § 6532(a), a taxpayer must generally bring a suit for refund not later than two years after the IRS mails a notice of disallowance with respect to the claim for refund. Defendant's Statement of Facts demonstrates that Mr. Bassing both timely filed a claim for refund with IRS within two years from the time of payment of his tax, penalty and interest for his 1991 tax year and timely commenced this refund suit within two years after the IRS issued him a notice of disallowance of his refund claim.

However, with respect to any income tax attributable to any partnership item (as defined in § 6231(a)(3)), § 6511(g) requires application of the provisions of §§ 6227 and 6230(c) and (d) in lieu of the general rules for refund claims. Section 6227 sets forth the rules for "administrative adjustment requests" pursuant to which a partner may file a request with the IRS for an administrative adjustment of "partnership items" for any partnership tax year. A partner must generally file an administrative adjustment request within three years from the later of the date on which the partnership's return for the partnership's tax year was filed or the unextended due date for filing the partnership return for such year. § 6227(a). An administrative adjustment

request can be filed by the tax matters partner to change the treatment of partnership items on behalf of the entire partnership. § 6227(c). Alternatively, an administrative adjustment request can be filed by any partner who seeks to change the treatment of partnership items as to that partner. § 6227(d). Neither the tax matters partner for Bonifant Partnership, Mr. Cohen, nor Mr. Bassing has ever filed an administrative adjustment request for Bonifant Partnership's 1991 tax year, and the period for filing any such request has obviously long expired. Consequently, Mr. Bassing cannot avail himself of the judicial review procedures for an adjustment of partnership items following an IRS disallowance of any part of an administrative adjustment request. *See* § 6228.

Section 6230(c) provides refund procedures for erroneous computational adjustments by the IRS respecting the treatment of partnership items and is not pertinent to Mr. Bassing's original claim for refund or this refund suit.

Section 6230(d), on the other hand, is potentially applicable to Mr. Bassing's case. Section 6230(d)(1) states that --

> "Except as otherwise provided in this subsection, no credit or refund of an overpayment attributable to a partnership item (or an affected item) for a partnership taxable year shall be allowed or made to any partner after the expiration of the period of limitations prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item."

The refund prohibition of § 6230(d)(1) does not apply where an administrative adjustment request with respect to a partnership item is timely filed, which results in an overpayment attributable to such partnership item (or an affected item). § 6230(d)(2). The refund prohibition is also inapplicable to a refund attributable to a partnership item (or an item affected by such partnership item) if a partner brings a timely suit with respect to a timely administrative adjustment request under § 6228. § 6230(d)(4) As mentioned, no administrative adjustment

request has been, or could now be, timely filed with respect to the partnership items of Bonifant Partnership so that neither of the foregoing exceptions apply to Mr. Bassing's claim for refund.

Finally, § 7422(h) prohibits any action for a refund attributable to partnership items (as defined in § 6231(a)(3)) except as provided in § 6228(b) or § 6230(c). Defendant contends that the refund claim set forth in count one of Mr. Bassing's refund suit is entirely attributable to "partnership items" and that § 7422(h) therefore bars Mr. Bassing from bringing suit for a refund attributable to such items (since neither § 6228(b) or § 6230(c) are applicable, as conceded above).

The analysis which follows will clearly establish that none of the items at issue in this action is a "partnership item" defined in § 6231(a)(3), with the result that § 7422(h) (or § 6511(g)) does not bar count one of Mr. Bassing's refund suit. Moreover, although the items at issue are classifiable as so-called "substantive affected items" because they require partner-level determinations, they should not be subject to the § 6230(d) limitations on refunds attributable to "a partnership item (or an affected item)". The parenthetical reference to an affected item, it will be shown, should be limited to an item that is affected by a change in the treatment of a partnership item as a result of the claim for refund. Mr. Bassing is not challenging the Bonifant Partnership's treatment of any partnership item reported on the Partnership's 1991 return. His claim for refund in count one of the complaint is grounded entirely on his erroneous treatment of affected items that pertain to him, and him alone, and his corrections to the treatment of the affected items at issue here have no effect on any partnership item determined by Bonifant Partnership or reported to any partner of Bonifant Partnership.

2. **TEFRA Definitional Provisions**

Under the Internal Revenue Code provisions enacted by TEFRA, the tax treatment of any partnership item must generally be determined at the partnership level. § 6221. Partners of a TEFRA partnership, in turn, are generally required to report their "partnership items" consistently with the partnership. § 6222(a). Section 6231(a)(3) defines the term "partnership item" as any item required to be taken into account for the partnership's taxable year under any of the subtitle A income tax provisions of the Code to the extent that Treasury Regulations provide that, for purposes of TEFRA's unified procedural rules, such item is more appropriately determined at the partnership level than at the partner level. For example, the applicable regulations define a partnership's items of income, gains, losses, deductions, or credits as partnership items. Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i). The regulations further provide that the accounting practices and the legal and factual determinations underlying the determination of the amount and characterization of the items of income, credit, gain, loss, deduction, etc. are also partnership items. Treas. Reg. § 301.6231(a)(3)-1(b).

By statute, any item that is not a defined "partnership item" is a "nonpartnership item." § 6231(a)(4). A third category of item under the TEFRA rules is an "affected item", which this Court has characterized as "hybrids of a sort," which fall somewhere between partnership items and nonpartnership item. *Keener v. United States,* 76 Fed. Cl. 455, 458 (2007).
Section 6231(a)(5) defines an affected item as "any item to the extent it is affected by a partnership item."

There are two types of affected items. *See Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999), *citing Woody v. Commissioner*, 95 T.C. 193, 202 (1990). The first type only requires a mathematical, computational adjustment to record the change in a partner's tax liability

resulting from the proper treatment of partnership items once the partnership proceeding is complete. *See Olson* , 172 F.3d at 1317. For example, the threshold for the medical expenses deduction under § 213 will vary as a result of a change in an individual partner's adjusted gross income on account of partnership item adjustments. *See* Treas. Reg. § 301.6231(a)(5)-1T(a).[5] Computational-type affected items are not at issue in this case.

The second type of affected item depends on non-computational factual determinations that can only be made at the individual partner level once the partnership-level proceeding is complete. *See Olson*, 172 F.3d at 1317-8, *citing N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744 (1987). This Court has referred the second type of affected item as a "substantive" affected item. *Olson*, 37 Fed. Cl. 727, 732 (1997). The regulations specify that the basis of a partner's partnership interest is an affected item to the extent that it is not a partnership item. Treas. Reg. § 301.6231(a)(5)-1T(b). The regulations further provide that the application of the § 465 at-risk limitation to a partner with respect to a loss flowing from a partnership is an affected item to the extent that it is not a partnership item. In a case quite relevant to the deficit restoration obligation discharge issue here, the Tax Court found that a payment which the taxpayer's partnership reported as a guaranteed payment to the taxpayer under § 707(c) should be treated as an affected item for purposes of determining, in a non-partnership deficiency proceeding, whether the taxpayer could exclude the payment from income under § 104(a) as disability compensation. *Jenkins v. Commissioner,* 102 T.C. 550 (1994). The court observed that there was little question that a § 707(c) guaranteed payment was a partnership item. *Id.*, at 555. However, the applicability of § 104(a) to the payment was an issue which must be

---

5 The regulations defining an affected item under § 6231(a)(5) and in effect for the Bonifant Partnership's 1991 tax year were temporary regulations which had been promulgated in T.D. 8128, 52 F.R. 6779 (March 6, 1987); reproduced at 1987-1 C.B. 325.

determined at the individual level, not the partnership level, and therefore was not a partnership item. *Id.*, at 555-6.

### 3. Analysis of Defendant's Partnership Item Contentions

#### a. First American Bank of Maryland Settlement Was a Partnership Item.

Defendant alleges that Mr. Bassing is claiming that he received debt cancellation income from the settlement of Bonifant Partnership's obligations with First American Bank. (Citing Comp. ¶¶20, 23). However, no such claim is being made. The sole claim with respect to the realization of debt cancellation income is derived from the release of Mr. Bassing from his deficit restoration obligation by Mr. Cohen and the other partners of the Bonifant Partnership, which occurred on the same date as the Bank settlement. (Comp. ¶23).

Mr. Bassing is in full agreement with Defendant's position that the partnership's reporting of that settlement as a sale of the office building, giving rise to partnership-level § 1231 capital gain in the amount of $746,054 was a partnership item. It is an item of partnership gain expressly identified in the applicable regulations as a partnership item. Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i). As the Defendant's calculations demonstrate, Mr. Bassing's 26.25% total percentage share of the partnership gain amounted to $195,838. (Motion, footnote 8). Mr. Bassing reported the $195,838 gain both on a Form 4797 and on the Schedule D filed with his original return for 1991. That same $195,838 gain amount remained unchanged on the Form 4797 and Schedule D filed with his amended return constituting his claim for refund and, with the elimination of the capital gain arising from Mr. Bassing's erroneous original treatment of the release of his deficit restoration obligation, is the amount shown on the front page of his amended return as his capital gain for 1991. (See line 13, Form 1040, captioned Amended Return and attached to Comp.) Nor has any claim been made in Mr. Bassing's complaint that the

partnership's reporting treatment of Bank settlement as a sale transaction was incorrect. It should thus be abundantly apparent that Mr. Bassing is not challenging the Bonifant Partnership's treatment of this partnership item and has reported his sale gain consistently with the partnership's treatment.

**b. <u>Consequences of Release of Mr. Bassing from Deficit Restoration Obligation Were Affected Items.</u>**

As a result of the amendment to the Bonifant Partnership's limited partnership agreement on April 1, 1988, with retroactive effect to December 31, 1987, the Bonifant Partnership bound itself to comply with the substantial economic effect rules of § 704(b) and the regulations promulgated thereunder, including the capital account maintenance rules of Treas. Reg. § 1.704-1(b)(2)(iv). As Defendant points out, the Bonifant Partnership capital account balances were reported to partners on their Schedule K-1s each tax year, and it was through the maintenance of capital accounts that it was determined that Mr. Bassing had a negative capital account balance when the Partnership liquidated. Mr. Bassing's total negative capital account balance at such time was $882,871, consisting of the $156,019 negative balance reported on his general partner Schedule K-1 and the $726,852 negative balance reported on his limited partner Schedule K-1. It is agreed that the maintenance of capital accounts by the Partnership and the ending capital account balances reported by the Partnership to Mr. Bassing for its 1991 tax year are partnership items. The capital account maintenance rules are without doubt an accounting practice adopted by the Partnership, which the regulations identify as a partnership item. Treas. Reg. § 301.6231(a)(3)-1(b). Mr. Bassing has not challenged the total ending negative capital account balance of $882,871 that Bonifant Partnership determined with respect to his general and limited partnership interests and reported to him on his Schedule K-1s.

Defendant goes on to assert that any release of an obligation to contribute funds to the partnership was an item of income or loss of the partnership. But no authority is cited for this assertion. Certainly a release of a contribution obligation should not cause a partnership to realize income. Conceivably such a release might result in the realization of a loss. The IRS has ruled that, where a surviving general partner paid amounts due to partnership creditors on behalf of the insolvent estate of his deceased partner, the total amount was deductible under § 166 as a debt which became worthless in the year of the payment. Rev. Rul. 72-505, 1972-2 C.B. 102. The IRS reasoned that the surviving general partner had a right of contribution from his co-partner's estate and that this contribution right gave rise to genuine debt which the estate could not satisfy because of its insolvency. *Id.* Based on this ruling, it would appear that the release of Mr. Bassing's deficit restoration obligation on account of his insolvency would have allowed Mr. Cohen, his co-general partner, to claim a bad debt deduction under § 166. Under the ruling, however, this is not a partnership-level deduction but rather a deduction allowable to the partner who paid the partnership's creditors.

Whatever the tax consequence of the release of Mr. Bassing's deficit restoration obligation might have been to the Bonifant Partnership or to Mr. Cohen, it is not the issue being raised by Mr. Bassing with respect to such restoration obligation in this refund suit. There are two parts to this issue, the first of which is the treatment of Mr. Bassing's $882,871 ending negative capital account balance as indebtedness that he owed to the Bonifant Partnership at liquidation. Because of his deficit restoration obligation, he had an existing, unconditional and legally enforceable obligation for the payment of money, both under case law which defines indebtedness for tax purposes and under the applicable § 704(b) regulations for deficit restoration obligations which allow a partner to issue a note to satisfy a restoration obligation existing at the time of liquidation. *First National*

*Company v. Commissioner,* 289 F.2d 861, 865 (6th Cir. 1961); *Halle v. Commissioner,* 83 F.3d 649 (4th Cir. 1996); Treas. Reg. § 1.704-1(b)(2)(iv)(d)(2). The treatment of Mr. Bassing's negative capital account balance -- the amount of which he is not disputing -- as personal debt for tax purposes at the time of liquidation is clearly an item that can and should be determined at Mr. Bassing's level and is, consequently, an affected item.

The second aspect of the deficit restoration obligation issue concerns the tax effects of the release of Mr. Bassing from such obligation. The release of this obligation representing indebtedness at the time of the release, is also an affected item that can and should be determined entirely at Mr. Bassing's level. The release, executed by all of the partners of the Bonifant Partnership, speaks for itself -- without the need for any interpretation at either the partnership or the partner level -- in stating:

> "1. Release.
>
> "(a) Partners hereby **release and discharge** [Mr. Bassing], his heirs and assigns, ... from any and all claims, **debts**, demands, accountings, causes of action or **liabilities**, of any nature whatever, matured or unmatured, contingent or absolute, known or unknown, whether within the contemplation of the parties or not, **arising out of the Partnership**, unless caused by or otherwise arising from the fraud or willful misconduct of [Mr. Bassing]...." {**Emphasis added.**}

The foregoing language clearly applies to discharge Mr. Bassing's from his deficit restoration obligation and also satisfies the definition of term "discharge of indebtedness" as "convey{ing} ***forgiveness of*****, or *release from*****,** an obligation to repay." {**Emphasis in original.**} *United States. v. Centennial Savings Bank FSB,* 499 U.S. 573, 580 (1991). Once a discharge of indebtedness is found to occur, then the excludability of the resulting income is determined under the rules of § 108. Section 108(d)(6) expressly provides that in the case of a partnership, the exclusion and adjustment rules set forth in 108(a) (which includes the insolvency exception), §§ 108(b), 108(c) and 108(g)

"shall be applied at the partner level." In the *Jenkins* opinion, the court found that the excludability of a partnership § 707(c) guaranteed payment under § 104(a) as disability compensation should be determined as a partner-level, affected item. Here, § 108(d)(6) dictates that the excludability of any debt cancellation income realized by Mr. Bassing under the insolvency exception of § 108(a)(1)(B) be resolved at the partner level. Section 108(d)(6) confirms that the debt discharge consequences of the release of Mr. Bassing from his deficit restoration obligation require a partner-level, affected item determination.

**4 <u>Increase in Partnership Interest Basis as a Result of Reclassifying Deficit Restoration Obligation as Indebtedness</u>**

Not directly addressed in Defendant's Motion for Partial Dismissal is Mr. Bassing's position that he derives a basis increase in his partnership interest equal to the $882,871 of indebtedness determined to exist at the time of liquidation and that, as a result, the $882,871 of capital gain reported on his original 1991 tax return pursuant to the partnership liability and distribution rules of § 752(b) and § 731 is fully offset. (Comp. ¶24). Under the regulations, the basis of a partner's partnership interest is an affected item to the extent that it is not a partnership item. Treas. Reg. § 301.6231(a)(5)-1T(b). Since the $882,871 of basis increase is entirely a consequence of the treatment of Mr. Bassing's $882,871 deficit restoration obligation as a partner-level debt, such basis increase must also be regarded as a partner-level, affected item, and not a partnership item.

**5 <u>Neither Section 7422(h) nor 6230(d) Bars This Refund Suit or the Allowance of a a Refund for the Overpayment Attributable to Mr. Bassing's Affected Items</u>**

The foregoing analysis clearly demonstrates that Defendant's contention that the refund sought by Mr. Bassing in count one of this action is entirely attributable to partnership items is incorrect. None of the items placed at issue here -- Mr. Bassing has consistently reported his share of the gain from the Bank Settlement as § 1231 capital gain -- is a partnership item as defined in

§ 6231(a)(3) and the applicable regulations. The treatment of Mr. Bassing's deficit restoration obligation as debt and his release from such obligation as a cancellation of debt are affected items, as is the basis increase derived by Mr. Bassing from the treatment of the deficit restoration obligation as debt. Nor does the treatment of any of these items as partner-level, affected items require this Court to reexamine the Bonifant Partnership's partnership-level treatment of any item that may be a component of one of these affected items. Neither the Bonifant Partnership's maintenance of partner capital accounts under the § 704(b) regulations, nor the ending capital account balance reported to Mr. Bassing at the time of liquidation is being challenged here. Consequently, § 7422(h)'s bar to refund suits attributable to partnership items defined in § 6231(a)(3) is inapplicable, even under the expansive interpretation of the language "attributable to" adopted by this Court in its opinion in *Keener* earlier this year. *Keener,* 76 Fed. Cl. at 461-2. Under this expansive view, § 7422(h) is seen as precluding a court from considering, in partner-level proceedings, not only partnership items standing alone but also partnership items that impact affected items otherwise before the court. *Id.* Again, no such partnership-level item that could impact Mr. Bassing's affected items is being questioned here.

The final issue requiring consideration is the effect of the parenthetical reference in § 6230(d)(1) to "an affected item". Section 6230(d)(1) generally prohibits refund of an overpayment attributable to a partnership item (or an affected item) after the limitations period in § 6229 has run with respect to such item. This refund prohibition does not apply where an administrative adjustment request with respect to a partnership item is timely filed, which results in an overpayment attributable to such partnership item (or an affected item). § 6230(d)(2). Nor does it apply to a refund "attributable to a partnership item **(or an item affected by such partnership item)** if a partner brings a timely suit with respect to a timely administrative

adjustment request under § 6228. {**Emphasis added.**} § 6230(d)(4). Review of both the administrative adjustment request rules of § 6227 and the judicial review procedures of § 6228 shows that such requests and procedures can be utilized only for purposes of changing the treatment of partnership items. A partner cannot file an administrative adjustment request for the adjustment of an affected item which relates only to that partner. The provisions of § 6227 contemplate the use of such requests solely to adjust partnership items. Likewise, the § 6228 judicial review procedures have as their focus the review of those partnership items not allowed or not addressed in response to the administrative adjustment request. Accordingly, even if Mr. Bassing were not time barred from filing an administrative adjustment request, his request would be precluded because it would not involve any adjustment to the treatment of the partnership items of Bonifant Partnership. The only items at issue in this case are affected items that are properly determined at his individual level. Since he could not file an administrative adjustment request, he also could not avail himself of § 6228's judicial review procedures for partnership items that have been the subject of such a request. Thus, neither of the two exceptions to the refund bar of § 6230(d)(1) could ever be availed of by Mr. Bassing here or by any other similarly-situated partner who seeks to challenge comparable affected items.

The solution to the issue presented by the § 6230(d)(1) parenthetical reference to affected items is to read it in the restrictive manner set forth in § 6230(d)(4) exception. As stated, the exception permits a refund of an overpayment "attributable to a partnership item **(or an item affected by such partnership item)**". Under this interpretation, the affected item reference in § 6230(d)(1) is limited to an affected item that is affected as a result of a change in the treatment of a partnership-level item as a result of the refund claim. Count one of Mr. Bassing's refund suit can thus go forward, limited as it is to his original erroneous treatment of affected items that

pertain solely to him, the correction of which have no effect on any partnership item determined by Bonifant Partnership or reported by the Partnership to any of its partners.

For all of the foregoing reasons, Mr. Bassing has stated a claim in count one of his complaint upon which this Court can grant a refund.

WHEREFORE, Plaintiff respectfully requests that Defendant's motion for partial dismissal of his complaint be denied.

December 17, 2007

s/ Patrick G. Dooher
PATRICK G. DOOHER
*1700 K Street, NW*
*Suite 300*
*Washington, D.C. 20006*
*Voice: (202) 452-7991*
*Fax: (202) 452-7989*
*Email: patrick.dooher@bipc.com*

Counsel for Plaintiff